No. 14-3423

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

| | | |
|---|---|---|
| ARI WEITZNER, M.D. and | : | |
| ARI WEITZNER, M.D., P.C., | : | |
| individually and on behalf of all others | : | |
| similarly situated, | : | |
| | : | In The Court Below |
| vs. | : | M.D. Pa. 3:11-CV-02198 |
| | : | HON. A. RICHARD CAPUTO |
| SANOFI PASTEUR INC., formerly known | : | |
| as AVENTIS PASTEUR INC., and | : | |
| VAXSERVE INC., formerly known as | : | |
| VACCESS AMERICA INC., | : | |
| Appellants | : | |

## BRIEF OF APPELLANTS
## AND
## VOLUME I OF THE JOINT APPENDIX

Appeal of the District Court's March 12, 2014 Order Denying the Motion To Dismiss Pursuant To Federal Rule Of Civil Procedure 12(b)(1) By Sanofi  Pasteur Inc., *Formerly Known As* Aventis Pasteur Inc. and VaxServe Inc., *Formerly Known As* Vaccess America Inc.

CARL J. GRECO, P.C.
Carl J. Greco, Esq.
PA ID 27561
327 N. Washington Ave.            *Attorneys for Appellants/Defendants*
Prof. Arts Building, 4th Floor      *Sanofi Pasteur Inc., formerly known as*
Scranton, PA 18503                *Aventis Pasteur Inc. and VaxServe Inc.*
(570)346-4434                    *formerly known as Vaccess America Inc.*
(570) 346-4442 facsimile
cjgreco@cjgrecolaw.com

**United States Court of Appeals for the Third Circuit**

**Corporate Disclosure Statement and**
**Statement of Financial Interest**

No. 14-3423
_____

Ari Weitzner, M.D., and Ari Weitzner, M.D., P.C., individually
and on behalf of all others similarly situated

v.

Sanofi Pasteur, Inc.; VaxServe, Inc., formerly known as
Vaccess America, Inc., Appellants

Instructions

        Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

        Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest.  This information need be provided only if a party has something to report under that section of the LAR.

        In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings.  If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list.  LAR 26.1(c).

        The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

        The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first.  An original and three copies must be filed.  A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed.  Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

        If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, makes the following disclosure:

# Sanofi Pasteur Inc.
_____
(Name of Party)

     1) For non-governmental corporate parties please list all parent corporations: Sanofi Pasteur Participations SA, Life Sciences Holdings, Inc. and Sanofi SA

     2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

Sanofi SA

     3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

Appellant/Defendant Sanofi Pasteur Inc. is unaware of any such entities, other than those identified above.

     4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not applicable.

_____
(Signature of Counsel or Party)

Dated: 8/12/2014

rev: 12/1998          (Page 2 of 2)

**United States Court of Appeals for the Third Circuit**

**Corporate Disclosure Statement and
Statement of Financial Interest**

No. <u>14-3423</u>

Ari Weitzner, M.D., and Ari Weitzner, M.D., P.C., individually
and on behalf of all others similarly situated

v.

Sanofi Pasteur, Inc.; VaxServe, Inc., formerly known as
Vaccess America, Inc., Appellants

<u>Instructions</u>

Pursuant to Rule 26.1, Federal Rules of Appellate Procedure any nongovernmental corporate party to a proceeding before this Court must file a statement identifying all of its parent corporations and listing any publicly held company that owns 10% or more of the party's stock.

Third Circuit LAR 26.1(b) requires that every party to an appeal must identify on the Corporate Disclosure Statement required by Rule 26.1, Federal Rules of Appellate Procedure, every publicly owned corporation not a party to the appeal, if any, that has a financial interest in the outcome of the litigation and the nature of that interest. This information need be provided only if a party has something to report under that section of the LAR.

In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate shall provide a list identifying: 1) the debtor if not named in the caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is an active participant in the bankruptcy proceedings. If the debtor or the bankruptcy estate is not a party to the proceedings before this Court, the appellant must file this list. LAR 26.1(c).

The purpose of collecting the information in the Corporate Disclosure and Financial Interest Statements is to provide the judges with information about any conflicts of interest which would prevent them from hearing the case.

The completed Corporate Disclosure Statement and Statement of Financial Interest Form must, if required, must be filed upon the filing of a motion, response, petition or answer in this Court, or upon the filing of the party's principal brief, whichever occurs first. An original and three copies must be filed. A copy of the statement must also be included in the party's principal brief before the table of contents regardless of whether the statement has previously been filed. Rule 26.1(b) and (c), Federal Rules of Appellate Procedure.

If additional space is needed, please attach a new page.

(Page 1 of 2)

Pursuant to Rule 26.1 and Third Circuit LAR 26.1, **VaxServe Inc.**

makes the following disclosure: _____
                                              (Name of Party)

       1) For non-governmental corporate parties please list all parent corporations: Sanofi Pasteur Inc., Sanofi Pasteur Participations SA, Life Sciences Holdings, Inc. and Sanofi SA

       2) For non-governmental corporate parties please list all publicly held companies that hold 10% or more of the party's stock:

Sanofi SA

       3) If there is a publicly held corporation which is not a party to the proceeding before this Court but which has as a financial interest in the outcome of the proceeding, please identify all such parties and specify the nature of the financial interest or interests:

Appellant/Defendant VaxServe Inc. is unaware of any such entities, other than those identified above.

       4) In all bankruptcy appeals counsel for the debtor or trustee of the bankruptcy estate must list: 1) the debtor, if not identified in the case caption; 2) the members of the creditors' committee or the top 20 unsecured creditors; and, 3) any entity not named in the caption which is active participant in the bankruptcy proceeding. If the debtor or trustee is not participating in the appeal, this information must be provided by appellant.

Not applicable.

_____      Dated: 8/12/2014
(Signature of Counsel or Party)

rev: 12/1998          (Page 2 of 2)

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................... i

TABLE OF AUTHORITIES ........................................................................... iii

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE
JURISDICTION ........................................................................................1

   A.    Basis for the District Court's Subject-Matter Jurisdiction ..........................1

   B.    Basis for the Court of Appeals' Jurisdiction ................................................1

   C.    Filing Dates Establishing Timeliness of the Appeal ....................................1

   D.    Information Establishing the Court of Appeals' Jurisdiction .....................2

II.    STATEMENT OF THE SCOPE AND/OR STANDARD OF REVIEW .......2

III.    STATEMENT OF THE ISSUE(S) .................................................................3

IV.    STATEMENT OF RELATED CASES and PROCEEDINGS...................3

   A.    Previous Litigation in Lackawanna County .................................................3

V.    STATEMENT OF THE CASE .......................................................................5

   A.    RELEVANT FACTS ....................................................................................5

      1.    The Parties.............................................................................................5
         a.    Appellants/Defendants................................................................5
         b.    Appellees/Plaintiffs....................................................................6
      2.    Class Allegations..................................................................................6

   B.    PROCEDURAL HISTORY...........................................................................8

      1.    Defendants' Offers of Judgment ...........................................................9

   C.    RULINGS PRESENTED FOR REVIEW ...................................................12

VI.    SUMMARY OF ARGUMENT ....................................................................13

VII.    ARGUMENT ...............................................................................................16

   A.    Article III, Section 2 of the United States Constitution requires that a
plaintiff maintain a "legally cognizable" interest or "personal stake" in the
outcome at all stages of litigation. ..................................................................16

B.   Under established Third Circuit precedent, an unaccepted offer of complete relief to a plaintiff under Rule 68 renders a plaintiff's claim moot, even in a putative class action. ........................................................................18

  1.   Federal Rule of Civil Procedure 68 .....................................................18
  2.   An unaccepted offer of complete relief renders a plaintiff's claim moot. ..................................................................................................................19
  3.   Defendants' Offers of Judgment rendered the Named Plaintiffs' claims moot. ...........................................................................................................21
  4.   The Ninth Circuit's decision in <u>Diaz</u>, and Justice Kagan's Dissenting Opinion in <u>Genesis Healthcare,</u> are not binding on this Court......................23
  5.   The fact that Plaintiffs have not accepted Defendants' Offers does not preclude a finding that Plaintiffs' claims are moot. The district court may enter judgment in favor of the Named Plaintiffs individually in the amount of Defendants' Offers and dismiss the action...............................................26

C.   Because the Named Plaintiffs' individual claims are moot, the entire action should be dismissed for lack of subject matter jurisdiction, as none of the exceptions to the mootness doctrine relating to class actions is applicable. ... ...................................................................................................................27

  1.   The Supreme Court in <u>Genesis Healthcare</u> addressed the limited exceptions to the mootness doctrine discussed in its decisions in <u>Sosna</u>, <u>Geraghty</u> and <u>Roper</u>, and none is applicable here. ........................................29
  2.   The "relation-back" doctrine is inapplicable to Plaintiffs' claims, as the decision in <u>Genesis Healthcare</u> overruled this Court's interpretation of the "relation-back" doctrine in <u>Weiss</u>.................................................................33
    a.   The Named Plaintiffs' claims are moot, and the entire action should be dismissed, as such claims are not "inherently transitory" or "capable of repetition, yet evading review" and thus well-settled principles of mootness warranted the dismissal of Plaintiffs' Complaint. ....................37
  3.   Rule 23 is a procedural rule that confers no substantive rights on litigants, and thus merely invoking Rule 23 does not preclude a finding of mootness under Article III...........................................................................42
  4.   Even if <u>Weiss</u> remains good law, there has been undue delay by Plaintiffs in filing a motion for class certification, and thus Plaintiffs' Complaint should be dismissed. ...................................................................49

VIII.   CONCLUSION .......................................................................................53

# TABLE OF AUTHORITIES

## *Cases*

Already LLC v. Nike, Inc., 133 S. Ct. 721, 184 L. Ed.2d 553 (2013) ....................28

Ambalu v. Rosenblatt, 194 F.R.D. 451 (E.D.N.Y. 2000)........................................27

American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed.2d 713 (1974)................................................................................................... 51, 52

Boyle and Luongo v. Int'l. Brotherhood of Teamsters Local 863 Welfare Fund, 2014 U.S. App. LEXIS 16630, No. 12-4578 (3d Cir. Aug. 28, 2014) ...............20

Brown v. Phila. Hous. Auth., 350 F.3d 338 (3d Cir. 2003).............................. 20, 29

Camreta v. Greene, 131 S. Ct. 2020, 179 L. Ed.2d 1118 (2011)............................17

City of Erie v. Pap's A. M., 529 U.S. 277, 146 L. Ed. 2d 265, 120 S. Ct. 1382 (2000)....................................................................................................................42

Cnty. of L.A. v. Davis, 440 U.S. 625, 99 S. Ct. 1379, 59 L. Ed.2d 642 (1979)......28

Cornucopia Inst. V. U.S. Dep't of Agric., 560 F.3d 673 (7th Cir. 2009) .................28

Crown, Cork & Seal, Co. v. Parker, 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed.2d 628 (1983)................................................................................................... 51, 52

Cruz v. Farquharson, 252 F.3d 530 (1st Cir. 2001) ..................................................42

Daimler Chrysler Corp. v. Cuno, 547 U.S. 332, 126 S. Ct. 1854, 164 L. Ed.2d 589 (2006)............................................................................................................28

Damasco v. Clearwire Corp., 662 F.3d 891 (7th Cir. 2011)................. 25, 43, 44, 51

Deposit Guaranty National Bank of Jackson, MS v. Roper, 445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed.2d 427 (1980).................................... 30, 31, 32, 33, 38, 41, 48

Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 185 L. Ed.2d 636 (2013) ....12, 15, 16, 17, 18, 19, 23, 24, 26, 28, 29, 30, 31, 32, 33, 34, 37, 38, 39, 41, 42, 45, 47, 48, 49, 52

Goans Acquisition, Inc. v. Merchant Solutions, LLC, 2013 U.S. Dist. LEXIS 138228 (W.D. Mo. Sept. 26, 2013) .......................................................................50

Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP, 258 F. Supp. 2d 157
    (E.D.N.Y. 2003) ..................................................................................27

Greisz v. Household Bank (Ill.), N.A., 176 F.3d 1012 (7th Cir. 1999)............. 19, 44

Harper v. Am. Airlines, 2009 U.S. Dist. LEXIS 117134 (N.D.Tx. Dec. 26, 2009)....
    ..........................................................................................................50

Jones v. Hartford, 243 F.R.D. 694 (N.D. Fl. April 14, 2006)..................................50

Landsman & Funk PC v. Skinder-Strauss Associates, 640 F.3d 72 (3d Cir. 2011)36

Lightfoot v. United States, 564 F.3d 625 (3d Cir. 2009)...........................................2

Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239 (10th Cir. 2011)....25

Lusardi v. Xerox Corp., 975 F.2d 964 (3d Cir. 1992) ....................................... 20, 29

Mabary v. Hometown Bank, 276 F.R.D. 196 (S.D.Tx. June 27, 2011) .................50

Marshall v. Pa. Dep't of Corr., 499 Fed. Appx. 131 (3d Cir. Pa. 2012) ...................2

McCauley v. TransUnion, LLC, 402 F.3d 340 (2d Cir. 2005)...............................25

Merrifield v. United States, 2011 U.S. Dist. LEXIS 32533 (D.N.J. March 28, 2011)
    .................................................................................................... 47, 48

O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567 (6th Cir. 2009) ............... 25, 27

Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. Phila., 874 F.2d 156
    (3d Cir. 1989) ..................................................................................22

Preiser v. Newkirk, 422 U.S. 395, 95 S. Ct. 2330, 45 L. Ed.2d 272 (1975) ...........17

Purcell v. BankAtlantic Fin. Corp., 85 F.3d 1508 (11th Cir. 1996) ........................24

R.I. Ass'n of Realtors v. Whitehouse, 199 F.3d 26 (1st Cir. 1999) ........................42

Rand v. Monsanto Co., 926 F.2d 596 (7th Cir. 1991) ....................................... 29, 44

Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392 (3d Cir. 2004)..................2

Sandoz v. Cingular Wireless, 553 F.3d 913 (5th Cir. 2008)............................. 19, 25

Sikirica v. Nationwide Ins. Co., 416 F.3d 214 (3d Cir. 2005)..................................2

Simmons v. United Mortg. & Loan, Inv., LLC, 634 F.3d 754 (4th Cir. 2011)........28

Sosna v. Iowa, 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed.2d 532 (1975) ........................
.......................................................................... 14, 30, 31, 32, 38, 41, 48

Symczyk v. Genesis Healthcare Corp., 656 F.3d 189 (3d Cir. 2011) ........................
.......................................................................... 19, 20, 29, 45, 49

U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 100 S. Ct. 1202, 63 L. Ed.2d 479
(1980)................................................................... 17, 27, 30, 31, 32, 38, 42, 48

United States v. Goodrich, 871 F.3d 1011 (11th Cir. 1989)....................................24

United States v. Gov't of Virgin Islands, 363 F.3d 276, 45 V.I. 764 (3d Cir. 2004).2

United States v. Jackson, 240 F.3d 1245 (10th Cir. 2001) ......................................24

United States v. Romain, 393 F.3d 63 (1st Cir. 2004)..............................................24

Valley Forge Christian College v. Americans United for Separation of Church and
State, Inc., 454 U.S. 464, 102 S. Ct. 752, 70 L. Ed.2d 700 (1982) ......................17

Warren v. Sessoms & Rogers, P.A., 676 F.3d 365 (4th Cir. 2012).........................25

Weiss v. Regal Collections Inc., 385 F.3d 337 (3d Cir. 2004)..................................
....12, 13, 14, 15, 19, 20, 23, 29, 30, 31, 34, 35, 36, 38, 39, 40, 41, 42, 44, 45, 47,
48, 49

Weitzner v. Vaccess America Inc. et al., 5 Pa. D & C.5th 95, 2008 Pa. Dist. & Cnty.
Dec. LEXIS 93 (Lackawanna Cty. June 27, 2008) ...........................................4, 5

## Statutes

15 U.S.C. §1692k(a)(2)(B) .............................................................. 34, 35

28 U.S.C. §1292(b) .........................................................................1, 2

28 U.S.C. §1292(c)(1) .........................................................................2

28 U.S.C. §1331 ...............................................................................1

28 U.S.C. §1332(d)(2)(A) ....................................................................1

47 C.F.R §64.1200(a)(3) ......................................................................8

47 U.S.C. §§227(b)(1)(C) ..............................................................8

47 U.S.C. §§227(b)(3)(A) ..............................................................8

47 U.S.C. §§227(b)(3)(B) ..............................................................7

47 U.S.C. §227 *et seq*..................................................... 1, 3, 8, 22

47 U.S.C. §227(b) ................................................................ 36, 40

47 U.S.C. §227(b)(3(A)-(B)............................................................8

47 U.S.C. §227(b)(3)..............................................................22, 39

## *Other Authorities*

137 Cong. Rec. S16204 (daily ed. Nov. 7, 1991)(statement of Sen. Hollings).......36

## *Rules*

Federal Rule of Civil Procedure 12(b)(1) ...................................... 11, 44

Federal Rule of Civil Procedure 12(b)(6) ................................................9

Federal Rule of Civil Procedure 23 ................................................................
................................................ 3, 30, 31, 32, 33, 37, 38, 44, 45, 46, 48, 49, 53

Federal Rule of Civil Procedure 68 ................................................................
.............................................. 1, 3, 9, 14, 18, 26, 27, 30, 35, 42, 44, 45, 48, 52, 53

Federal Rule of Civil Procedure 82 .......................................................27

Middle District of Pennsylvania Local Rule 23.3........................................... 11, 51

# I.  STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

### A. Basis for the District Court's Subject-Matter Jurisdiction

The District Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1331 because this matter arises under federal law, inasmuch as Plaintiffs' claims allege violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227 *et seq.* Because Plaintiffs filed this matter as a putative class action, they have also alleged that the District Court had jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. §1332(d)(2)(A).

### B. Basis for the Court of Appeals' Jurisdiction

The Court of Appeals has jurisdiction over this appeal pursuant to 28 U.S.C. §1292(b), following the district court's certification by order dated May 5, 2014 of the March 12, 2014 interlocutory order, which denied Defendants' Motion to Dismiss for lack of subject matter jurisdiction, for immediate appeal.

### C. Filing Dates Establishing Timeliness of the Appeal

By order and opinion dated May 5, 2014, the District Court certified its March 12, 2014 Order and Opinion, which denied Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction following their Rule 68 Offers, for immediate interlocutory appeal to the United States Court of Appeals for the Third Circuit. On May 15, 2014, Defendants filed their Petition for Permission to Appeal with this Court, within the ten (10) day timeframe for such Petition as set forth in

1

28 U.S.C. §1292(b), which was granted by this Court by Order dated July 17, 2014. This appeal followed.

### D. Information Establishing the Court of Appeals' Jurisdiction

By order and opinion dated May 5, 2014, following a Motion for Certification by Defendants, the District Court certified its March 12, 2014 Order and Opinion, which denied Appellants/Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction, for immediate interlocutory appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. §1292(b). Pursuant to 28 U.S.C. §1292(c)(1), the Third Circuit Court of Appeals has exclusive jurisdiction over this interlocutory appeal, which was certified as a controlling question of law by the district court.

## II.    STATEMENT OF THE SCOPE AND/OR STANDARD OF REVIEW

Whether an action is moot and divests the court of subject matter jurisdiction is a question of law, and therefore, is subject to plenary review. Samuel-Bassett v. KIA Motors Am., Inc., 357 F.3d 392, 396 (3d Cir. 2004); Marshall v. Pa. Dep't of Corr., 499 Fed. Appx. 131, 134 (3d Cir. 2012)(citing United States v. Gov't of Virgin Islands, 363 F.3d 276, 284 (3d Cir. 2004)). Any factual findings made by the district court are reviewed under the clearly erroneous standard. Lightfoot v. United States, 564 F.3d 625, 626 (3d Cir. 2009)(citing Sikirica v. Nationwide Ins. Co., 416 F.3d 214, 219 (3d Cir. 2005)).

## III.    STATEMENT OF THE ISSUE(S)

The following issue is presented for review:

> Whether an unaccepted offer of judgment under *Federal Rule of Civil Procedure 68* in a putative class action, when the offer is made before the plaintiff files a motion for class certification pursuant to *Federal Rule of Civil Procedure 23*, moots the plaintiff's entire action, including the putative class claims, and thereby deprives the court of federal subject matter jurisdiction.

This issue was certified by the District Court for immediate interlocutory appeal by its May 5, 2014 Order and Opinion. Joint Appendix [hereinafter, "JA"] at 21a-26a.  The issue was raised in Defendants' Motion to Dismiss for lack of subject matter jurisdiction, which was denied by Judge Caputo's March 12, 2014 Order. JA11a, 121a-124a.

## IV.    STATEMENT OF RELATED CASES and PROCEEDINGS

### A. Previous Litigation in Lackawanna County

Plaintiff, Ari Weitzner, M.D., commenced a class action in the Court of Common Pleas of Lackawanna County, Pennsylvania by filing a class action complaint on February 14, 2005 against Defendants at Lackawanna County Docket No. 05-CV-645. Weitzner v. Vaccess America Inc. et al., 5 Pa. D & C.5[th] 95, 96 (Lack Cty. Com. Pl. June 27, 2008)[1]. In that action, Weitzner sought to represent a class of individuals who, as he alleges, received unsolicited facsimile advertisements from Defendants in violation of the TCPA, 47 U.S.C. §227 *et seq*.

---

[1] The trial court's opinion in the Lackawanna County action is also contained at JA196a-229a.

3

<u>Id.</u> The class was identified as "himself 'and all others similarly situated' who received unsolicited facsimile advertisements from the Defendants" between January 2, 2001 and "the date of the resolution of this lawsuit." <u>Weitzner,</u> 5 Pa. D. & C.5[th] at 97.[2]

Following extensive discovery between the parties, on October 29, 2007, Defendants filed a Motion for Summary Judgment and Weitzner filed a Motion for Leave to Amend the Complaint. <u>Weitzner</u>, 5 Pa. D & C.5[th] at 96. In their Motion for Summary Judgment, Defendants argued that Weitzner lacked standing to maintain the action, that the claims were barred by the statute of limitations, and that Weitzner had not sufficiently alleged a violation of the TCPA by Defendant, Sanofi Pasteur Inc. <u>Weitzner,</u> 5 Pa. D & C.5[th] at 96-97. Oral argument occurred, and on June 27, 2008, the court issued a Memorandum Opinion and Order in response to the parties' motions, effectively stripping the suit of its class action character, holding:

(1) Governing law prevents TCPA nationwide class action from being maintained in Pennsylvania courts.

(2) Ari Weitzner, M.D. is not an appropriate representative Plaintiff to represent, "all others similarly situated" for putative class action purposes.

(3) The two year Pennsylvania Statute of Limitations governs private TCPA claims within our Commonwealth.

_____
[2] <u>See</u> <u>also</u> Lackawanna County Complaint, ECF Doc. 21-3.

4

(4) The remaining individual private TCPA claim of the Plaintiff is restricted to any unsolicited facsimile transmissions that were received by Plaintiff within two years of the date of the filing of the Complaint.

Weitzner, 5 Pa. D & C.5[th] at 127-28. Weitzner's individual claim remains pending in Lackawanna County. Id.

## V.    STATEMENT OF THE CASE

### A. RELEVANT FACTS

#### 1.    The Parties

##### a.    Appellants/Defendants

Appellant/Defendant, Sanofi Pasteur Inc., formerly known as Aventis Pasteur Inc., is a Delaware corporation with its principal place of business at Discovery Drive, Swiftwater, Pennsylvania. JA39a, 47a, 63a-64a (Complaint ¶¶8-9, Defs. Answers ¶¶8-9). Appellant/Defendant, VaxServe Inc., formerly known as Vaccess America Inc., is a Pennsylvania corporation with its principal place of business formerly at 111 North Washington Avenue, Scranton, Pennsylvania.[3] Id. VaxServe Inc. is wholly owned by Sanofi Pasteur Inc., with a separate board of directors, business records, employees and principal place of business [hereinafter, collectively, "Defendants"]. Id. Plaintiffs allege that Defendants violated the law, but do not specify allegations as to which entity, if any, transmitted the facsimiles. JA39a-41a (Complaint ¶¶13-22). Sanofi Pasteur Inc. has denied that it transmitted

---

[3]    VaxServe Inc. has relocated its principal place of business to 54 Glenmaura National Boulevard, Suite 301, Moosic, Lackawanna County, Pennsylvania.

any facsimile advertisements at any time. JA48a-49a (Def. Answer ¶¶13-22).

### b.    Appellees/Plaintiffs

The Named Plaintiffs are serial TCPA litigants who have filed suits like this in other jurisdictions.[4] Appellee/Plaintiff, Ari Weitzner, M.D., maintains his office at 1302 Kings Highway, 3rd Floor, Brooklyn, New York, 11229, and is the sole owner of Appellee/Plaintiff, Ari Weitzner, M.D., P.C. [hereinafter, collectively, "Plaintiffs"], a professional corporation organized and existing under the laws of New York, which maintains its principal place of business at 1302 Kings Highway, 3rd Floor, Brooklyn, New York, 11229. JA39a (Complaint ¶¶6-7).

### 2.    Class Allegations

Plaintiffs filed the district court action on behalf of themselves and all others similarly situated. Plaintiffs have alleged a classic fail-safe class, defining the putative class as:

> [A]ll persons or entities (i) whose facsimile numbers were licensed, rented or purchased by defendants VaxServe or Sanofi from List

---

[4]     See Weitzner v. Cynosure, Inc., No. 12-CV-03668 (E.D.N.Y.); Weitzner v. Dermamed USA, Inc., No. 05-CV-2528, Weitzner v. Intralase Corp., No. 05-CV-02529, Weitzner v. Micro-Med, Inc., No. 05-CV-2530, Weitzner v. National Physicians Datasource LLC, No. 05-CV-2531, Weitzner v. Refractec, Inc., No. 05-CV-2532, Weitzner v. Sciton, Inc., No. 05-CV-2533 (E.D.N.Y. all filed May 24, 2005); Weitzner v. Direct Capital Corp., No. 06-CV-1631 and Weitzner v. Medisurg Research and Mgmt. Corp., No. 06-CV-01632 (E.D.N.Y. both filed Apr. 7, 2006); Weitzner v. Iridex Corp., No. 05-CV-1254 (E.D.N.Y. Mar. 2, 2005); Weitzner v. Syneron, Inc., No. 05-CV-5299 (E.D.N.Y. Nov. 7, 2005); Weitzner v. Everett Labs. Inc., 737-05 (N.J. Super. Ct. filed Jan. 13, 2005).

> Strategies, Inc.; (ii) whose facsimile numbers did not exist in defendants' database on the date of defendants' receipt thereof from List Strategies, Inc.; and (iii) who received an unsolicited facsimile advertisement transmitted to them on behalf of defendants by VisionLab, Inc., Westfax, Inc., or Velofax LLP between February 14, 2005 and the date of the resolution of this lawsuit.

JA40a (Complaint ¶17). Despite the fact that Plaintiffs' class definition spans nearly ten (10) years, no other class members have ever come forward or joined in the matter to assert their own claims, even after Weitzner was deemed not to be an appropriate representative to represent a putative class in the Lackawanna County action. JA27a-37a (Docket Entries); Weitzner, 5 Pa. D & C.5[th] at 119-122.[5]

Plaintiffs do not specifically identify a date on which they received an unsolicited facsimile advertisement from either Defendant. JA39a (Complaint ¶¶10-11). Rather, Plaintiffs use the following vague language to identify the date of any alleged TCPA violation:

> Beginning at least as early as April 21, 2004, Defendants transmitted more than 10,000 facsimiles to Plaintiffs and the other members of the Class ("Defendants' facsimiles").

Id. Plaintiffs seek the following relief:

> (a)  Awarding Plaintiffs and the other Members of the Class statutory damages pursuant to 47 U.S.C. §§227(b)(3)(B) in the amount of $500.00 per violation;
>
> (b)  Awarding Plaintiffs and the other Members of the Class additional statutory damages pursuant to 47 U.S.C. §§227(b)(3)(B) in the amount of $1,000.00 per violation in the event that this Court finds that such violations were committed

---

[5] See also Lackawanna County Docket Sheet, ECF Doc. 21-1.

willfully or knowingly;

(c)   Issuing an Order, pursuant to 47 U.S.C. §§227(b)(3)(A), enjoining Defendant from violating 47 U.S.C. §§227(b)(1)(C) and 47 C.F.R §64.1200(a)(3); and

(d)   Awarding to Plaintiffs the costs and disbursements of this action, and reasonable attorney's fees, and such other further relief as this Court deems just and proper.

JA42a (Complaint).

The alleged facsimile advertisements have not been provided or attached to the complaint, nor have Plaintiffs identified any specific date on which each received a facsimile. JA14a (March 12, 2014 Op.); 38a-42a (Complaint). Plaintiffs do not seek actual damages, but seek statutory damages pursuant to 47 U.S.C. §227(b)(3)(A)-(B) of $500 per violation. Id. Plaintiffs seek the trebling of those damages if Defendants willfully or knowingly violated the TCPA, pursuant to 47 U.S.C. §227(b)(3)(C). Id. Plaintiffs also seek injunctive relief, enjoining Defendants from further violations of the TCPA. JA42a.

## B. PROCEDURAL HISTORY

Following extensive, protracted litigation in Lackawanna County, and a three-year lapse since the June 27, 2008 Opinion, Plaintiffs commenced this action by filing a putative class action complaint on November 26, 2011. JA38a-42a (Complaint). Plaintiffs allege one count based upon violations of the Telephone Consumer Protection Act (TCPA), 47 U.S.C. §227 *et seq*. JA40a-41a (Complaint ¶¶14-16). On February 6, 2012, Defendants filed a Motion for Abstention, or in the

alternative, to Dismiss Plaintiffs' Complaint pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, to Stay Proceedings. JA30a (Docket Entries).[6] Following extensive briefing by the parties, oral argument on Defendants' Motion occurred on April 26, 2012. JA31a (Id.).[7] On May 14, 2012, the District Court issued an order and memorandum opinion denying the Motions. JA32a (Id.).[8] On September 26, 2013, the District Court denied Defendants' Motion for Reconsideration. JA33a (Id.).[9] On November 12, 2013, Defendants filed their Answers and Affirmative Defenses to Plaintiffs' Complaint. JA45a-76a (Defs. Answers). Although this case has been pending in federal court for nearly three  years, Plaintiffs still have not moved for class certification. JA27a-37a (Docket Entries). Nor did Plaintiffs move for class certification in the Lackawanna County action. Weitzner, 5 Pa. D. & C.5[th] at 107-112.[10]

### 1.    Defendants' Offers of Judgment

Discovery in the state court action revealed that, at most, Plaintiffs received eleven (11) facsimile advertisements from VaxServe Inc. On November 15, 2013, Defendants served Plaintiffs with Offers of Judgment pursuant to Federal Rule of Civil Procedure 68. JA95a-110a (Declaration). The Offers of Judgment offered

---

[6] See also ECF Docs. 20 and 21.
[7] See also ECF Docs. 34 and 43.
[8] See also ECF Docs. 37 and 38.
[9] See also ECF Docs. 53 and 54.
[10] See also Lackawanna County Docket Sheet, ECF Doc. 21-1.

Plaintiffs complete relief on an individual basis in the form of the maximum statutory damages available to each of them under the TCPA, and injunctive relief. Id. Specifically, the Offers of Judgment offered to allow entry of judgment on the following terms, in relevant part:

- The sum of $1,500 for each and every facsimile advertisement sent to Plaintiffs beginning at least as early as April 21, 2004 as alleged in Plaintiffs' complaint, and in addition, any such other relief which is determined by a court of competent jurisdiction to be necessary to fully satisfy all of the individual claims of Plaintiffs;

- The amount is calculated as $1,500 per alleged facsimile transmission, which includes treble damages available pursuant to applicable law, shall be increased by such amount, at the rate of $1,500 for each such facsimile as may be determined by a court of competent jurisdiction to be necessary to fully satisfy all of the individual claims of Plaintiffs;

- The Offers of Judgment included costs accrued to date in the civil action, in an amount to be submitted by counsel by affidavit;

- The Offers of Judgment also provide that Defendants agree not to transmit any facsimile advertisements which are in violation of 47 U.S.C. §227 *et seq.* to Plaintiffs;

JA98a-99a, 105a-106a (Declaration).

Plaintiffs did not respond to Defendants' Offers. JA91a-92a (Id.). Critically, they did not dispute that the Offers provide them with the maximum relief available on an individual basis if this case ultimately was litigated to a decision on the merits. JA14a (March 12, 2014 Op.). On December 4, 2013, Defendants filed a

Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1). JA77a (Defs. Motion). By opinion and order dated March 12, 2014, the District Court denied Defendants' Motion. JA6a-20a (March 12, 2014 Op. and Order). On March 26, 2014, Defendants filed a Motion requesting that the District Court enter an order certifying the March 12, 2014 Order denying Defendants' Motion to Dismiss for immediate interlocutory appeal to this Court. JA436a-529a (Motion to Certify).

By Order dated May 5, 2014, Judge Caputo granted Defendants' Motion, certifying the March 12, 2014 Order for immediate appeal, and Defendants filed their Petition for Permission to Appeal within ten (10) days of the District Court's May 5, 2014 Order. JA21a (May 5, 2014 Order). By order dated July 17, 2014, a panel of this Court granted permission for the certified interlocutory appeal. JA1a (Notice of Appeal).

It is undisputed that Plaintiffs did not move for class certification within the 90-day deadline set forth in Middle District of Pennsylvania Local Rule 23.3. See M.D. Pa. L.R. 23.3; JA26a-36a (Docket Entries). Plaintiffs moved for leave to file a brief in support of their class certification motion in excess of fifteen (15) pages on April 24, 2014, which the District Court granted by Order dated April 25, 2014. JA36a (Docket Entries).[11] Plaintiffs, however, did not file a motion for class

_____

[11] See also ECF Docs. 72 and 73.

11

certification before the district court stayed the proceedings and have not filed, in this proceeding or in the Lackawanna County action, a motion for class certification. JA27a-37a (Docket Entries); <u>Weitzner</u>, 5 Pa. D & C.5th at 119-122.[12]

## C. RULINGS PRESENTED FOR REVIEW

The district court denied Defendants' Motion to Dismiss by Order dated March 12, 2014. Although acknowledging the considerable authority supporting Defendants' contention that the claims of the Plaintiffs and putative class were moot, the court held that Defendants' unaccepted Offers of Judgment did not render the case moot because of the applicability of the "relation-back doctrine" espoused in <u>Weiss v. Regal Collections Inc.</u>, 385 F.3d 337 (3d Cir. 2004).

The district court concluded that "because [D]efendants' Rule 68 offer[s] included no relief for the putative class….[the court] addresses the mootness question in that context." JA14a-15a (March 12, 2014 Op.). In considering the mootness of Plaintiffs' claims in that context, the district court determined that the "relation-back doctrine" applied, and that there had "not been undue delay in the filing of a motion for class certification." JA16a (<u>Id.</u>). The district court further concluded "[b]ecause <u>Genesis Healthcare</u> involved a [Fair Labor Standards Act (FLSA)] action and not a putative Rule 23 class action, the Court disagrees with

---

[12] <u>See</u> <u>also</u> Lackawanna County Docket Sheet, ECF Doc. 21-1.

Defendants and finds that it remains bound by the Third Circuit's opinion in

Weiss." JA17a (Id.). The district court held that the Offers of Judgment provided

for complete relief for Plaintiffs as individuals acting in their personal capacities,

but held that since there was no undue delay regarding the filing of a motion to

certify a class, class certification would relate back to the filing of the complaint.

JA14a, 20a (March 12, 2014 Op.). Defendants' Motion was therefore denied. Id.

## VI.    SUMMARY OF ARGUMENT

Article III confers upon federal courts jurisdiction over actual cases and

controversies, requiring that a plaintiff maintain a "personal stake" in litigation,

which must be "extant at all stages of review, not merely at the time the complaint

is filed." Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528, 185 L. Ed.

2d 636 (2013)(citing Arizonans for Official English v. Arizona, 520 U.S. 43, 67,

117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997)(quoting Preiser v. Newkirk, 422 U.S.

395, 401, 95 S. Ct. 2330, 45 L. Ed. 2d 272 1975)). Federal courts lack jurisdiction

over actions that have become moot. An action becomes moot whenever there

ceases to be an actual case or controversy, and thus the plaintiffs no longer

maintain that "personal stake" in the outcome. The Third Circuit, and several other

Circuits, has consistently held that an unaccepted offer of judgment renders a

federal action moot, and thus deprives the party of the necessary "personal stake"

to continue the action. Federal courts lack jurisdiction once a case has been

13

rendered moot, regardless of the manner in which the case became moot, whether by a Rule 68 Offer of Judgment or otherwise. Parties seeking to invoke federal jurisdiction must demonstrate a "legally cognizable" interest – the requisite "personal stake" - at all stages of the litigation. Once a party's claim is rendered moot, such "legally cognizable" interest or "personal stake" no longer exists, and thus federal jurisdiction is lacking, and the action should be dismissed.

Plaintiffs' action became moot when Defendants made Offers of Judgment for everything which Plaintiffs could recover under those claims, because at that point, Plaintiffs no longer had a "personal stake" in the outcome of the case and there no longer remained a case or controversy conferring jurisdiction under Article III. The district court correctly held that an unaccepted offer of judgment under Rule 68 in a purported class action moots a Plaintiff's claim if the offer is made before the Plaintiff files a motion to certify the class. The district court also correctly held that Defendants' Rule 68 offers provided for complete relief to Plaintiffs as individuals acting in their personal capacities, and that Plaintiffs did not challenge the sufficiency of the offers of Defendants. JA14a (March 12, 2014 Op.).

The district court erred in applying the relation-back doctrine as set forth in Weiss, and originally introduced in Sosna v. Iowa, 419 U.S. 393, 95 S. Ct. 553, 42 L. Ed. 2d 532 (1975), given the Supreme Court's recent decision in Genesis

14

Healthcare. <u>Genesis Healthcare</u> has abrogated the applicability of the <u>Weiss</u> "relation-back" doctrine, and redefined the narrow and limited exceptions in which such relation-back doctrine should be applied. At the time of Defendants' Offers of Judgment, Plaintiffs had not filed for class certification, thus Defendants' Offers rendered Plaintiffs' individual claims moot. At that point, Plaintiffs no longer possess a legally cognizable interest or personal stake in the outcome of the action, and the action should have been dismissed.

The district court erred in applying <u>Weiss</u>, and specifically, the "relation-back" doctrine, given the Supreme Court's decision in <u>Genesis Healthcare.</u> The Supreme Court has made clear that the "relation-back" doctrine does not apply to claims that are not so "inherently transitory" as to evade review, such as Plaintiffs' claims that seek statutory damages. Thus, the "relation-back" doctrine is inapplicable, and the district court erred in denying Defendants' Motion. The district court also erred in holding that there had not been undue delay in the filing of a motion for class certification by Plaintiffs. Indeed, Plaintiffs have still not filed such a motion, even though the alleged violative conduct occurred "beginning at least as early as April 21, 2004" and this litigation has been pending for nearly three years. JA27a-37a (Docket Entries); JA38a (Complaint ¶10).

The existence of class action allegations under Rule 23 cannot prevent mootness because no class was ever certified, and a motion for class certification

has not been filed, even though the alleged violative conduct dates back to April 2004, more than ten years ago.  In light of the Supreme Court's decision in <u>Genesis Healthcare,</u> the "relation-back" doctrine is inapplicable to Plaintiffs' claims, and thus, the district court erred in applying it and denying Defendants' motion. No no class has been certified in this matter, and thus the putative class does not have a separate, independent legal status. Plaintiffs' individual claims are moot and they have no "legally cognizable" interest or "personal stake" in pursuing claims on behalf of the non-party putative class members, thus the entire action is moot. The district court erred in holding that Plaintiffs could continue to pursue claims on behalf of the absent putative class members merely by rejecting Defendants' offers of full and complete relief for their individual claims, which will result in needless and protracted litigation. The district court's decision was clearly in error, and should be reversed.

## VII.  <u>ARGUMENT</u>

### A. Article III, Section 2 of the United States Constitution requires that a plaintiff maintain a "legally cognizable" interest or "personal stake" in the outcome at all stages of litigation.

Article III, Section 2 of the United States Constitution confers upon federal courts the authority to hear actual "cases" and "controversies." <u>Genesis Healthcare,</u> 133 S. Ct. at 1528 (quoting <u>Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,</u> 454 U.S. 464, 471, 102 S. Ct. 752, 70 L.

Ed. 2d 700 (1982)). To invoke federal court jurisdiction, a plaintiff must have a "legally cognizable interest" or a "personal stake" in the outcome of the action. Genesis Healthcare, 133 S. Ct. at 1528 (citing Camreta v. Greene, 131 S. Ct. 2020, 179 L. Ed. 2d 1118 (2011)). This "personal stake" must remain "extant at all stages of review, not merely at the time the complaint is filed." Genesis Healthcare, 133 S. Ct. at 1528 (citations omitted). In order to maintain a "legally cognizable" interest to avoid mootness, a party must maintain a "personal stake" in the lawsuit throughout the duration of the litigation. U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980); Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)).

This requirement that a plaintiff must at all times maintain a "personal stake" in the outcome of the litigation ensures that the "Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved." Genesis Healthcare, 133 S. Ct. at 1528. As the Supreme Court stated in Genesis Healthcare, a "corollary to this case-or-controversy requirement is that 'an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed.'" Id. (citations omitted). If "an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any

point during litigation, the action can no longer proceed and must be dismissed as moot.'" Genesis Healthcare, 133 S. Ct. at 1528 (citations omitted).

Accordingly, the Named Plaintiffs must maintain a "legally cognizable" interest or "personal stake" in the outcome of the action in all stages of litigation in order to avoid mootness of their claims.

### B. Under established Third Circuit precedent, an unaccepted offer of complete relief to a plaintiff under Rule 68 renders a plaintiff's claim moot, even in a putative class action.

#### 1.    Federal Rule of Civil Procedure 68

Defendants tendered Offers of Judgment to the Named Plaintiffs pursuant to Federal Rule of Civil Procedure 68, which states, in pertinent part:

> **Making an Offer; Judgment on an Accepted Offer.** At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.
>
> **Unaccepted offer.** An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs.

Fed. R. Civ. P. 68(a) and (b).

An offer of complete relief, such as a Rule 68 offer of judgment which offers the maximum relief a plaintiff may recover, moots a plaintiff's claim(s) because the plaintiff no longer has the "personal stake" in the outcome of the litigation

required by Article III. See Genesis Healthcare, 133 S. Ct. 1523; Symczyk v. Genesis Healthcare Corp., 656 F.3d 189, 201 (3d Cir. 2011); Weiss, 385 F.3d at 340. This is so because "at that point the plaintiff retains no personal interest in the outcome of the litigation" and thus there is no "case" or "controversy" for the court to adjudicate. Genesis Healthcare, 133 S. Ct. at 1529. An unaccepted offer of complete relief is sufficient to moot a plaintiff's claim. Genesis Healthcare, 133 S. Ct. at 1529 n.4 (citing Weiss, 385 F.3d at 340; Greisz v. Household Bank (Ill.), N.A., 176 F.3d 1012, 1015 (7th Cir. 1999)). Even a rejected Rule 68 Offer of Judgment which "satisfies the entirety of plaintiff's claim" will moot that claim. See Sandoz v. Cingular Wireless, 553 F.3d 913, 921 (5th Cir. 2008); Weiss, 385 F.3d at 342.

### 2. An unaccepted offer of complete relief renders a plaintiff's claim moot.

In Weiss, this Court unequivocally held that an unaccepted offer of complete relief moots a plaintiff's claim. Weiss, 385 F.3d at 340, 342. The Supreme Court in Genesis Healthcare assumed, without deciding, that an unaccepted offer of judgment for the maximum relief available moots a plaintiff's claim, as determined by the district court and this Court in that appeal. Genesis Healthcare, 133 S. Ct. at 1532 ("The Third Circuit clearly held in this case that respondent's individual claim was moot."). This Circuit has continued to apply this principle, as recently as

19

last month. See Boyle and Luongo v. Int'l. Brotherhood of Teamsters Local 863

Welfare Fund, 2014 U.S. App. LEXIS 16630 at *5, No. 12-4578 (3d Cir. Aug. 28,

2014)(noting that "a unilateral offer of relief that fails to cover the entire claim

does not render moot a plaintiff's claim," but noting plaintiff's claim would

become moot if offer of relief was made for entire claim.)[A true and correct copy

is attached as Attachment 1].

    The Third Circuit, therefore, has determined that an unaccepted offer of

complete relief renders a plaintiff's claim moot. Weiss, 385 F.3d at 340 (citing

Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)("Once the defendant

offers to satisfy the plaintiff's entire demand, there is no dispute over which to

litigate and a plaintiff who refuses to acknowledge this loses outright, under Fed.

R. Civ. P. 12(b)(1), because he has no remaining stake.")) Accordingly, it is well-

settled that an unaccepted offer of judgment of full relief renders a plaintiff's claim

moot, and that the Third Circuit has continued to follow this precedent. Symczyk,

656 F.3d at 196-97; Weiss, 385 F.3d at 340, 342 (3d Cir. 2004); Brown v. Phila.

Hous. Auth., 350 F.3d 338, 343 (3d Cir. 2003)(citing Lusardi v. Xerox Corp., 975

F.2d 964, 974 (3d Cir. 1992)).

    The district court correctly followed well-settled Third Circuit precedent in

holding that an unaccepted offer of complete relief moots a plaintiff's claim. JA12a

20

(March 12, 2014 Op.)(noting that "the Court remains bound by that opinion [in Weiss].".). The district court, erred, however, in holding that the action should not be dismissed, as explained below.

### 3. Defendants' Offers of Judgment rendered the Named Plaintiffs' claims moot.

Defendants' Offers of Judgment offered complete relief to the Named Plaintiffs, offering $1,500 per alleged violation, as succinctly restated by the district court:

> [T]o settle any and all claims brought, or which could have been brought, against Defendants, Defendants offer to pay Plaintiff the sum of $1,500 for each and every facsimile advertisement sent to Plaintiff beginning at least as early as April 21, 2004 as alleged in Plaintiffs' complaint filed in this matter, and in addition any such other relief which is determined by a court of competent jurisdiction to be necessary to fully satisfy all of the individual claims of Plaintiff…arising out of or related to the transmission of facsimile advertisements sent to Plaintiff…by or on behalf of Defendants…The number of facsimiles sent to Plaintiff is understood to be eleven (11) facsimile transmissions…This amount is calculated as $1,500 per alleged facsimile transmission, which includes treble damages available pursuant to applicable law, and as set forth above, shall be increased by such amount, at the rate of $1,500 for each such facsimile as may be determined by a court of competent jurisdiction to be necessary to fully satisfy all of the individual claims of Plaintiff…arising out of or related to the transmission of facsimile advertisements sent to Plaintiff….by or on behalf of Defendants, together with any such other relief which is determined by a court of competent jurisdiction to be necessary to fully satisfy all of the claims of Plaintiff…

21

JA13a (March 12, 2014 Op.). Defendants offered Plaintiffs the maximum relief available to them: $1,500 per facsimile, which is the maximum statutory damages available pursuant to 47 U.S.C. §227(b)(3). Defendants' Offers also included a provision that Defendants would agree not to transmit any facsimile advertisements in violation of 47 U.S.C. §227 *et seq.* to Plaintiffs. JA13a (March 12, 2014 Op.); 98a, 105a (Declaration). Accordingly, Plaintiffs' claim for injunctive relief also became moot when Defendants offered to agree to not transmit any facsimile advertisements to Plaintiffs in violation of 47 U.S.C. §227 *et seq.*, as there is no evidence or argument by Plaintiffs that Defendants' alleged violative conduct has continued or will reasonably be expected to recur. See Phila. Police & Fire Ass'n for Handicapped Children, Inc. v. Phila., 874 F.2d 156, 161 (3d Cir. 1989)("A case may become moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have 'completely and irrevocably eradicated the effects of the alleged violation.")

Plaintiffs have not challenged the sufficiency of Defendants' Offers and did not assert that Defendants' Offers failed to offer the maximum statutory relief available, or that they received more than the eleven (11) faxes. JA14a (March 12, 2014 Op.). As such, the district court properly held that the Offers provided

22

complete relief to Plaintiffs as individuals acting in their personal capacities. Id. The district court erred, however, in addressing the mootness determination in the context of the putative class, applying the "relation-back" doctrine as set forth in Weiss, and holding that the entire action should not be dismissed. As Plaintiffs have been offered the maximum relief they could have received, Plaintiffs' individual claims are moot. Because Plaintiffs' individual claims are moot, and because a motion for class certification has not been filed, Plaintiffs' entire action should be dismissed.

> **4.    The Ninth Circuit's decision in <u>Diaz</u>, and Justice Kagan's Dissenting Opinion in <u>Genesis Healthcare,</u> are not binding on this Court.**

Plaintiffs have relied heavily on Justice Kagan's dissenting opinion in their challenges to Defendants' Motion to Dismiss and in this appeal. Plaintiffs expressly urged the district court to adopt the Ninth Circuit's approach in Diaz, which adopted the rationale in Justice Kagan's dissent in Genesis Healthcare, but the district court properly refused. JA12a (March 12, 2014 Op.). The district court rejected Plaintiffs' argument that it should adopt the Ninth Circuit's decision in Diaz, holding that the Third Circuit has "clearly addressed the issue at hand" in Weiss and thus the district court correctly held that it was not bound by Diaz, which had adopted the position set forth in Justice Kagan's dissenting opinion. Id.

A dissenting opinion, even one in a decision of the Supreme Court of the

United States, is not binding precedent. <u>United States v. Romain,</u> 393 F.3d 63, 74 (1st Cir. 2004). Justice Kagan's dissenting opinion is not binding precedent because it does not foretell how the majority of the Court would decide the issue in this appeal - whether an unaccepted offer of judgment under Rule 68 in a putative class action, when the offer is made before the plaintiff files a motion for class certification, moots the plaintiff's entire action, including the putative class claims, and thereby deprives the court of federal subject matter jurisdiction - but only sets forth the position of the dissenting Justices. See <u>Purcell v. BankAtlantic Fin. Corp.,</u> 85 F.3d 1508, 1513 (11th Cir. 1996)(citing <u>United States v. Goodrich,</u> 871 F.3d 1011, 1013 (11th Cir. 1989)); <u>United States v. Jackson</u>, 240 F.3d 1245, 1249 (10th Cir. 2001), *appeal after remand,* 60 Fed. Appx. 726 (10th Cir. 2003), *cert. denied* 540 U.S. 851, 124 S. Ct. 136 (2003)). The majority in <u>Genesis Healthcare</u> declined to reach the issue of whether an unaccepted offer of judgment moots a plaintiff's claim, and Justice Kagan's dissenting opinion, and the reasoning set forth therein, contradicts the law regarding mootness as recognized in nearly every other Circuit Court of Appeals.[13]

Although there remains a split among the Circuits on whether an unaccepted offer of judgment renders a claim moot, several Circuits have adopted the same or similar approach as the Third Circuit. See <u>McCauley v. TransUnion, LLC,</u> 402

---

[13]    The Ninth Circuit has chosen to adopt the dissenting opinion of Justice Kagan as its approach in its decision in <u>Diaz</u>, 732 F.3d at 954-55 (9th Cir. 2013).

F.3d 340, 342 (2d Cir. 2005)(holding that mootness is not avoided because a defendant does not admit liability when the maximum relief has been offered); Doyle v. Midland Credit Mgmt., Inc., 722 F.3d 78, 80 (2d Cir. 2013)(holding that an offer need not comply with *Rule 68* in order to render a case moot under Article III); Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 371 (4th Cir. 2012)("[w]hen a Rule 68 offer unequivocally offers a plaintiff all of the relief she sought to obtain, the offer renders the plaintiff's action moot."); O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 574-75 (6th Cir. 2009)("an offer of judgment that satisfies a plaintiff's entire demand moots the case," but holds that "the better approach is to enter judgment in favor of the plaintiffs in accordance with the defendants' Rule 68 offer of judgment."); Damasco v. Clearwire Corp., 662 F.3d 891, 896 (7th Cir. 2011)(holding that an unaccepted Rule 68 offer moots a plaintiff's claims and the claim is dismissed); Cf. Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 920-21 (5th Cir. 2008)(A named plaintiff in a proposed class action for monetary relief may proceed to seek timely class certification where an unaccepted offer of judgment is tendered in satisfaction of the plaintiff's individual claim before the court can reasonably be expected to rule on the class certification motion); Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1250 (10th Cir. 2011)(*Same*). The Ninth Circuit, however, has held that an unaccepted Rule 68 Offer does not render a plaintiff's claim moot. Diaz, 732 F.3d at 954-55 ("an

unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot.").

Clearly, Justice Kagan's dissenting opinion is not indicative of what the majority would hold if the issue of whether an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot were before the Court. See Genesis Healthcare, 133 S. Ct. at 1528-29. The majority, although refraining from deciding the issue, did note that "[c]ontrary to the dissent's assertion…nothing in the nature of FLSA actions precludes satisfaction – and thus the mooting – of the individual's claim before the collective-action component of the suit has run its course," casting substantial doubt on the majority's acceptance of Justice Kagan's approach. Id. at 1529 n.4. Accordingly, Justice Kagan's dissenting opinion is not binding precedent and is irrelevant to this appeal. The district court properly rejected the application of Diaz, which adopted the position set forth in Justice Kagan's dissent.

> **5.     The fact that Plaintiffs have not accepted Defendants' Offers does not preclude a finding that Plaintiffs' claims are moot. The district court may enter judgment in favor of the Named Plaintiffs individually in the amount of Defendants' Offers and dismiss the action.**

To the extent Plaintiffs argue that they have not received the maximum relief available because a judgment has not been entered, the matter can easily be remanded to the district court for an entry of judgment. The Second and Sixth

Circuits have followed a similar approach. In <u>McCauley</u>, the Second Circuit held that the proper disposition is for the district court to enter judgment against the defendant for the proffered amount, requiring defendant to pay the judgment amount to plaintiff. <u>McCauley,</u> 402 F.3d at 342. In <u>O'Brien,</u> the Sixth Circuit held that the "better approach is to enter judgment in favor of the plaintiffs in accordance with the defendants' Rule 68 offer of judgment," following a line of cases in the Second Circuit. <u>O'Brien,</u> 575 F.3d at 575 (citing <u>Greif v. Wilson, Elser, Moskowitz, Edelman & Dicker LLP</u>, 258 F. Supp. 2d 157, 160-61 (E.D.N.Y. 2003); <u>Ambalu v. Rosenblatt</u>, 194 F.R.D. 451, 453 (E.D.N.Y. 2000)). Such similar argument would not preclude the proper finding of mootness and dismissal in this case.

### C. Because the Named Plaintiffs' individual claims are moot, the entire action should be dismissed for lack of subject matter jurisdiction, as none of the exceptions to the mootness doctrine relating to class actions is applicable.

In order to maintain a "legally cognizable" interest to avoid mootness, a party must maintain a "personal stake" in the lawsuit throughout the duration of the litigation. <u>Geraghty</u>, 445 U.S. at 397, 100 S. Ct. 1202, 63 L. Ed. 2d 479 (1980); <u>Lewis</u>, 494 U.S. at 477, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990)). This is the relevant inquiry. Rules of Civil Procedure cannot preclude dismissal mandated by Article III of the Constitution, requiring a court to hear a case in which there remains no live controversy. <u>See</u> Fed. R. Civ. P. 82 ("These rules do extend or

limit the jurisdiction of the district courts or the venue of actions in those courts.")
The "doctrine of mootness is…not constrained by the formalities of Rule 68."
Simmons v. United Mortg. & Loan, Inv., LLC, 634 F.3d 754, 764 (4th Cir. 2011).
Nor is it confined by the formalities of Rule 23. Mootness is "an issue concerning
the subject-matter jurisdiction of the federal courts" and is not restrained by the
application of Rule 23. Cnty. of L.A. v. Davis, 440 U.S. 625, 631, 99 S. Ct. 1379,
59 L. Ed. 2d 642 (1979); Cornucopia Inst. V. U.S. Dep't of Agric., 560 F.3d 673,
676 (7th Cir. 2009)). The fact that an action is filed as a putative class action does
not avoid mootness when the Named Plaintiffs have received the maximum relief
possible, and none of the limited exceptions apply. When a matter becomes moot,
there is no "case" or "controversy" for a federal court to address because the
plaintiff no longer has a "personal stake" in the outcome, and thus the court is
divested of jurisdiction. See Genesis Healthcare, 133 S. Ct. at 1528 (citing Lewis,
494 U.S. 472, 477-78). The Supreme Court has explained that courts "have 'no
business' in deciding legal disputes or expounding on law in the absence of such a
case or controversy." Already LLC v. Nike, Inc., 133 S. Ct. 721, 726, 184 L. Ed.
2d 553 (2013)(quoting Daimler Chrysler Corp. v. Cuno, 547 U.S. 332, 341, 126 S.
Ct. 1854, 164 L. Ed.2d 589 (2006)). Such is the case here.

    In the Third Circuit, an unaccepted offer of judgment of full relief renders a

plaintiff's claim moot. Symczyk, 656 F.3d at 196-97; Weiss, 385 F.3d at 340, 342 (3d Cir. 2004); Brown, 350 F.3d at 343 (citing Lusardi, 975 F.2d at 974). Under traditional mootness principles, "an offer for the entirety of a plaintiff's claim will generally moot the claim." Weiss, 385 F.3d at 340 (citing Rand, 926 F.2d at 598). A class action may be dismissed when the named plaintiff's claim is rendered moot before the filing of a motion for class certification. Weiss, 385 F.3d at 342 (citing Brown, 350 F.3d at 343); see also Genesis Healthcare, 133 S. Ct. at 1529-30.

The district court correctly concluded that Weiss's holding that an unaccepted offer of complete judgment renders a claim moot applied here, but erred in failing to recognize that Genesis Healthcare overruled Weiss's interpretation of the "relation-back" doctrine. The district court erred in holding that the entire action should not be dismissed as moot, because no motion for class certification had been filed and no exception applied. JA18a (March 12, 2014 Op.).

> **1.** **The Supreme Court in Genesis Healthcare addressed the limited exceptions to the mootness doctrine discussed in its decisions in Sosna, Geraghty and Roper, and none is applicable here.**

As the Named Plaintiffs' claims were rendered moot by Defendants' Offers of Judgment, Plaintiffs no longer have a "legally cognizable" interest or "personal stake" in the action, and thus the district court should have granted Defendants' Motion to Dismiss. The Supreme Court's decision in Genesis Healthcare has

29

effectively overruled the Third Circuit's application of the "relation-back" doctrine in <u>Weiss</u> - that a putative class plaintiff maintains a "personal stake" sufficient to confer jurisdiction when the Plaintiff's individual claims have been mooted, and thus "absent undue delay," the filing of a motion for class certification "relates back" to the filing of the complaint.

While acknowledging that the case before it concerned a collective action rather than a class action pursuant to Rule 23, the Court in <u>Genesis Healthcare</u> addressed the same arguments that Plaintiffs set forth to challenge Defendants' Motion in this Rule 23 action, and declined to hold that the plaintiff's claim was not mooted by the Rule 68 Offer of Judgment. The Court, citing both <u>Sosna v. Iowa</u>, 419 U.S. 393, 95 S. Ct. 553 (1975) and <u>Geraghty</u>, 445 U.S. 388, 100 S. Ct. 1202 (1980), and referencing <u>Deposit Guaranty National Bank of Jackson, MS v. Roper</u>, 445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980), noted that the exceptions to the mootness doctrine in such cases are inapposite to the situation where class certification has not been sought or decided, which is precisely the situation here. <u>Genesis Healthcare,</u> 133 S. Ct. at 1530-31.

The district court acknowledged that the Supreme Court "rejected the applicability of cases such as [Geraghty]; [Sosna]; and [Roper]" in its decision. JA 18a (March 12, 2014 Op.). The district court reiterated that "the Supreme Court's decision in [Genesis Healthcare] rejected the applicability of three of the cases

relied on by the Third Circuit Court of Appeals in <u>Weiss</u> to the question of whether an FLSA collective action is justiciable when the lone plaintiff's individual claim becomes moot" in its opinion certifying this appeal of the March 12, 2014 Order. JA25a (<u>Id.</u>). The district court stated that it was "unconvinced" that <u>Weiss</u> was "effectively overruled by the Supreme Court's treatment of [<u>Geraghty,</u> <u>Sosna</u> and <u>Roper</u>] in <u>Genesis Healthcare</u> given the fact that <u>Weiss</u> concerned a putative Rule 23 class action and <u>Genesis Healthcare</u> involved a[n] FLSA action." JA18a-19a (<u>Id.</u>). This was clearly error, as the distinction does not compel a different result.

The Supreme Court discussed the limited application of <u>Sosna</u>, <u>Geraghty</u> and <u>Roper</u> in the context of FLSA collective actions, but the narrow applicability of these cases as set forth in <u>Genesis Healthcare</u> applies equally to Rule 23 class actions, such as the action here. In <u>Sosna</u>, the Supreme Court addressed a situation wherein the named plaintiff's claims became moot before the trial court could rule on class certification. <u>Sosna,</u> 419 U.S. at 399. The Court "held that a class action is not rendered moot when the named plaintiff's individual claim becomes moot *after* the class has been duly certified." <u>Genesis Healthcare</u>, 133 S. Ct. at 1530 (citing <u>Sosna,</u> 419 U.S. at 399)(emphasis in original). The Court noted, however, that whether the certification would "relate back" would "depend on the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." <u>Sosna,</u> 419 U.S. at 402 n.11.

Geraghty narrowly extended this principle to denials of class certification after the individual claim has become moot. See Genesis Healthcare, 133 S. Ct. at 1530 (citing Geraghty, 445 U.S. at 404 n.11).  In Geraghty, the Court "explicitly limited its holding to cases in which the named plaintiff's claim remains live at the time the district court denies class certification." Geraghty, 445 U.S. at 404 n.11. The Court in Genesis Healthcare noted that "essential to [the] decisions in Sosna and Geraghty was the fact that a putative class acquires an independent legal status *once it is certified under Rule 23*." Genesis Healthcare, 133 S. Ct. at 1530 (emphasis added). The Genesis Healthcare Court specifically noted that these cases invoking the "inherently transitory" relation-back rationale did not apply to the action because the facts were readily distinguishable in that they sought statutory damages. Id. at 1530.

Roper narrowly extended the rationales of Sosna and Geraghty to allow a named plaintiff to appeal a denial of class certification after the individual putative class plaintiff's claim had become moot. Genesis Healthcare, 133 S. Ct. at 1531-32 (citing Roper, 445 U.S. at 329-330 n.6). The Court in Roper limited its application to situations following a denial of class certification, noting the importance of the fact that it was a procedural ruling at issue.  Roper, 445 U.S. at 336. The Court in Roper specifically held that "the Court of Appeals had jurisdiction to entertain the appeal only to review the asserted procedural error, not for the purpose of passing

on the merits of the substantive controversy." Id. This reasoning follows the Court's earlier comment where it stated:

> However, the right of a litigant to employ *Rule 23* is a **procedural right only**, ancillary to the litigation of substantive claims. Should these substantive claims become moot in the Art. III sense, by settlement of all personal claims for example, the court retains **no jurisdiction** over the controversy of the individual plaintiffs.

Roper, 445 U.S. at 332 (emphasis added). The decision in Roper involved a situation where the named plaintiff's claim became moot *after* class certification had been denied, and thus, after a motion for class certification had been filed. See Id. The Court in Roper did not address situations prior to certification, and noted that such situations raised difficult questions. See Roper, 445 U.S. at 441 n.12. Accordingly, these narrow exceptions do not apply to the instant matter, and the district court erred in denying Defendants' Motion.

> 2.    **The "relation-back" doctrine is inapplicable to Plaintiffs' claims, as the decision in <u>Genesis Healthcare</u> overruled this Court's interpretation of the "relation-back" doctrine in <u>Weiss</u>.**

In Genesis Healthcare, the Court rejected the proposition that claims for damages are inherently transitory for "relation-back" purposes. 133 S. Ct. at 1530-31. The Court noted that "respondent's complaint requested statutory damages" and that such damages could not evade review. Id. at 1531. More importantly, the Court stated that "[u]nlike claims for injunctive relief challenging ongoing conduct, a claim for damages cannot evade review; it remains live until it is settled,

33

judicially resolved, or barred by a statute of limitations." <u>Id.</u>, 133 S. Ct. at 1532.

Following this reasoning, the Court held that a case is not justiciable when the lone

plaintiff's individual claim becomes moot. <u>Id.</u> at 1526. The court stated:

> A straightforward application of well-settled mootness principles
> compels our answer. In the absence of any claimant's opting in,
> respondent's suit became moot when her individual claim became
> moot, because she lacked any personal interest in representing others
> in this action.

<u>Id.</u> at 1529. Critically, the Court also noted that "the mere presence of collective-

action allegations in the complaint cannot save the suit from mootness once the

individual claim is satisfied." <u>Genesis Healthcare</u>, 133 S. Ct. at 1529 (internal

citations omitted).

The district court relied upon the Third Circuit's decision in <u>Weiss</u> to

support its conclusion that the putative class claims were not moot because the

"relation-back" doctrine applied. JA12a-13a (March 12, 2014 Op.). The district

court erred in applying the "relation back" doctrine in <u>Weiss</u> to deny Defendants'

motion. Even assuming, *arguendo,* that <u>Weiss</u> remains valid, <u>Weiss</u> is inapposite to

a TCPA putative class action and is not controlling. The Plaintiff in <u>Weiss</u> filed a

putative class action alleging violations of the Fair Debt Collection Practices Act

(FDCPA), 15 U.S.C. §1692 *et seq*. The FDCPA contains a specific provision

authorizing recovery for "non-named class members." <u>See</u> <u>Weiss</u>, 385 F.3d at 342

(citing 15 U.S.C. §1692k(a)(2)(B)). The court in <u>Weiss</u> noted that this distinction

was a "significant consideration," stating:

> Congress explicitly provided for class damages in the FDCPA. See 15 U.S.C. §1692k(a)(2)(B)(establishing maximum damages in class actions under the FDCPA)....**Representative actions, therefore, appear to be fundamental to the statutory structure of the FDCPA**.

Weiss, 385 F.3d at 345 (emphasis added).

In Weiss, following a Rule 68 Offer, Defendant moved to dismiss Plaintiff's claims and those of the putative class for lack of subject matter jurisdiction. The court further noted that Congress intended the FDCPA to be "self-enforcing," mandating an award of attorneys' fees. Weiss, 385 F.3d at 345 (citing Graziano v. Harrison, 950 F.2d 107, 113 (3d Cir. 1991)). This Court clearly held that the Rule 68 Offer provided the maximum statutory relief available to the plaintiff. Weiss, 385 F.3d at 340. This Court noted, however, that the Offer did not provide maximum damages to the putative class members because:

> [T]he FDCPA authorizes additional recovery for non-named class members 'without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector.' Because defendants' *Rule 68* offer included no relief for the putative class, either under the provisions of the FDCPA or through the aggregation of class claims, we address the mootness question **in that context.**

Id. at 342 (citations omitted)(emphasis added). The "context" was in relation to statutory class damages provisions like those in the FDCPA. See Id. Notably, the Weiss court explicitly stated that it evaluated the completeness of the Rule 68 Offer in the context of the FDCPA provisions regarding class actions, and the

aggregation of class claims pursuant to the language of the FDCPA, a context which is clearly not applicable to TCPA claims. <u>Weiss</u>, 385 F.3d at 342.

The TCPA contains no similar provision warranting statutory class damages for violations of the TCPA. <u>See</u> 47 U.S.C. §227(b) *et seq.*  Representative actions are not fundamental to the statutory structure of the TCPA, and the holding in <u>Weiss</u> is therefore inapposite. <u>Cf.</u> <u>Weiss,</u> 385 F.3d at 345. Congress did not intend such representative actions in the passage of the TCPA. In introducing the bill that would become the TCPA, Congress intended that actions would be brought by individuals in small claims court. Its sponsor, Senator Hollings stated:

> The [TCPA] contains a private right-of-action provision that will make it easier for consumers to recover damages…. [I]t is my hope that States will make it as easy as possible for consumers to bring such actions, preferably in small claims court…. Small claims court or a similar court would allow the consumer to appear before the court without an attorney. The amount of damages in this legislation is set to be fair to both the consumer and the telemarketer. However, it would defeat the purposes of the bill if the attorneys' costs to consumers of bringing an action were greater than the potential damages.

<u>Landsman & Funk PC v. Skinder-Strauss Associates</u>, 640 F.3d 72, 76-77 (3d Cir. 2011), *vacated in part and reh'g granted by* 650 F.3d 311, (citing 137 Cong. Rec. S16204 (daily ed. Nov. 7, 1991)(statement of Sen. Hollings)). The TCPA does not have the same "significant consideration" discussed in <u>Weiss</u> and the district court erred in applying <u>Weiss</u> in this putative TCPA class action claim.

a.    **The Named Plaintiffs' claims are moot, and the entire action should be dismissed, as such claims are not "inherently transitory" or "capable of repetition, yet evading review" and thus well-settled principles of mootness warranted the dismissal of Plaintiffs' Complaint.**

Plaintiffs' TCPA claims are claims for statutory damages, and therefore, are not "inherently transitory" and simply cannot evade review. See Genesis Healthcare, 133 S. Ct. 1531. Plaintiffs requested statutory damages, and the district court erred in applying the "relation-back" doctrine to these claims. JA14a-15a (March 12, 2014 Op.).

Although the Court in Genesis Healthcare noted the difference between FLSA collective actions, and class actions pursuant to Rule 23, the majority still addressed the need for claims to be "inherently transitory" for the application of the "relation back" doctrine, in either consideration, noting that:

> The Court has since held that the relation-back doctrine may apply in *Rule 23* cases where it is 'certain that other persons similarly situated' will continue to be subject to the challenged conduct and the claims raised are 'so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires.'

Genesis Healthcare, 133 S. Ct. at 1530-31. The Court dismissed application of the "relation-back" rationale as inapplicable, stating:

> Our cases invoking the 'inherently transitory' relation-back rationale do not apply. The 'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was **effectively unreviewable**, because no plaintiff possessed a personal

37

> stake in the suit long enough for litigation to run its course.
>
> …
>
> To address this problem, the Court explained that in cases where the **transitory nature** of the conduct giving rise to the suit would effectively insulate defendants' conduct from review, certification could potentially 'relate back' to the filing of the complaint.

Id. at 1531 (emphasis added)(citations omitted). The Court further explained, pointedly, that "this doctrine has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, **not on the defendant's litigation strategy**." Id. (emphasis added). In reaffirming this narrow exception in the application of the "relation-back" doctrine, the majority in Genesis Healthcare specifically considered its previous decisions in Roper, Geraghty and Sosna, the same Rule 23 cases relied upon in Weiss in expanding the "relation-back" doctrine. In addressing the reliance on Roper by Laura Symczyk, the plaintiff in Genesis Healthcare, the Supreme Court explained:

> In *Roper,* the named plaintiffs' individual claims became moot after the District Court denied their motion for class certification under *Rule 23* and subsequently entered judgment in their favor, based on the defendant bank's offer of judgment for the maximum recoverable amount of damages, in addition to interest and court costs. The Court held that even though the District Court had entered judgment in the named plaintiffs' favor, they could nevertheless appeal the denial of their motion to certify the class. The Court found that, under the particular circumstances of that case, the named plaintiffs possessed an ongoing, personal economic stake in the substantive controversy – namely, to shift a portion of attorney's fees and expenses to successful class litigants. Only then, **in dicta**, did the Court underscore the importance of a district court's class certification decision and observe that allowing defendants to "pic[k] off" party plaintiffs before an affirmative ruling was achieved "would frustrate the objections of

class actions."

<u>Genesis Healthcare,</u> 133 S. Ct. at 1531-1532 (emphasis added)(internal citations omitted). <u>Genesis Healthcare</u> has limited the applicability of the "relation-back" doctrine as set forth in <u>Weiss</u> and thus the district court's application is incorrect.

The district court erred in applying the "relation back" doctrine to avoid mootness in this action, given the Supreme Court's decision in <u>Genesis Healthcare.</u> As previously stated, claims for damages cannot evade review. <u>Genesis Healthcare,</u> 133 S. Ct. at 1531. TCPA claims are claims for damages, specifically identified in the statute as $500 per violation, which may include treble damages up to $1,500 for willful or knowing violations at the court's discretion. <u>See</u> 47 U.S.C. §227(b)(3). Plaintiffs' claims are thus claims for statutory damages and cannot evade review. JA14a (March 12, 2014 Op.). Plaintiffs' claims are moot and the entire action should therefore be dismissed. Any unnamed putative class plaintiffs remain free to pursue their own actions as their claims for statutory damages cannot evade review. As explained in <u>Genesis Healthcare:</u>

> While settlement may have the collateral effect of foreclosing unjoined claimants from having their rights vindicated in *respondent's* suit, such putative plaintiffs remain free to vindicate their rights in their own suits.

<u>Genesis Healthcare,</u> 133 S. Ct. at 1531. The Court further explained that the putative class plaintiffs "are no less able to have their claims settled or adjudicated following respondent's suit than if her suit had never been filed at all." <u>Id.</u>

39

Attorneys' fees, and any request by Plaintiff for attorneys' fees, are not relevant to the discussion because Plaintiffs cannot recover fees under the TCPA as the TCPA does not provide a statutory mechanism for an award of attorneys' fees. [14] See 47 U.S.C. §227(b) *et seq.* There is no provision in the TCPA for attorney's fees, unlike the FLSA or FDCPA. See 47 U.S.C. §227(b) *et seq.* Moreover, a claim for attorney's fees alone is insufficient to establish the requisite "personal stake" to avoid mootness. See Lewis, 494 U.S. at 480 ("This interest in attorney's fees is…insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim."). Plaintiffs were offered the maximum relief available, no class has been certified and no motion for certification has been filed. Therefore, the claims are moot and Defendants' Motion should have been granted.

The district court incorrectly interpreted the effect of the Supreme Court's decision Genesis Healthcare on Weiss. As the applicable statute in Weiss, the

---

[14] The TCPA does not allow for an award of attorneys' fees to the prevailing plaintiff. See 47 U.S.C. §227(b) *et seq.;* See also Whatley v. Creditwatch Servs., Ltd., 2014 U.S. Dist. LEXIS 42992 (E.D. Tx. Mar. 31, 2014)("Attorneys' fees are not recoverable under the [TCPA] even though Plaintiff prevailed on those claims")[a true and correct copy is attached hereto as Attachment 5]; Haley v. Hughes Network Sys., LLC, 2013 U.S. Dist. LEXIS 157104 (W.D.N.Y. Nov. 1, 2013)("The TCPA makes no provision for attorney's fees")[ a true and correct copy is attached hereto as Attachment 6]; Bank v. Spark Energy Holdings LLC, 2013 U.S. Dist. LEXIS 150733 at *15 (S.D. Tx. October 18, 2013)( holding that Plaintiffs cannot recover fees under the TCPA as the TCPA "does not provide a statutory mechanism for recovery of fees.")[ a true and correct copy is attached hereto as Attachment 7].

FDCPA, specifically provides for the availability of statutory class action provisions, claims which are not available here, the reasoning in <u>Weiss</u> clearly is inapplicable to an action alleging violations of the TCPA, which includes no such provision. Thus, the "relation-back" doctrine of <u>Weiss</u> is inapplicable in this set of circumstances (even if it remained good law, which it does not).

Although Defendants maintain that this action, and any subsequent action, will be barred by the applicable statute of limitations, to the extent that such defense is considered, any putative class member is capable of bringing an action for any alleged violation of the TCPA, despite the outcome of Plaintiffs' individual claims, or this putative class action. No putative class members will be barred from seeking review or relief if this Complaint is dismissed, and the claims of any member are not so "inherently transitory" to justify application of the "relation-back" doctrine. As Plaintiffs' claims are moot, Defendants' Motion should have been granted and Plaintiffs' Complaint should be dismissed.

Here, similar to <u>Genesis Healthcare,</u> there is no certification decision to which Plaintiffs' claims could have "related back." <u>See</u> <u>Genesis Healthcare,</u> 133 S. Ct. at 1530. The decisions in <u>Sosna</u>, <u>Geraghty</u> and <u>Roper,</u> which were addressed by <u>Genesis Healthcare</u> and relied upon by <u>Weiss</u>, are inapplicable as these narrow exceptions do not apply to claims for statutory damages which are not "inherently transitory." The district court erroneously relied upon these decisions in following

41

Weiss even though the Supreme Court has unequivocally stated that "relation-back" applies only to claims which are "inherently transitory" and that claims for damages, such as Plaintiffs' claims, are not "inherently transitory." See Genesis Healthcare, 133 S. Ct. at 1530-31. The application of the "relation-back" doctrine is substantially more limited than previously established in Weiss, and thus the district court erred in denying Defendants' motion.

      **3.**      **Rule 23 is a procedural rule that confers no substantive rights on litigants, and thus merely invoking Rule 23 does not preclude a finding of mootness under Article III.**

The Federal Rules of Civil Procedure do not supersede a determination of mootness where there is no "case or controversy" and no longer a "personal stake" in the outcome of the litigation as required by Article III of the Constitution. When a case becomes moot, it is not possible for Rule 23 to preclude dismissal, because the dismissal is compulsory when there is no longer a live case or controversy for the court to adjudicate. See Cruz v. Farquharson, 252 F.3d 530, 533 (1st Cir. 2001)(citing City of Erie v. Pap's A. M., 529 U.S. 277, 287, 146 L. Ed. 2d 265, 120 S. Ct. 1382 (2000); Geraghty, 445 U.S.at 395-96; R.I. Ass'n of Realtors v. Whitehouse, 199 F.3d 26, 34 (1st Cir. 1999)); Lewis, 494 U.S. at 477-78. With respect to Rule 23 actions, there are only a few narrowly-applied exceptions, none of which is applicable here.

The Court in <u>Genesis Healthcare</u> acknowledged these narrow exceptions, including the "relation-back" doctrine relied upon by the district court, but pointedly explained that the "relation-back" doctrine "has invariably focused on the fleeting nature of the challenged conduct giving rise to the claim, **not on the defendant's litigation strategy**." <u>Genesis Healthcare</u>, 133 S. Ct. at 1531 (emphasis added)(citing <u>Swisher v. Brady,</u> 438 U.S. 204, 214 n.11, 98 S. Ct. 2699, 57 L. Ed. 2d 705 (1978)(Applying the exception in <u>Sosna</u> in a putative Rule 23 class action where claims "would evade review" but noting that in cases where mootness problems may arise, "district courts should heed the requirement of [Rule 23(c)(1)] that class action status should be determined "as soon as practicable.");  <u>Spencer v. Kemna</u>, 523 U.S. 1, 17-18, 118 S. Ct. 978, 140 L. Ed. 2d 43 (1998)(holding the "capable-of-repetition doctrine applies only in exceptional circumstances.")).

The focus should be on Article III, not the application of Rule 23 or Rule 68. Once a defendant offers "to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright…because he has no remaining stake." <u>Damasco,</u> 662 F.3d at 895 (citations omitted)).  As stated by the Seventh Circuit in <u>Damasco</u>:

> To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III. That the complaint

43

> identifies the suit as a class action is not enough by itself to keep the case in federal court….After [Defendant] made its offer, [Plaintiff's] federal case was over.

Damasco, 662 F.3d at 896. Simply stated by Judge Posner, "You cannot persist in suing after you've won." Greisz v. Household Bank (Ill.) N.A., 176 F.3d 1012, 1015 (7th Cir. 1999). A plaintiff who "refuses to acknowledge" a defendant's offer of maximum relief "loses outright, under Fed. R. Civ. P. 12(b)(1), because he has no remaining stake." Rand, 926 F.2d at 598.

In this case, Plaintiffs are serial class action litigants. Weitzner has filed a similar putative class action in Lackawanna County, alleging the same violations of the TCPA for the same period of time – "beginning at least as early as April 21, 2004." JA39a (Complaint ¶10). In this case, Ari Weitzner, M.D., P.C. –Weitzner's professional corporation – is also a plaintiff, but the alleged violations are the same as those set forth in the February 2005 Lackawanna County action. Given Defendants' Offers, Plaintiffs have "won" and thus they have no remaining "personal stake" in the outcome of this action.

Congress has also declined to limit Rule 68's applicability in class actions pursuant to Rule 23. In both 1983 and 1984, proposed amendments to Rule 68 suggested the inclusion of the following language: "this rule shall not apply to class or derivative actions under Rules 23, 23.1, and 23.2," but the amendments were rejected. Weiss, 385 F.3d at 344, n.12 (citations omitted)). Respectfully,

44

Congress intended for the TCPA to involve actions by plaintiffs without an attorney in small claims court. The statutory damages set forth by the TCPA were established with the intention of allowing a plaintiff to seek their own recovery, and not to develop a niche area for class action lawyers, who could prolong such actions for years.

This Court has acknowledged the ongoing tension between Rule 23 and Rule 68. See Symczyk, 656 F.3d at 195. In reaching its decision in Symczyk, the Third Circuit noted that "[t]hese considerations are not unique to the Rule 23 context, and Weiss did not turn on the disparity between opt-in and opt-out actions." Symczyk, 656 F.3d at 196. In reversing the district court in Symczyk, the Third Circuit held that the distinction between Rule 23 and FLSA collective actions did not compel a different result. Symczyk, 656 F.3d at 196-198, n.8. The Supreme Court ultimately reversed in Genesis Healthcare and declined to extend the "relation-back" doctrine to FLSA actions because the claims were not "inherently transitory." 133 S. Ct. at 1532. This result makes sense because the policy considerations underlying Rule 23 actions and FLSA collective actins, no matter how well-intentioned, simply cannot prescribe the limits Article III places on the jurisdiction of federal courts.

The result should be the same here. Plaintiffs have not disputed the sufficiency of Defendants' Offers of Judgment, and thus, at this point, Weitzner

45

and his professional corporation have been offered everything they could possibly recover. Notably, as it is believed that the facsimiles in question were only allegedly sent to either Weitzner or his professional corporation (and not to both parties), Weitzner, as the sole owner of his professional corporation, is actually receiving <u>double</u> what he would be entitled to receive under the TCPA by Defendants' Offers. <u>See</u> JA 97a-110a (Offers of Judgment).

Following the district court's rationale to its ultimate conclusion, every single motion for class certification, no matter when it is filed, in any putative class action will "relate back" to the filing of the complaint, in every circumstance, and the putative class plaintiff's claim will remain "live" even if the claim has been mooted by a sufficient Offer of Judgment. Moreover, "undue delay" will not be found even if <u>years</u> have passed since the complaint was filed, despite the fact that the putative class plaintiff's individual claim is moot, and despite the fact that the putative class plaintiff has not moved for class certification, which is required by the Local Rules. This is not the intention of Rule 23, and it certainly is not the intention of Article III of the United States Constitution.

Furthermore, there is no concern that the putative class plaintiffs will be "picked off" – there is no hypothetical unprotected class -- because no class has ever been certified, and Plaintiffs, in both this action and in Lackawanna County, never sought to certify such a class. Such behavior belies an argument that

adopting the appropriate determination of mootness under Article III following an unaccepted offer of judgment pursuant to Rule 68 will somehow allow a defendant to "pick off" a putative class plaintiff, or that such concern can create a "case" or controversy" to avoid mootness pursuant to Article III.

Here, a dismissal of the putative class action does not preclude any unnamed members of the purported putative class (to the extent there is such a class) from pursuing their own action. See Genesis Healthcare, 133 S. Ct. at 1531. In short, as stated by the Supreme Court in Genesis Healthcare, "such putative plaintiffs remain free to vindicate their rights in their own suits. They are no less able to have their claims settled or adjudicated following respondent's suit than if her suit had never been filed at all." Id.

The Court in Genesis Healthcare ultimately concluded that "respondent has no personal interest in representing putative, unnamed claimants, nor any other continuing interest that would preserve her suit from mootness." Id. at 1532. The same rationale applies here, and the district court erred in denying Defendants' Motion to Dismiss. District courts in this Circuit have limited the application of Weiss to certain narrow exceptions, even before the decision in Genesis Healthcare. See Merrifield v. United States, 2011 U.S. Dist. LEXIS 32533 at *16 (D.N.J. March 28, 2011)[A true and correct copy is attached hereto as Attachment 2]; Cf. Smith v. NCO Fin. Sys., 257 F.R.D. 429, 432 (E.D. Pa. 2009)(application

47

of <u>Weiss</u> in a putative class action for violations under the Fair Debt Collection Practices Act (FDCPA), considering the Supreme Court's decision in <u>Roper</u>). The court in <u>Merrifield</u> specifically discussed the application of <u>Weiss</u> in a *Rule 68* context, before the Supreme Court decision in <u>Genesis Healthcare</u>, explaining:

> The Third Circuit reasoned that, because Congress created a separate statutory damages scheme under the FDCPA for class action damages, which would be rendered meaningless if putative class action defendants could pick off any individual plaintiff with a relatively inexpensive *Rule 68* offer before the plaintiff could move to certify a class, that [sic] a small exception to the mootness rule should be created for such situations…. Consequently, the Court interpreted *Rule 68* offers in light of the goals of *Rule 23* and the FDCPA to allow individual claims to survive an involuntary *Rule 68* offer to pursue statutory class action damages.

<u>Merrifield,</u> 2011 U.S. Dist. LEXIS 32533 at *17.

The majority in <u>Genesis Healthcare</u> has set forth similar reasoning, noting that "<u>Roper's</u> holding turned on a specific factual finding that the plaintiffs possessed a continuing personal economic stake in the litigation, even after the defendants' offer of judgment." <u>Genesis Healthcare,</u> 133 S. Ct. at 1532 (citing <u>Roper,</u> 445 U.S. at 336). Similar to its evaluation of both <u>Sosna</u> and <u>Geraghty</u>, the Supreme Court noted that the application of <u>Roper</u> should be limited to similar factual situations – in which a putative class representative maintained an interest to appeal a denial of class certification preserving the case from mootness – facts which clearly are not present here.

Plaintiffs' argument that <u>Genesis Healthcare</u> does not apply is unfounded. In

48

reversing the district court, the Third Circuit in <u>Symczyk</u> stated: "We believe the considerations warranting application of the relation back doctrine to Rule 23 class actions also apply to §216(b) collective actions." <u>Symczyk</u>, 656 F.3d at 198. Respectfully, if this Court recognizes that the same considerations apply to Rule 23 and §216(b) collective actions, as it did in <u>Symczyk,</u> the decision in <u>Genesis Healthcare</u> declining to "relate back" a §216(b) action should also equally apply to Rule 23 actions, contradictory to the court's previous position in <u>Weiss.</u> Accordingly, the district court erred in applying <u>Weiss</u> and "relating back" the complaint to avoid mootness, and the decision should be reversed and Plaintiffs' claims and the entire action should be dismissed.

> **4.    Even if <u>Weiss</u> remains good law, there has been undue delay by Plaintiffs in filing a motion for class certification, and thus Plaintiffs' Complaint should be dismissed.**

The applicability of the "relation back doctrine" in <u>Weiss</u> has been narrowly limited by the Supreme Court's decision in <u>Genesis Healthcare</u> to certain factual situations which are not applicable here. However, even assuming, *arguendo,* that the <u>Weiss</u> "relation-back" doctrine may apply, that doctrine is limited to claims which are "inherently transitory" and to claims where a motion for class certification is filed "absent undue delay." <u>Weiss,</u> 385 F.3d at 348. As discussed at length *supra,* the district court erred in holding that Plaintiffs' claims were "inherently transitory" invoking the application of the "relation-back" doctrine.

The district court also erred in holding that there was not undue delay in the filing of a motion or class certification, where such motion has still not been filed.

The district court incorrectly determined that there was not "undue delay" in Plaintiffs' failure to file a motion for class certification since the filing of the November 2011 complaint. JA16a (March 12, 2014 Op.). This was clearly error. District courts in several Circuits have found "undue delay" in much shorter timeframes, especially where the plaintiffs have failed to comply with applicable Local Rules. See Goans Acquisition, Inc. v. Merchant Solutions, LLC, 2013 U.S. Dist. LEXIS 138228 (W.D. Mo. Sept. 26, 2013)(In case where plaintiff actually filed a motion for class certification, the court held that motion for class certification filed nearly three and a half years after filing of the class complaint was not timely and plaintiff's claim under the TCPA was moot)[A true and correct copy is attached as Attachment 3]; Jones v. Hartford, 243 F.R.D. 694 (N.D. Fl. April 14, 2006)(Denying motion for class certification as untimely when not filed within the ninety (90) day timeframe required by applicable Local Rule); Harper v. Am. Airlines, 2009 U.S. Dist. LEXIS 117134 (N.D. Tx. Dec. 26, 2009)(Local Rule defines "practicable time" for purposes of Fed. R. Civ. P. 23(c)(1)(A))[A true and correct copy is attached as Attachment 4]; Cf. Mabary v. Hometown Bank, 276 F.R.D. 196 (S.D. Tx. June 27, 2011)(no "undue delay" when motion filed less than four months after filing of class complaint where there was no local rule

prescribing earlier time).

Plaintiffs have not moved for class certification, despite the fact that Plaintiffs filed their complaint in November 2011. Cf. Damasco, 662 F.3d at 896. More importantly, Middle District of Pennsylvania Local Rule 23.3 requires that a motion for class certification be filed within ninety (90) days of the filing of the complaint. M.D. Pa. LR 23.3. Plaintiffs have alleged violations "beginning at least as early as April 21, 2004," and have engaged in protracted litigation in Lackawanna County, where a motion for class certification has also never been filed, before instituting this action. The length of time that has passed and Plaintiffs' failure to comply with the Local Rules with respect to the timeliness of class certification does not support the district court's holding that there has not been "undue delay."

Although Defendants maintain that Plaintiffs' claims are barred by the statute of limitations, in opposition to Defendants' Motion for Abstention, Plaintiffs argued that the tolling doctrine in American Pipe & Constr. Co. v. Utah, 414 U.S. 538, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974) and Crown, Cork & Seal, Co. v. Parker, 462 U.S. 345, 103 S. Ct. 2392, 76 L. Ed. 2d 628 (1983) will apply to allow Plaintiff's claims to proceed. Defendants disagree, but this is relevant to the inquiry of whether there has been "undue delay." Plaintiffs' claims stem from alleged conduct in 2004 and 2005, and yet, despite that nearly a decade has passed,

Plaintiffs have never sought class certification for the putative class. Such delay is unreasonable and clearly "undue delay."

Therefore, the class has no "independent legal status" which would insulate it from a challenge based upon mootness grounds following a proper and complete Rule 68 Offer of Judgment to each named plaintiff. To the extent such argument is applicable to Plaintiffs' claims, given the availability of the tolling doctrine as set forth in <u>American Pipe</u> and <u>Crown, Cork & Seal,</u> other putative plaintiffs remain "free to vindicate their rights in their own suits." <u>See</u> <u>Genesis Healthcare,</u> 133 S. Ct. at 1531. Moreover, Plaintiffs have had ample opportunity to seek class certification before Defendants extended their Rule 68 Offers of Judgment, but declined to do so, and thus, the district court erred in holding that there has not been undue delay and that the claims were not moot.

This action involves the same alleged facsimile advertisements in the Lackawanna County action, and thus, Plaintiffs' claims that a motion for certification would have been premature are disingenuous, and the district court's determination that "undue delay" depends on a "reasonable opportunity" to compile a record is misplaced. JA16a (March 12, 2014 Op.). At this juncture, nearly three years have passed since the filing of the Complaint, and more than ten years have lapsed since the alleged violative conduct. The Local Rules contemplated the nature of motions for class certification, including any required

time necessary to compile a record, and yet, require that such motion be filed within ninety (90) days of the filing of the complaint. <u>See</u> M.D. Pa. LR 23.3. Therefore, the district court erred in holding that there had not been "undue delay" in the filing of a motion for class certification, and Plaintiffs' complaint should have been dismissed.

## VIII. <u>CONCLUSION</u>

Article III of the United States Constitution limits the jurisdiction of the federal judiciary to actual cases and controversies, requiring that plaintiffs maintain a "personal stake" or "legally cognizable" interest in the litigation at all times and at all stages. Defendants' Offers of Judgment have offered Plaintiffs complete relief, and thus, Plaintiffs no longer possess a "personal stake" or "legally cognizable" interest in this matter. Their claims are moot, and the entire action should be dismissed.

Accordingly, for the foregoing reasons, it is respectfully submitted that this Honorable Court should answer the question certified for immediate appeal by holding that an unaccepted offer of judgment under *Federal Rule of Civil Procedure 68* in a putative class action, when the offer is made before the plaintiff files a motion for class certification pursuant to *Federal Rule of Civil Procedure 23*, moots the plaintiff's entire action, including the putative class claims, and thereby deprives the court of federal subject matter jurisdiction. Thus, it is

respectfully submitted that this Honorable Court should reverse the district court's

certified March 12, 2014 order and remand the matter for an entry of judgment of

dismissing the action against Plaintiffs with prejudice, and any other relief this

Court deems necessary and appropriate.

Respectfully submitted,

CARL J. GRECO, P.C.

BY:   s/ Carl J. Greco
        CARL J. GRECO, ESQ.
        PA ID 27561
        *Attorney for Appellants, Sanofi Pasteur
        Inc., formerly known as Aventis Pasteur
        Inc.* and *VaxServe Inc. formerly known
        as Vaccess America Inc.*
        327 N. Washington Ave.
        Professional Arts Building, 4th Floor
        Scranton, PA  18503
        (570) 346-4434
        (570) 346-4442 facsimile
        cjgreco@cjgrecolaw.com

# <u>TABLE OF ATTACHMENTS</u>

Attachment 1   -   <u>Boyle and Luongo v. Int'l. Brotherhood of Teamsters Local 863 Welfare Fund,</u> 2014 U.S. App. LEXIS 16630, No. 12-4578 (3d Cir. Aug. 28, 2014)
(*unpublished opinion*)

Attachment 2   -   <u>Merrifield v. United States,</u> 2011 U.S. Dist. LEXIS 32533 (D.N.J. March 28, 2011)
(*unpublished opinion*)

Attachment 3   -   <u>Goans Acquisition, Inc. v. Merchant Solutions, LLC,</u> 2013 U.S. Dist. LEXIS 138228 (W.D. Mo. Sept. 26, 2013)
(*unpublished opinion*)

Attachment 4   -   <u>Harper v. Am. Airlines,</u> 2009 U.S. Dist. LEXIS 117134 (N.D. Tx. Dec. 26, 2009)
(*unpublished opinion*)

Attachment 5   -   <u>Whatley v. Creditwatch Servs., Ltd.,</u> 2014 U.S. Dist. LEXIS 42992 (E.D. Tx. Mar. 31, 2014)
(*unpublished opinion*)

Attachment 6   -   <u>Haley v. Hughes Network Sys., LLC,</u> 2013 U.S. Dist. LEXIS 157104 (W.D.N.Y. Nov. 1, 2013)
(*unpublished opinion*)

Attachment 7   -   <u>Bank v. Spark Energy Holdings LLC,</u> 2013 U.S. Dist. LEXIS 150733 (S.D. Tx. October 18, 2013)
(*unpublished opinion*)

## <u>CERTIFICATION OF BAR MEMBERSHIP</u>

I, Carl J. Greco, Esq., hereby certify that I am a member in good standing of

the Bar of the United States Court of Appeals for the Third Circuit.


Respectfully submitted,

CARL J. GRECO, P.C.

BY<u>:   s/ Carl J. Greco                                        </u>
       CARL J. GRECO, ESQ.
       PA ID 27561
       *Attorney for Appellants, Sanofi Pasteur*
       *Inc., formerly known as Aventis Pasteur*
       *Inc.* and *VaxServe Inc. formerly known*
       *as Vaccess America Inc.*
       327 N. Washington Ave.
       Professional Arts Building, 4th Floor
       Scranton, PA  18503
       (570) 346-4434
       (570) 346-4442 facsimile
       cjgreco@cjgrecolaw.com

1

## <u>CERTIFICATION OF WORD COUNT</u>

I, Carl J. Greco, Esq., hereby certify the foregoing Brief of Appellants is 54 pages and 13,323 words, and therefore conforms with the requirements of the Rules of Appellate Procedure of the United States Court of Appeals for the Third Circuit.

Respectfully submitted,

CARL J. GRECO, P.C.

BY:   s/ Carl J. Greco

        CARL J. GRECO, ESQ.
        PA ID 27561
        *Attorney for Appellants, Sanofi Pasteur Inc., formerly known as Aventis Pasteur Inc. and VaxServe Inc. formerly known as Vaccess America Inc.*
        327 N. Washington Ave.
        Professional Arts Building, 4th Floor
        Scranton, PA 18503
        (570) 346-4434
        (570) 346-4442 facsimile
        cjgreco@cjgrecolaw.com

## CERTIFICATE OF SERVICE

I, Carl J. Greco, Esq., hereby certify that on this 29th day of September, 2014, I served a true and correct copy of the Brief of Appellants and all volumes of the Joint Appendix, via electronic delivery through the Electronic Case Filing System (ECF) for the United States Court of Appeals for the Third Circuit, which is available for immediate delivery, as well as service of one courtesy copy of the Brief of Appellants and one copy of all volumes of the Joint Appendix, by United States mail, postage prepaid, upon the following:

P. Timothy Kelly, Esq.
Mattise & Kelly, P.C.
Suite 400, SNB Plaza
108 N. Washington Ave.
Scranton, PA 18503

Todd C. Bank, Esq.
Law Office of Todd C. Bank
119-40 Union Turnpike, 4th Floor
Kew Gardens, NY 11415

Daniel A. Osborn, Esq.
Osborn Law PC
295 Madison Avenue
39th Floor
New York, NY 10017

I further certify that on this 29th day of September, 2014, I filed an original copy of the Brief of Appellants and all volumes of the Joint Appendix via electronic filing through the Electronic Case Filing System (ECF) for the United

3

States Court of Appeals for the Third Circuit, which is available for immediate delivery on all registered ECF users as well as the Office of the Clerk, in addition to serving an original and six (6) copies of the Brief of Appellants, and four (4) copies of all volumes of the Joint Appendix, on the Clerk of the United States Court of Appeals for the Third Circuit, via United States mail, postage prepaid, addressed as follows:

> Office of the Clerk
> United States Court of Appeals for the Third Circuit
> Room 21400, United States Courthouse
> 601 Market Street
> Philadelphia, PA 19106

Respectfully submitted,

CARL J. GRECO, P.C.

BY:   s/ Carl J. Greco
        CARL J. GRECO, ESQ.
        PA ID 27561
        *Attorney for Appellants, Sanofi Pasteur Inc., formerly known as Aventis Pasteur Inc.* and *VaxServe Inc. formerly known as Vaccess America Inc.*
        327 N. Washington Ave.
        Professional Arts Building, 4th Floor
        Scranton, PA  18503
        (570) 346-4434
        (570) 346-4442 facsimile
        cjgreco@cjgrecolaw.com

## <u>CERTIFICATION OF</u>

## <u>IDENTICAL COMPLIANCE OF BRIEFS</u>

I, Carl J. Greco, Esq., hereby certify that the text of the foregoing Brief of Appellants and accompanying copies are identical, and that the electronic copy submitted through the Electronic Case Filing (ECF) system is identical to the paper copies provided, and therefore all copies conform with the requirements of the Rules of Appellate Procedure of the United States Court of Appeals for the Third Circuit.

Respectfully submitted,

CARL J. GRECO, P.C.

BY: s/ Carl J. Greco

CARL J. GRECO, ESQ.
PA ID 27561
*Attorney for Appellants, Sanofi Pasteur Inc., formerly known as Aventis Pasteur Inc.* and *VaxServe Inc. formerly known as Vaccess America Inc.*
327 N. Washington Ave.
Professional Arts Building, 4th Floor
Scranton, PA  18503
(570) 346-4434
(570) 346-4442 facsimile
cjgreco@cjgrecolaw.com

# CERTIFICATION OF VIRUS CHECK

I, Carl J. Greco, Esq., hereby certify that the foregoing Brief of Appellants and all Volumes of the Joint Appendix were subjected to a Virus Check through the software program VIPRE Managed Antivirus, Software Version 6.2.5528.0, Engine Version 3.9.2595.2, with no virus detected, and therefore conforms with the requirements of the Rules of Appellate Procedure of the United States Court of Appeals for the Third Circuit.

Respectfully submitted,

CARL J. GRECO, P.C.

BY:   s/ Carl J. Greco
       CARL J. GRECO, ESQ.
       PA ID 27561
       *Attorney for Appellants, Sanofi Pasteur*
       *Inc., formerly known as Aventis Pasteur*
       *Inc.* and *VaxServe Inc. formerly known*
       *as Vaccess America Inc.*
       327 N. Washington Ave.
       Professional Arts Building, 4th Floor
       Scranton, PA  18503
       (570) 346-4434
       (570) 346-4442 facsimile
       cjgreco@cjgrecolaw.com

6

# Attachment 1

Boyle and Luongo v. Int'l. Brotherhood of Teamsters Local 863 Welfare Fund, 2014 U.S. App. LEXIS 16630, No. 12-4578 (3d Cir. Aug. 28, 2014)



ALLEN BOYLE; MICHAEL LUONGO, Appellants v. INTERNATIONAL
BROTHERHOOD OF TEAMSTERS LOCAL 863 WELFARE FUND; ADMINIS-
TRATORS INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 863
WELFARE FUND; ALPHONSE RISPOLI; BRUCE VIVADELLI; LOUIS
SANCHEZ; DEWEY CANELLA; JOHN O'RIORDAN; DAVID MARKOWITZ

No. 12-4578

UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT

*2014 U.S. App. LEXIS 16630*

November 7, 2013, Submitted under Third Circuit LAR 34.1(a)
August 28, 2014, Opinion Filed

NOTICE:    NOT PRECEDENTIAL OPINION UN-
DER THIRD CIRCUIT INTERNAL OPERATING
PROCEDURE RULE 5.7. SUCH OPINIONS ARE NOT
REGARDED AS PRECEDENTS WHICH BIND THE
COURT.

PLEASE REFER TO *FEDERAL RULES OF AP-
PELLATE PROCEDURE RULE 32.1* GOVERNING
THE CITATION TO UNPUBLISHED OPINIONS.

PRIOR HISTORY:    [*1] On Appeal from the United
States District Court for the District of New Jersey. (D.C.
No. 2-11-cv-03202). District Judge: Honorable Stanley
R. Chesler.
*Boyle v. Int'l Bhd. of Teamsters Local 863 Welfare Fund,*
*2012 U.S. Dist. LEXIS 170330 (D.N.J., Nov. 30, 2012)*

COUNSEL: For Allen Boyle, Michael Luongo, Plain-
tiffs - Appellants: Joshua A. Ben-Asher, Esq., Ross J.
Goldband, Esq., Colin M. Page, Esq., Colin M. Page &
Associates, Mountain Lakes, NJ.

For International Brotherhood of Teamsters Local 863
Welfare Fund, Administrators International Brotherhood
of Teamsters Local 863 Welfare Fund, Alphonse Rispoli,
Jr., Bruce Vivadelli, Louis Sanchez, Dewey Canella,
John O'Riordan, David Markowitz, Defendants - Appel-
lees: Flavio L. Komuves, Esq., Kenneth I. Nowak, Esq.,
Zazzali, Fagella, Nowak, Kleinbaum & Friedman, New-
ark, NJ.

JUDGES:  Before: GREENAWAY, JR., VANASKIE
and ROTH, Circuit Judges.

OPINION BY: ROTH

OPINION

**ROTH**, Circuit Judge:

Plaintiffs Allen Boyle and Michael Luongo appeal
the District Court's denial of their motions for summary
judgment, class certification, and attorneys' fees, and the
District Court's grant of summary judgment to defend-
ants International Brotherhood of Teamsters Local 863
Welfare Fund, Administrator(s) International Brother-
hood of Teamsters Local 863 Welfare Fund, Alphonse
Rispoli, Bruce Vivadelli, Louis Sanchez, [*2]  Dewey
Canella, John O'Riordan, and David Markowitz. For the
reasons discussed below, we will affirm the District
Court's decision in part and vacate and remand in part.

I. Background

Boyle and Luongo are among a group of sixty-seven
former employees (Early Retirees) of C&S Whole Gro-
cers and its subsidiary Woodbridge Logistics LLP (col-
lectively, C&S). The Early Retirees participated in an
early retirement option, which included medical cover-
age, pursuant to a collective bargaining agreement
(CBA) between C&S and the International Brotherhood
of Teamsters Local 863. Under the terms of the CBA,
C&S submitted payments to the Fund, which, in turn,
provided the Early Retirees with health benefits. In Feb-
ruary 2011, the CBA between C&S and Local 863 ex-
pired and C&S closed all of its warehouses in New Jer-
sey and fired 1,000 employees. After the closing, C&S
briefly ceased payments to the Fund to cover medical

expenses for both active and former employees, including the Early Retirees. Although C&S resumed payments to the Fund in March 2011, the Fund did not restore health benefits to the Early Retirees until June 13, 2011.

On June 3, 2011, Boyle filed suit in the United States District Court [*3] for the District of New Jersey on behalf of himself and similarly situated individuals, alleging that the Fund breached its fiduciary duties under the Employment Retirement Income and Security Act (ERISA), *29 U.S.C. § 1104*, for unlawfully withholding benefits to the Early Retirees.[1] On June 13, 2011, the Fund reinstated the benefits retroactively and later offered to reimburse, with interest, the Early Retirees for any substitute insurance policies or uncovered medical expenses.

> 1   On November 29, 2011, Luongo joined the case as a named plaintiff in the Amended Complaint.

## II. Discussion

### A. Jurisdiction[2]

> 2   The District Court had jurisdiction under 28 U.S.C. § 1132. We have jurisdiction pursuant to *28 U.S.C. § 1291*.

As a preliminary issue, defendants contend that Boyle and Luongo lack standing under Article III of the U.S. Constitution. "Constitutional standing has three elements, all of which must be met: (1) the plaintiff must have suffered an injury in fact; (2) there must be a causal nexus between that injury and the conduct complained of; and (3) it must be likely that the injury will be redressed by a favorable judicial decision." *Joint Stock Soc'y v. UDV N. Am., Inc., 266 F.3d 164, 175 (3d Cir. 2001)*.

We agree with the District Court that this argument is better understood as invoking the mootness doctrine. After Boyle initiated suit, the Fund [*4] resumed health insurance for the Early Retirees and offered to reimburse the cost of any alternative insurance coverage and out-of-pocket medical expenses. While the doctrine of standing concerns whether a plaintiff is permitted to bring suit at the pleading stage, "the central question of all mootness problems is whether changes in circumstances that prevailed at the beginning of the litigation have forestalled any occasion for meaningful relief." *Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 39 (3d Cir. 1985)* (internal citation omitted). We agree with the District Court that Boyle's claim for breach of fiduciary duty is now moot. After the Fund terminated the Early Retirees' benefits, Boyle purchased alternative COBRA insurance. Boyle has since accepted full reimbursement, with

interest, from the Fund. Boyle's claim for attorneys' fees, however, is not rendered moot by the reimbursement and still stands.

Luongo, on the other hand, has repeatedly refused the Fund's offers of reimbursement. The defendants argue that the Fund's mere offer of reimbursement is sufficient to moot Luongo's claim because the Supreme Court has recently held that an offer of complete relief moots the claim. *Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013)*. Defendants contend that *Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004)*, which the District Court cites to [*5] support the proposition that a full offer of settlement does not render moot a plaintiff's claim, is no longer good law. Even if defendants are correct, the named plaintiffs in *Symczyk* and *Weiss*, unlike Luongo, were offered attorneys' fees and costs, which is a disputed issue in this case. The Fund has made no such offer to cover attorneys' fees. We believe that a unilateral offer of relief that fails to cover the entire claim does not render moot a plaintiff's claim.

Accordingly, we conclude that a justiciable controversy remains between Luongo and the defendants as to the breach of fiduciary duty claim, because of the failure to offer attorneys' fees. If an offer of attorneys' fees is made, Luongo's whole claim will become moot since an offer of relief has already been made on the remainder of the claim. For the above reasons, resolution of these claims requires only an offer of reasonable attorneys' fees.

### B. Class Certification

Luongo argues that the District Court abused its discretion in denying his motion to certify a class of the sixty-seven Early Retirees deprived of health insurance from February 2011 until June 2011. The District Court found that class certification was improper [*6] because the claims did not seek declaratory or injunctive relief under *Fed. R. Civ. P. 23(b)(2)*.[3] We review the District Court's denial of class certification for abuse of discretion. *Gates v. Rohm & Haas Co., 655 F.3d 255, 262 (3d Cir. 2011)*.

> 3   Because we are persuaded that Luongo does not properly seek injunctive or declaratory relief as required by *Fed. R. Civ. P. 23(b)(2)*, we do not address whether he has satisfied the typicality requirements under *Fed. R. Civ. P. 23(a)*.

We hold that the District Court did not abuse its discretion in denying class certification. Under *Rule 23(b)(2)*, class certification is proper if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate re-

specting the class as a whole." *Fed R. Civ. P. 23(b)(2)*. In *Wal-Mart Stores, Inc. v. Dukes*, the Supreme Court elucidated the application of *Rule 23(b)(2)*, noting that it "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *131 S. Ct. 2541, 2557, 180 L. Ed. 2d 374 (2011)*. Claims for monetary relief may not be certified under *Rule 23(b)(2)* where "the monetary relief is not incidental to the injunctive or declaratory relief." *Id.*

The Amended Complaint seeks the reinstatement of medical benefits and various forms of monetary relief, but the medical [*7] benefits have been restored. The forms of relief -- repayment of health insurance, reimbursement of medical expenses, liquidated damages, compensation for unjust enrichment, interest, reasonable attorneys' fees, and costs of suit -- are predominantly forms of monetary damages. In addition, the monetary relief for each Early Retiree is individualized, based on the specific alleged harms caused by the lapse in health benefits. Accordingly, we will affirm the District Court's denial of class certification.

**C. Summary Judgment**

Next, Luongo argues that the District Court erred in granting defendants' cross-motion for summary judgment. The District Court determined that there was no genuine dispute as to any material fact concerning whether the Fund breached its fiduciary duties under ERISA. A district court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. "We exercise plenary review over a district court's grant of summary judgment, applying the same standard that the district court should have applied." *Klein v. Weidner, 729 F.3d 280, 283 (3d Cir. 2013)*.

Luongo argues that defendants breached their fiduciary duties by failing [*8] to provide him with health insurance or accurate information pertaining to the status of his health insurance. Our analysis focuses on the "prudent man" standard of care set forth under the fiduciary responsibility provision in ERISA. *29 U.S.C. § 1104(a)*. Under this provision, a fiduciary must discharge his duties "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use." *29 U.S.C. § 1104(a)(1)(B)*.

The record is undisputed that C&S ceased payments to the Fund for health insurance only from February 7, 2011, to March 1, 2011, but that the Fund failed to reinstate health insurance coverage until June 13, 2011. Luongo argues that the Fund refused to restore health

benefits immediately because doing so would have required "a lot of work." Applying the ERISA standard, we must determine whether defendants, in light of the circumstances then prevailing, acted "with the care, skill, prudence, and diligence" of a prudent man in delaying health benefits. We find that they did.

In February 2011, the Fund was responsible for providing health benefits and other benefits for not only the Early Retirees, but also nearly 1,000 former [*9] C&S employees. After C&S's shutdown and its initial cessation of payments to the Fund, the Fund struggled to sort out and allocate the various payments. The record indicates that, after a lapse in payment, C&S submitted five checks, many without proper identification, for the amounts of $330,590 on March 1, $404,340 on March 10, $75,040 on April 7, $75,040 on May 4, and $93,800 on June 3. When the documentation did arrive, the format was in a mess, and C&S used its own self-created forms that were "not understandable to the Fund, were not in any decipherable order, and were not compatible with the Fund's systems." The Fund was unable to determine, despite multiple inquiries to C&S, whether the payments were intended for the Early Retirees or for the other 1,000 former employees of C&S or for what time period. Moreover, the timing and intervals in which the Fund received these payments departed drastically from prior procedure. Although C&S labeled the later checks for Early Retiree "report[s]," the Fund's efforts to confirm with C&S whether the payments were for current or past amounts, or whether payments would continue beyond that period were unanswered.

Given the confusion and uncertainty, [*10] we agree with the District Court that the Fund's decision to reinstate benefits once it could receive clarification was consistent with ERISA's prudent person standard. There is no genuine dispute as to any material fact regarding whether the Fund breached its fiduciary duties under ERISA. Except for the resolution of an amount of reasonable attorneys' fees, the District Court's grant of summary judgment in favor of the defendants will be affirmed.[4]

> 4  We will also affirm the District Court's finding that the defendants did not engage in misrepresentations. Luongo alleges that the defendants lied to the Early Retirees. "To allege and prove a breach of fiduciary duty for misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation." *Burstein v. Ret. Account Plan for*

*Emples. of Allegheny Health Educ. & Research Found., 334 F.3d 365, 384 (3d Cir. 2003)* (internal citation and quotation marks omitted). The record indicates that Luongo failed to demonstrate that he contacted the Fund and was personally provided misleading information, that the Fund affirmatively [*11] provided misleading information, or that Luongo detrimentally relied on a misrepresentation. Luongo's only assertion is that he was told he had no medical coverage because the company closed its doors. J.A. 201. The record cannot support a claim for breach of fiduciary duty based on misrepresentations.

### D. Attorneys' Fees

Finally, Luongo and Boyle appeal the District Court's denial of their motion for an award of attorneys' fees. "An award of ... attorneys' fees to a prevailing plaintiff in an ERISA case is within the discretion of the district court and may only be reversed for abuse of discretion." *Hahnemann Univ. Hosp. v. All Shore, Inc., 514 F.3d 300, 305 (3d Cir. 2008)* (internal citation and quotation marks omitted). "Our review of the legal standards a district court applies in the exercise of its discretion is, however, plenary." *Ellison v. Shenango Inc. Pension Bd., 956 F.2d 1268, 1273 (3d Cir. 1992)* (citing *Student Pub. Interest Research Grp. v. AT&T Bell Lab., 842 F.2d 1436, 1442 n.3 (3d Cir. 1998)*).

"Our basic point of reference when considering the award of attorney's fees is the bedrock principle known as the American Rule: Each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 252-53, 130 S. Ct. 2149, 176 L. Ed. 2d 998 (2010)* (internal citations and quotation marks omitted). Attorneys' fees, however, may be awarded in actions brought under the ERISA statute, which provides that "the court in its discretion [*12] may allow a reasonable attorney's fee and costs of action to either party." *29 U.S.C. § 1132(g)(1)*. Luongo and Boyle argue that the District Court incorrectly concluded that ERISA does not permit fee shifting under the catalyst theory, under which a plaintiff may be awarded attorneys' fees if the pressure of the lawsuit caused defendant's voluntary change of conduct. *See, e.g., Wheeler v. Towanda Area School Dist., 950 F.2d 128, 132 (3d Cir. 1991)*.

Defendants cite *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S. Ct. 1835, 149 L. Ed. 2d 855 (2001)*, in which the Supreme Court narrowed the use of the catalyst theory, finding that the defendant's voluntary change of conduct did not establish the plaintiff as the "prevailing party" required for an award of attorneys' fees under the FHA and the ADA. In *Hardt*, however, the Supreme Court held that ERISA includes no "prevailing party" requirement and instead vests district courts with broader discretion to award attorneys' fees. *560 U.S. at 252*. Although the Supreme Court did not address the catalyst theory directly, it set forth the governing standard in which the plaintiff must show "some degree of success on the merits" beyond a "trivial success on the merits or purely procedural victory." *Id. at 255* (internal citations and quotation marks omitted).

Luongo and Boyle argue that they have achieved "some success on the merits" under *Hardt* [*13] because defendants voluntarily reinstated benefits to the Early Retirees and reimbursed them for any alternative coverage only after Boyle filed suit. We agree. The District Court erred in holding that the ERISA statute does not permit an award of attorneys' fees under the catalyst theory. We hold that in light of the Supreme Court's clear rejection of the "prevailing party" standard in *Hardt*, the catalyst theory remains viable under ERISA. *Hardt* instructs us to analyze whether Luongo and Boyle have achieved "some degree of success on the merits." We believe the record adequately demonstrates that Luongo and Boyle are eligible for attorneys' fees because they achieved "some degree of success on the merits" under *Hardt*.

Accordingly, we will vacate the District Court's denial of plaintiffs' motion for attorneys' fees and remand to the District Court for further proceedings to determine a reasonable amount of attorneys' fees, if any, to be awarded.

### III. Conclusion

For the foregoing reasons, we will affirm the District Court's denial of plaintiffs' motions for class certification and summary judgment, affirm the District Court's grant of defendants' cross-motion for summary judgment, and [*14] vacate and remand the District Court's denial of plaintiffs' motion for attorneys' fees as to both Luongo and Boyle.

# Attachment 2
## <u>Merrifield v. United States,</u>
2011 U.S. Dist. LEXIS 32533 (D.N.J. March 28, 2011)



**DOROTHY MERRIFIELD, et al., Plaintiff, v. UNITED STATES OF AMERICA, et al., Defendants.**

**Civil No. 07-987 (JBS)**

**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

*2011 U.S. Dist. LEXIS 32533*

**March 28, 2011, Decided**
**March 28, 2011, Filed**

**PRIOR HISTORY:** *Merrifield v. United States, 2008 U.S. Dist. LEXIS 25877 (D.N.J., Mar. 31, 2008)*

**COUNSEL:** [*1] Paul R. Garelick, Esq., LOMBARDI & LOMBARDI, P.A., Edison, NJ, Attorneys for Plaintiffs

For **DOROTHY MERRIFIELD, EVELYN FRICK, ADELE O. OBERLANDER, TARA KIZIUKIEWICZ, LINDA HEISER**, *Individually and On Behalf of All Persons Similarly Situated*, <u>Plaintiffs</u>: FRANKLIN P. SOLOMON, *LEAD ATTORNEY*, LOCKS LAW FIRM, LLC, CHERRY HILL, NJ.

For **MARIE A. BURKE**, <u>Plaintiff</u>: FRANKLIN P. SOLOMON, *LEAD ATTORNEY*, LOCKS LAW FIRM, LLC, CHERRY HILL, NJ; **MICHAEL FRANCIS LOMBARDI**, *LEAD ATTORNEY*, LOMBARDI & LOMBARDI, P.A., EDISON, NJ.

For **JEAN HUSTON**, <u>Plaintiff</u>: FRANKLIN P. SOLOMON, LOCKS LAW FIRM, LLC, CHERRY HILL, NJ.

For **THE UNITED STATES OF AMERICA, UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES, CENTERS FOR MEDICARE AND MEDICAID SERVICES, MICHAEL LEAVITT**, *in his capacity as Secretary of the United States Department of Health and Human Services*, **LESLIE V. NORWALK**, *in her capacity as Acting Administrator for the Centers for Medicare and Medicaid Services*, <u>Defendants</u>: **HAHHAH YAEL SHAY CHANOINE, TAMARA LYNN ULRICH**, *LEAD ATTORNEYS*, U.S. DEPARTMENT OF JUS-TICE, CIVIL DIVISION, FEDERAL PROGRAMS BRANCH, WASHINGTON, DC.

**JUDGES:** HON. JEROME B. SIMANDLE, United States District Judge.

**OPINION BY:** JEROME B. SIMANDLE

**OPINION**

**SIMANDLE**, [*2] District Judge:

**I. INTRODUCTION**

This matter is before the Court on a motion submitted by Plaintiffs Dorothy Merrifield, Marie A. Burke, Adele Oberlander, and Linda French Heiser ("Plaintiffs") to vacate pursuant to *Rule 60(b), Fed. R. Civ. P.* this Court's March 31, 2008 Order. [Docket Item 37]. On March 31, 2008, the Court dismissed Plaintiffs' suit, which arose under the Medicare Act, for lack of subject matter jurisdiction. *Merrifield v. United States, No. 07-987, 2008 U.S. Dist. LEXIS 25877, 2008 WL 906263 (D.N.J. Mar. 31, 2008)*. The Court found that Plaintiffs Merrifield, Oberlander and Heiser had failed to exhaust their administrative remedies and the Court declined to waive that exhaustion requirement. *2008 U.S. Dist. LEXIS 25877, [WL] at *14-17*. The Court dismissed Plaintiff Burke's claim as moot. *2008 U.S. Dist. LEXIS 25877, [WL] at *17-18*. This instant motion marks the second time that Plaintiffs Merrifield and Burke have moved to vacate the March 31, 2008 Order of Dismissal, previously so moving on December 23, 2008 [Docket Item 27], which the Court denied on June 30, 2009 [Docket Item 36]. All four Plaintiffs now argue that De-

fendants' continuing conduct warrants vacating the order of dismissal and reinstating their Complaint.

Plaintiff Heiser additionally moves,  [*3] pursuant to *Fed. R. Civ. P. 25*, to substitute Plaintiff Heiser's surviving next of kin Jean Huston for Plaintiff Heiser, who passed away since the dismissal of this action. This motion will be granted.

For the reasons discussed below, the Court will deny Plaintiffs' motion to vacate. Although the litigation may not be reopened as to the claim of the late Linda French Heiser, the Court will grant the substitution of Jean Huston who will thus succeed to Ms. Heiser's rights with respect to any further litigation herein or appeal.

## II. BACKGROUND

### A. Previous Litigation and Judgment

The facts underlying Plaintiffs' Complaint have been discussed in the Court's previous Opinions of March 31, 2008 and June 30, 2009, and will not be repeated in detail here. Plaintiffs originally filed their putative class action Complaint against Defendants, the United States of America, the Department of Health and Human Services ("HHS"), the Centers for Medicare and Medicaid Services ("CMS"), the Secretary of HHS and the Acting Administrator of CMS on March 1, 2007. Plaintiffs alleged that Defendants wrongfully, and in violation of Plaintiffs' constitutional due process rights, demanded reimbursement for medical  [*4] expenses paid initially by Medicare pursuant to a "secondary payer" provision in the Medicare Act, *42 U.S.C. § 1395y(b)(2)(B)*.

The Court dismissed Plaintiffs' class Complaint in its entirety, pursuant to *Rule 12(b)(1), Fed. R. Civ. P.* After finding no federal question jurisdiction to review Plaintiffs' claims because administrative agency review was available, the Court considered whether jurisdiction existed under *42 U.S.C. § 405(g)* for claims that arise under Medicare. The Court dismissed the claims of Plaintiffs Merrifield, Oberlander, Heiser because they had not exhausted their administrative remedies and the Court declined to waive that *§ 405(g)* requirement. *Merrifield, 2008 U.S. Dist. LEXIS 25877, 2008 WL 906263, at *14-17*. The Court dismissed Plaintiff Burke's claim as moot, for an Administrative Law Judge ("ALJ") had already ordered CMS to refund Burke the amount she had repaid. *2008 U.S. Dist. LEXIS 25877, [WL] at *4, 17-18*. Prior to dismissal, Plaintiffs had not moved to certify a class.

Nine months later, Plaintiffs Merrifield and Burke moved to vacate the order of dismissal. [1] Plaintiff Burke argued that her claims should be reinstated because Defendants refused to provide her with judgment interest on the money the ALJ ordered CMS  [*5] to return. Plain-

tiff Merrifield argued that the dismissal Order should be vacated because she had not been given an administrative hearing on her dispute. The Court denied Plaintiffs' motion, finding that because Plaintiff Burke was not entitled to judgment interest, her claim remained moot and that, while the delays Plaintiff Merrifield had experienced were troubling, they did not rise to the level of the exceptional circumstances warranting relief under *Rule 60(b)*. *Merrifield v. United States, No. 07-987, 2009 U.S. Dist. LEXIS 55377, 2009 WL 1916328 at *3-4 (D.N.J. June 30, 2009)*. In an effort to prod CMS into more promptly addressing Plaintiff Merrifield's administrative claim, the Court noted that it was

> relying on CMS' representation and good faith and will hold CMS to this promise [to expedite the review of Merrifield's claim]. If after 120 days following receipt of this formalistic authorization CMS has not acted upon Merrifield's administrative appeal . . . Merrifield may renew her motion to reopen this case under *Rule 60*.

*2009 U.S. Dist. LEXIS 55377, [WL] at *4*.

1 Plaintiffs sought to include argument and evidence regarding Plaintiffs Oberlander and Heiser for the first time in their reply brief to the 2009 motion, which the Court declined  [*6] to consider, citing *Bayer AG v. Schein Pharmaceutical, Inc., 129 F. Supp. 2d 705, 716 (D.N.J. 2001)*. *Merrifield v. United States, 2009 U.S. Dist. LEXIS 55377, 2009 WL 1916328 at *2 n.1 (D.N.J. June 30, 2009)*.

Approximately one year later, after apparently no change in their administrative appeals, Plaintiffs Merrifield and Burke, this time joined by Plaintiffs Oberlander and Heiser, have again moved to vacate the Court's March 31, 2008 Order in the instant motion under *Rule 60(b)*.

### B. Present Motion to Vacate Judgment Pursuant to *Rule 60(b)*

When Plaintiffs again moved to vacate the Court's Order and reinstate their Complaint on June 10, 2010, they argued that relief under *Rule 60(b)* was necessary because, despite promises to the contrary, Defendant CMS had taken no action to resolve the complaints of any of the Plaintiffs. The four moving Plaintiffs seek relief under *Rule 60(b)* for three different reasons. As to Plaintiff Burke, who had exhausted her administrative claims and prevailed before an ALJ, CMS had not yet

issued her a draft in settlement of her claim. (Pls.' Mot., Solomon Certification ¶ 7.) Plaintiffs Merrifield and Oberlander, who had not yet exhausted their administrative claims, had still not been granted [*7] any response to their requests to administratively resolve their disputes with CMS. (Id. ¶¶ 8-9.) Finally, Plaintiff Heiser, who passed away in 2009 and whose claims are being pursued by her next of kin Jean Huston in this motion, seeks relief under *Rule 60(b)* on the grounds that further administrative exhaustion is impossible because her administrative appeal was dismissed in 2008 as untimely filed. (Id. ¶ 10.)

Apparently after receiving notice of Plaintiffs' instant motion and prior to filing opposition on July 6, 2010, Defendants acted to resolve the complaints of Plaintiffs Burke, Merrifield and Oberlander. On June 28, 2010, Defendant CMS issued a check to Plaintiff Burke for the full amount she had been found due by the ALJ. (Defs.' Opp. Ex. A.) On July 2, 2010, CMS granted Plaintiff Merrifield a waiver of recovery for her contested Medicare payment. (Defs.' Opp. Exs. E & F.) On July 6, 2010, CMS similarly granted Plaintiff Oberlander a waiver for her contested payment and promised to issue a check for the full amount contested within 30 days. (Defs.' Opp. Exs. G & H.)

With respect to Plaintiff Heiser, by contrast, CMS took no further action, reiterating instead the reasoning of [*8] the CMS contractor that declined to vacate the dismissal of Plaintiff Heiser's administrative appeal as untimely filed. (Wright Decl. ¶¶ 4-5.)

In fact, the record in this case demonstrates that Plaintiff Heiser's administrative appeal suffered from various forms of mismanagement by both parties to this litigation. The late Ms. Heiser was particularly badly served by a cascade of delays and errors by CMS and its contractor in processing her simple request for a waiver. Plaintiff Heiser, through her personal injury attorney, initially sent her request for a waiver to CMS on November 29, 2005, arguing waiver was warranted due to financial hardship. (Pls.' Reply Br. Ex. 5.) On February 7, 2006, CMS initially denied her waiver request, apparently more than two months later than required by regulation. (Id. Ex. 6.) See *42 C.F.R. § 405.922* (setting a 30-day time period for processing initial determinations). On February 24, 2006, Heiser requested reconsideration of that denial. (Id. Ex. 7.) On March 1, 2006, a contractor for CMS sent Heiser a letter notifying her of its intent to refer her debt to the Department of Treasury for collection, potentially through offsets of her other federal benefits. [*9] (Id. Ex. 8.) This letter was apparently in violation of internal agency policy, as Heiser's claim was still subject to an administrative appeal, and was sent due to CMS's "administrative error." (See Defs.' Supplemental Br. Nov. 15, 2007, Docket Item 21, at 7-8).

On March 1, 2007, Ms. Heiser, now represented by new counsel, joined with the other Plaintiffs in this case and brought the instant action. On October 11, 2007, the CMS contractor issued its redetermination, affirming the initial determination and notifying her that she had 180 days from the date of receipt of the letter to appeal the decision for a reconsideration. (Pls.' Reply Br. Ex. 9.) This redetermination appears to have been sent by the CMS contractor nearly eighteen months late, according to federal regulation. See *42 C.F.R. § 405.950(a)* (setting 60-day time period for issuing redetermination decision). The redetermination was also sent to her former attorney rather than her present attorney, who had notified CMS of its representation of Ms. Heiser in the previous April. On October 26, 2007, a CMS contractor again sent Heiser a notice of intent to refer her debt to Treasury for collection, another "administrative error" [*10] by CMS in violation of agency policy. (Defs.' Supplemental Br. Ex. 2.)

After this Court issued its Opinion and Order on March 31, 2008, requiring that Plaintiff Heiser fully exhaust her administrative appeals before seeking judicial review, and being assured by counsel for the Defendants that her claim would receive an expedited agency review, Heiser sent her request for reconsideration on April 17, 2008. (Pls.' Reply Br. Ex. 10.) The request for reconsideration was received by CMS's contractor on April 21, 2008. (Defs.' Opp. Ex. D.) This request for reconsideration marks the first time Plaintiff Heiser requested a waiver on the grounds asserted in the Complaint filed in this Court, that Medicare is not entitled to repayment under New Jersey law. The contractor dismissed Heiser's appeal as untimely filed by one week, calculating April 14, 2008 as the last day Heiser's appeal would have been timely. (Pls.' Mot. to Reopen Ex. G.) Heiser appealed the dismissal on August 18, 2008, but received no response for several months and sent a second appeal letter on January 5, 2009. (Id. Ex. H.) Plaintiff's appeal of the dismissal was finally denied by the CMS contractor in a letter dated February [*11] 10, 2009, explaining that the appeal did not provide adequate good cause for the untimeliness of the April 17, 2008 request for redetermination. (Defs.' Opp. Ex. C.) Plaintiffs' counsel represents to the Court that this letter was never received. (Pls.' Reply at 9.)

Defendants argue that there are no grounds to vacate the Court's March 31, 2008 Order and reinstate the Complaint, as the claims of Plaintiffs Burke, Merrifield, and Oberlander are now moot, and the Court continues to lack subject matter jurisdiction over the claim of Plaintiff Heiser under *42 U.S.C. § 405(g)* because, having dismissed her appeal as untimely rather than considered the appeal on the merits, the agency has not issued a final decision on her case. [2]

2    Because the Defendants' actions attempting to satisfy Plaintiffs' claims did not occur until after Plaintiffs filed the instant motion, Plaintiffs were unable to respond to Defendants' mootness argument until their reply brief. [Docket Item 43.] Consequently, the Court requested that Defendants file a surreply brief responding to Plaintiffs' mootness arguments, which they filed on February 14, 2011. [Docket Item 47.]

## III. DISCUSSION

### A. Relief under *Rule 60(b)*

"The general  [*12] purpose of *Rule 60(b)* is to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice must be done." *Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 271 (3d Cir. 2002)* (quoting *Boughner v. Sec'y of Health, Educ. & Welfare, 572 F.2d 976, 977 (3d Cir. 1978))*. The interest in finality is profound and so "relief under *Rule 60(b)* is extraordinary and requires a 'showing of exceptional circumstances.'" *Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 654 (3d Cir. 1998)* (quoting *Marshall v. Bd. of Educ., 575 F.2d 417, 425-26 (3d Cir. 1978))*, abrogation on other grounds recognized by *Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000)*. *Rule 60(b)* offers six distinct grounds for vacating an order. Plaintiff appear to argue that relief is warranted under both *Rule 60(b)(2)*, for newly discovered evidence, as well as *Rule 60(b)(6)*, for other reasons that justify relief. Whether to grant a motion for relief from final judgment is left to the sound discretion of the trial court. *Hodge v. Hodge, 621 F.2d 590, 593, 17 V.I. 623 (3d Cir. 1980)*.

### B. Mootness: Plaintiffs Burke, Merrifield and Oberlander

For the reasons to be discussed, the Court will deny [*13] the motion to vacate this Court's March 31, 2008 Order of dismissal for Plaintiffs Burke, Merrifield and Oberlander. In order to prevail on a *Rule 60(b)* motion, Plaintiffs must present a meritorious ground for relief. *In re Nazi Era Cases Against German Defs. Litig., 236 F.R.D. 231, 238 (D.N.J. 2006)*; *Lepkowski v. Dep't of Treasury, 804 F.2d 1310, 1314, 256 U.S. App. D.C. 281 (D.C. Cir. 1986)*. The Court will not vacate final judgment, where such action would be futile.

As the Court has previously held in both its March 31, 2008 Opinion and its June 30, 2009 Opinion, the Court has jurisdiction under Article III of the U.S. Constitution to hear only "cases" and "controversies" in which the parties have a personal stake. *United States Parole Comm'n v. Geraghty, 445 U.S. 388, 396, 100 S.*

*Ct. 1202, 63 L. Ed. 2d 479 (1980)*. Thus, once Plaintiffs' claims for waiver and/or reimbursement were satisfied, there ceased to be any legal dispute pending with regard to these Plaintiffs. Defendants argue, consequently, Plaintiffs' motion to vacate the March 31, 2008 Order of dismissal is futile as to Plaintiffs Burke, Merrifield and Oberlander because any ongoing claims would be moot.

Plaintiffs respond that the case escapes mootness under three separate exceptions  [*14] to the general mootness doctrine. First, Plaintiffs argue that the Defendants' voluntary waiver and/or reimbursement of Plaintiffs' claims constitutes a voluntary cessation capable of recurrence, as described in *Friends of the Earth, Inc. v. Laidlaw Environmental Services, Inc., 528 U.S. 167, 189-90, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000)*. Second, Plaintiffs argue that the waiver and reimbursement fits within the "capable of repetition, yet evading review" doctrine applied in *Olmstead v. L.C., 527 U.S. 581, 594 n.6, 119 S. Ct. 2176, 144 L. Ed. 2d 540 (1999)*. Finally, Plaintiffs argue that, because their Complaint seeks to bring a class action on behalf of all similarly situated persons, the "buying off" of the individually named Plaintiffs in this case does not moot the controversy for other members of the class, citing to *Deposit Guaranty Nat'l Bank v. Roper, 445 U.S. 326, 338-39, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980)*.

Plaintiffs' first two arguments fail because their particular claims fall outside the bounds of the exceptions. In both "voluntary cessation capable of recurrence" as well as "capable of repetition, yet evading review" doctrines, federal courts have been careful to restrict application of the exceptions to plaintiffs who could potentially suffer recurrence or repetition  [*15] of the harm individually. It is not enough to argue that the injury may be repeated as to some other individual. See *Friends of the Earth, 528 U.S. at 193* (concluding that claim was not moot because defendant treatment plant could resume pollution in the future, thus continuing to injure plaintiff's members personally); *Olmstead, 527 U.S. at 594 n.6* (holding that claim is not moot despite plaintiffs' transfer to particular desirable treatment programs because the history of the case demonstrated that plaintiffs might be transferred back to undesirable programs). In the instant case, by contrast, Plaintiffs argue that the injuries allegedly suffered by these Plaintiffs could be suffered by other Medicare recipients. The Court cannot expand the mootness exceptions to encompass such bystander concerns.

Regarding Plaintiffs' class action argument, Defendants respond that the Roper exception cited by Plaintiffs applies only to cases where the named plaintiffs have moved to certify a class before their claims are rendered moot. See *Brown v. Philadelphia Housing Auth., 350 F.3d 338, 343 (3d Cir. 2003)* ("when claims

of the named plaintiffs become moot before class certification, dismissal of [*16] the action is required"); *Lusardi v. Xerox Corp., 975 F.2d 964, 981 (3d Cir. 1992)* (holding that general mootness rules apply to named plaintiff in putative class action with the narrow exception that "a named plaintiff can appeal an adverse decision on class certification if, at the time the decision was rendered, or, at a minimum, at the time the class certification motion was filed, that plaintiff had a live claim."). Consequently, because the Plaintiffs here had not filed a motion to certify a class before their individual claims became moot, the fact that Plaintiffs filed a putative class action complaint should not affect the Court's mootness analysis. The Court agrees with Defendants that because Plaintiffs have not been found to represent a class of interests, and have not moved to certify such a class, the expiration of their individual controversies must render their case moot.

Defendants helpfully mention the Third Circuit case of *Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004)*, which narrowly expanded the class action exception to mootness. The Court agrees with Defendants that *Weiss* does not apply in the instant case. In Weiss, the plaintiff brought a claim under [*17] the Fair Debt Collections Practices Act ("FDCPA") in a class action complaint. *Id. at 339*. Before the plaintiff moved to certify a class, the defendants made a *Fed. R. Civ. P. 68* offer of judgment to the plaintiff for the maximum individual recovery under the statute. Id. The Third Circuit reasoned that, because Congress created a separate statutory damages scheme under the FDCPA for class action damages, which would be rendered meaningless if putative class action defendants could pick off any individual plaintiff with a relatively inexpensive *Rule 68* offer before the plaintiff could move to certify a class, that a small exception to the mootness rule should be created for such situations. *Id. at 345-49*. Consequently, the Court interpreted *Rule 68* offers in light of the goals of *Rule 23* and the FDCPA to allow individual claims to survive an involuntary *Rule 68* offer to pursue statutory class action damages. *Id. at 349*.

The Court holds that, to the extent that Weiss expands the mootness doctrine, the Plaintiffs here fall outside it. Unlike the plaintiff in Weiss, Plaintiffs here were jurisdictionally required to present their claims to the agency under *42 U.S.C. § 405(g)* before seeking [*18] relief in the District Court. *Merrifield, 2008 U.S. Dist. LEXIS 25877, 2008 WL 906263 at *14-15*. Therefore, they cannot be said to have been "pick[ed] off" in the manner contemplated in Weiss when they prevail before the agency. The presentation of these Plaintiffs' claims in the administrative process, as they were required to do before resorting to judicial review, resulted (although belatedly) in the satisfaction of their claims prior to their

ripening into final administrative decisions reviewable in this Court. See *LaVallee Northside Civic Ass'n v. Virgin Islands Costal Zone Mgmt. Comm'n, 866 F.2d 616, 620* ("the most compelling reason for favoring administrative exhaustion is the strong possibility that the dispute may become moot if the party ultimately prevails before the agency, thus obviating the occasion for judicial review.").

Consequently, the Court holds that the claims of Plaintiffs Burke, Merrifield and Oberlander are moot, and therefore the Court will deny the *Rule 60(b)* motion to vacate dismissal because doing so would be futile as to these Plaintiffs.

## C. Exhaustion and Waiver: Plaintiff Heiser

Unlike the other Plaintiffs in this case, Plaintiff Heiser's claim has not become moot because Defendants [*19] have not granted her request for a waiver. Indeed, Defendants stated that they will not grant her such a waiver, having issued a final dismissal of Heiser's administrative claim as of February 10, 2009.

Plaintiff Heiser argues that the newly discovered evidence of the continued problems and delays experienced by all four moving Plaintiffs in this case establishes that the Court should vacate its March 31, 2008 Order dismissing Plaintiff Heiser's claim for lack of subject matter jurisdiction and hear her claims on the merits. [3] Plaintiff offers three arguments for vacating the Order. First, Plaintiff argues that the post-dismissal history demonstrates that, contrary to the Court's initial holding, the Court should determine that the case arises under *28 U.S.C. § 1331* instead of *§ 405(g)* because of the "functional unavailability of administrative recourse" (Pls.' Reply at 10 n.6), presumably satisfying the exception to *§ 405(g)* jurisdiction recognized in *Bowen v. Michigan Academy of Family Physicians, 476 U.S. 667, 106 S. Ct. 2133, 90 L. Ed. 2d 623 (1986)* ("Michigan Academy"). Second, Plaintiff argues that, even if the Court determines that Michigan Academy still does not apply, once the agency dismissed her untimeliness [*20] appeal, leaving her without any further administrative appeals, the agency provided her with a "final decision" as required under *§ 405(g)*. Finally, Plaintiff argues that, even if the untimeliness dismissal is not a final decision on the merits of her claim, the Court should waive the requirement of full exhaustion as to her claim in light of the factors and policy articulated in *Mathews v. Eldridge, 424 U.S. 319, 330, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)*.

---

3    It is also possible, though unclear from the motion papers, that Plaintiff Heiser seeks this Court's review of the untimeliness determination itself. The Court will address this issue infra after

discussing why it continues to lack subject matter jurisdiction to hear her claim on the merits.

While the Court is frustrated by the inequity of her situation, it is not persuaded that existing law permits it to vacate its determination that it lacks subject matter jurisdiction over Ms. Heiser's claim.

As to Plaintiff Heiser's first argument, the Court finds that, despite the delays and frustrations, Plaintiff has not demonstrated a functional unavailability of administrative relief necessary to qualify for the *Michigan Academy* exception. As the Supreme Court explained [*21] in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 120 S. Ct. 1084, 146 L. Ed. 2d 1 (1999), plaintiffs seeking to fit within the Michigan Academy exception must show more than

> that postponement would mean added inconvenience or cost in an isolated, particular case. Rather, the question is whether, as applied generally to those covered by a particular statutory provision, hardship likely found in many cases turns what appears to be simply a channeling requirement into complete preclusion of judicial review. . . [rather than merely] isolated instances of the inconveniences sometimes associated with the postponement of judicial review.

*Id. at 22-23* (emphasis original). In the instant case, Plaintiff Heiser has demonstrated that all four Plaintiffs have personally experienced postponement and delay by the agency (often in violation of express deadlines contained in federal regulation), but she has not demonstrated that the administrative process systematically operates to deny all such claimants relief or access to judicial review. Indeed, all Plaintiffs except Plaintiff Heiser eventually received relief under the administrative process. Plaintiff Heiser argues that the fact that relief was only finally [*22] afforded Plaintiffs Burke, Merrifield and Oberlander after they returned again, for a second time, to this Court demonstrates that relief outside judicial review is not available to claimants such as themselves. However, Defendants have offered the competent testimony of Barbara Wright, an administrator with Defendant CMS, who was able to account for the delays in resolution experienced by Plaintiffs Burke, Merrifield and Oberlander, and explain why their experience has been unusually disorganized. (Wright Decl. attached to Defs.' Surreply.)

Specifically, Ms. Wright explains that Plaintiff Burke's case was neglected because CMS had transferred the responsibility of processing her claims from one con-

tractor to another. (Wright Decl. ¶¶ 5-6.) Plaintiffs Merrifield and Oberlander, by contrast, "suffered a lack of administrative process" due to a faulty notation system designed to indicate which cases were subject to district court litigation, which Ms. Wright attests has since been changed to prevent this sort of delay. (Id. ¶¶ 7-8, 12.) However, Ms. Wright testifies that these cases "were exceptions to an administrative process which properly handles thousands of cases, but failed to [*23] expeditiously move these three cases to a rightful conclusion." (Id. ¶ 9.) The Court consequently finds that Plaintiff Heiser has not shown more than isolated instances of faulty process, as required under *Shalala*. Thus, the Court will not vacate its determination that Plaintiff's case arises under § 405(g).

Regarding Plaintiff Heiser's second argument, that the agency's dismissal of her untimely appeal constitutes a final decision sufficient to exhaust her administrative claims under § 405(g), the Court again finds Plaintiff's argument unavailing. Consistent precedent establishes that a dismissal of an administrative appeal as untimely does not constitute a final decision under § 405(g). See *Heckler v. Ringer, 466 U.S. 602, 606, 104 S. Ct. 2013, 80 L. Ed. 2d 622 (1984)* (defining "final decision" under § 405(g) as occurring "only after the individual claimant has pressed his claim through all designated levels of administrative review."); *Bacon v. Sullivan, 969 F.2d 1517, 1519 (3d Cir. 1992)* (dismissal of administrative appeal as untimely filed does not normally constitute a "final decision"); *Callender v. Soc. Sec. Admin., 275 F. App'x 174, 176 (3d Cir. 2008)* (same). Consequently, the Court is unable to find subject [*24] matter jurisdiction on this ground over Plaintiff Heiser's claim on the merits.

Finally, the Court likewise cannot vacate its March 31, 2008 Order and reopen the case as to Plaintiff Heiser by waiving the requirement of full exhaustion under *Matthews v. Eldridge* because the Court remains convinced that the factors and policies of administrative exhaustion and waiver do not favor waiver on this record.

The Court concluded in its original Opinion that Plaintiff Heiser's claims are not "entirely collateral" to a claim for benefits as required under Matthews v. Eldridge. *Merrifield, 2008 U.S. Dist. LEXIS 25877, 2008 WL 906263 at * 15.* The Court also determined that Plaintiffs had not shown that exhausting their claims would result in irreparable injury. *2008 U.S. Dist. LEXIS 25877, [WL] at * 17.* Plaintiff Heiser makes no argument in the instant motion that would enable the Court to reconsider this determination. [4]

> 4    Plaintiff gestures to the language in *Bailey v. Sullivan, 885 F.2d 52, 65 (3d Cir. 1989)* that a claim of "systemwide misapplication" should be treated as collateral, but offers no reason why the

2011 U.S. Dist. LEXIS 32533, *

Court would vacate its original determination that Plaintiffs here are not making such a claim.

Plaintiff does, however, argue that the subsequent [*25] three years of administrative delays and recalcitrance on the part of Defendants should cause the Court to reevaluate its decision not to waive exhaustion under the "policies underlying the exhaustion requirement" as described in *Bowen v. New York, 476 U.S. 467, 484, 106 S. Ct. 2022, 90 L. Ed. 2d 462 (1986)*. Reminding the Court that it is not to "mechanically apply" the two Eldridge factors, but should, instead, consider whether the purposes of requiring exhaustion are served by the present case, Plaintiff argues that, in light of the facts of this case, these purposes would not be served.

The policies underlying exhaustion were identified in *Bowen v. New York* as the following: "'preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.'" Id. (quoting *Weinberger v. Salfi, 422 U.S. 749, 765, 95 S. Ct. 2457, 45 L. Ed. 2d 522 (1975)*). Plaintiff Heiser argues that the delays in resolving the administrative appeals of all four Plaintiffs demonstrate that waiving full exhaustion for Plaintiff Heiser's claim [*26] would no longer create "premature interference with agency processes" or prevent the agency from "correct[ing] its own errors." Further, Plaintiff argues that the Court's original determination that efficiency weighs in favor of waiving exhaustion has only strengthened in the intervening three years.

The Court concludes that on the facts of Plaintiff Heiser's case, it is unable to waive full exhaustion to hear her claim on the merits. The Court notes that CMS and its contractors have only issued decisions regarding Plaintiff Heiser's request for a waiver on the grounds of financial hardship. The agency was first presented with Ms. Heiser's legal claims as presented in her Complaint in her April 17, 2008 request for reconsideration, which was dismissed as untimely. Thus, the agency has never provided an answer as to Plaintiff Heiser's argument on the merits. Even assuming that the jurisdictional bar of presentment has been satisfied on this issue, [5] the fact that the agency has issued no decision on the legal claim Plaintiff Heiser seeks to litigate before this Court weighs heavily against waiving full exhaustion. While it seems clear to the Court that many of the purposes of exhaustion [*27] do not favor requiring full exhaustion here in light of the negligent treatment CMS has given Ms. Heiser's claim, the absence of any administrative record to review prevents the Court from vacating its prior Order declining to waive exhaustion. In short, there simply

is not a sufficient decision by the agency in Ms. Heiser's case for the Court to exercise judicial review.

> 5    Under Matthews v. Eldridge, a district court hearing a case under *§ 405(g)* jurisdiction can only waive full exhaustion of a claim but cannot waive the initial "presentment" of that claim to the agency. *424 U.S. at 328* (holding that without presentment, "there can be no 'decision' of any type. And some decision by the Secretary is clearly required by the statute."). This Court concluded in its March 31, 2008 Opinion that Plaintiff Heiser satisfied the presentment requirement by simply filing her initial request for a waiver. *Merrifield, 2008 U.S. Dist. LEXIS 25877, 2008 WL 906263 at *14*. The parties do not raise the issue of presentment in the present motion, so the Court will not reconsider its decision here.

One final issue merits consideration: whether the Court should exercise judicial review of the dismissal of Plaintiff Heiser's claim as [*28] untimely. The Court notes that it is unsure whether Plaintiff Heiser has requested such review before this Court, but notes the several points in the motion papers where Plaintiff's counsel describes the unfairness of the decision to dismiss her appeal as untimely after CMS's contractors have repeatedly missed their own regulatory deadlines in responding to her initial requests. The Court also credits Defendants' citation to *Tudor v. Shalala, 863 F. Supp. 119, 121-22 (E.D.N.Y. 1994)* for the proposition that ordinarily a district court lacks jurisdiction under *§ 405(g)* to review an agency's dismissal on untimeliness grounds because such a dismissal is not a "final decision" within the meaning of the statute. The Court is aware of precedent in this Circuit ruling similarly. However, in *Bacon v. Sullivan, 969 F.2d 1517, 1521 (3d Cir. 1992)*, the Circuit reasoned that "[u]nder certain limited circumstances, [the agency's] determination not to review a claimant's late filing may constitute a 'final decision' for purposes of judicial review" if the plaintiff has "raised a colorable constitutional claim that his due process rights were violated." See also *Deleon v. Comm'r of Soc. Sec., 191 F. App'x 88, 90-91 (3d Cir. 2006)* [*29] (affirming exercise of *§ 405(g)* jurisdiction to hear complaint of dismissal of agency claim as untimely on constitutional grounds).

As the Plaintiff does not clearly seek review of the dismissal as untimely in this motion, however, the Court will not reopen the case on that basis. The Court could only consider reopening the case on such grounds if Plaintiff Heiser were to move to file an amended complaint in which she seeks the Court's review of the dismissal as untimely on constitutional grounds. Even such a motion, however, would face significant hurdles, not least explaining why such an appeal would not have ex-

pired 60 days after the final dismissal as untimely under *§ 405(g)*.

In sum, the Court concludes, as it did in its March 31, 2008 Opinion, that the requirement of exhaustion in *§ 405(g)* should not be waived to hear Plaintiff Heiser's claim on the merits because the Plaintiff asserts a claim for benefits and that the purposes of exhaustion do not support waiving full exhaustion on this record. See *Bowen v. New York, 476 U.S. at 485*. Additionally, the Court will not reopen the case to review the agency's dismissal of Plaintiff Heiser's appeal as untimely because she has not clearly [*30] requested such relief and has not presented the Court with a complaint challenging the untimeliness decision as unconstitutional.

## IV. CONCLUSION

For the foregoing reasons, the Court will deny the motion for relief from judgment under *Rule 60(b), Fed.*

*R. Civ. P.*, presented by Plaintiffs Burke, Merrifield, Oberlander and Heiser. The Court is frustrated by the inequitable result for Plaintiff Heiser, where the agency has handled the processing of her administrative claims so poorly and yet dismissed her seemingly meritorious claim for such a non-prejudicial and minor delay in filing. However, equitable principles do not control the Court's jurisdiction. Finally, the motion to substitute Jean Huston as successor in interest to Linda French Heiser will be granted.

The accompanying Order will be entered.

**March 28, 2011**
Date

**/s/ Jerome B. Simandle**

JEROME B. SIMANDLE

United States District Judge

# Attachment 3

<u>Goans Acquisition, Inc. v. Merchant Solutions, LLC,</u>

2013 U.S. Dist. LEXIS 138228 (W.D. Mo. Sept. 26, 2013)



Goans Acquisition, Inc., Plaintiff, v. Merchant Solutions, LLC, et al., Defendants.

Civil Action Number 12-00539-CV-S-JTM

UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF MISSOURI, SOUTHERN DIVISION

*2013 U.S. Dist. LEXIS 138228*

September 26, 2013, Filed

**PRIOR HISTORY:** *Goans Acquisition, Inc. v. Merchant Solutions, LLC, 2012 U.S. Dist. LEXIS 148342 (W.D. Mo., Oct. 16, 2012)*

**COUNSEL:** [*1] For Goans Acquisition, Inc., on behalf of itself and all those similarly situated, Plaintiff: Michael T. Miller, LEAD ATTORNEY, Wood Law Firm, LLC, Kansas City, MO; Noah K. Wood, Kansas City, MO.

For Merchant Solutions, LLC, a Connecticut Limited Liability Company, Daniel Eastman, Brian Bartos, Defendants: Gregory P Goheen, LEAD ATTORNEY, McAnany, Van Cleave & Phillips, P.A., Kansas City, KS; Joshua L. Mareschal, LEAD ATTORNEY, McAnany, Van Cleave & Phillips, Springfield, MO; Patricia L. Musick, LEAD ATTORNEY, McAnany, Van Cleave & Phillips, P.C., Springfield, MO.

**JUDGES:** John T. Maughmer, United States Magistrate Judge.

**OPINION BY:** John T. Maughmer

**OPINION**

**ORDER**

On May 11, 2012, plaintiff Goans Acquisition, Inc. ("Goans") instituted the present federal litigation against defendant Merchant Solutions, LLC ("Merchant Solutions").[1] According to its COMPLAINT, Goans maintains a business location in Greene County, Missouri, that includes telephone service with the capability of sending and receiving a facsimile transmission ("fax"). Goans alleges that in July of 2009, Merchant Solutions caused an unsolicited fax advertisement to be sent to Goans' business location. The one-page fax was addressed to "Automotive Store Owners" [*2] and offered them assistance with getting through the "economic crunch" by offering the possibility of a "cash advance." The fax also stated:

> To opt out from future faxes go to www.removemyfaxnumber.com enter PIN# 15298, or call 877-284-7886. The recipient may make a request to the sender not to send any future faxes and that failure to comply with the request within 30 days is unlawful.

Goans' COMPLAINT does not indicate whether it "opted out" of receiving further faxes, but the particular one-page fax addressed to "Automotive Store Owners" apparently was sent to Goans on only the one occasion.

1    Two other defendants, Daniel Eastman and Brian Bartos, were previously dismissed by the Court for lack of personal jurisdiction.

Goans' COMPLAINT alleges that the one-time transmission of the one-page fax addressed to "Automotive Store Owners" is actionable. Originally, Goans asserted five alleged causes of action. However, the Court previously dismissed three of Goans' causes of action. Still remaining before the Court are Goans' allegations that the fax transmission constituted:

> (1) a violation of the Telephone Consumer Protection Act ("TCPA"), *47 U.S.C. § 227*; and

(2) conversion under Missouri [*3] state tort law.

As to both remaining causes of action, Goans seeks injunctive relief, damages, and the certification of a class action under *FED. R. CIV. P. 23* for "all persons to whom Defendants transmitted unsolicited facsimile advertisements between August 24, 2005, and the date [the] Complaint was filed." Presently pending before the Court is the motion of Merchant Solutions to dismiss the remaining claims asserted against it pursuant to *FED. R. CIV. P. 12(b)(1)*. For the reasons set out herein, the motion to dismiss is granted in part and denied in part.

Goans first filed an identical action against Merchant Solutions over this particular one-page fax in the Circuit Court of Greene County, Missouri, the month after the subject fax was sent, on August 24, 2009. *Goans Acquisition, Inc. v. Merchant Solutions*, Case No. 0931-CV12823 (Mo. Cir. Ct. [Greene Cty.]). On February 2, 2012, Merchant Solutions tendered an offer of judgment pursuant to *MO. R. CIV. P. 77.04* to Goans "in the amount of $20,000.00 and costs allowed by law which have been incurred to date in this cause." Goans did not accept the offer of judgment. Thereafter, Merchant Solutions moved the state court to dismiss the action [*4] for mootness. On April 16, 2012, before the motion to dismiss was ruled upon by the state court, Goans dismissed its case without prejudice as permitted under Missouri law. Although the state court case (like the case before this Court) plead for the creation of a class action, during the two-and-one-half years that the case was pending, Goans never moved for class certification.

Four weeks after dismissing the state court case, on May 11, 2012, Goans filed the present action with this Court. Nearly six months later, on November 1, 2012, Merchant Solutions tendered an offer of judgment pursuant to *FED. R. CIV. P. 68* to Goans "in the amount of $20,000.00 and costs allowed by law which have been incurred to date in this cause." Again, Goans made no effort to accept the offer (by rule, the offer was open for acceptance for 14 days). On December 17, 2012, Merchant Solutions then filed the presently pending motion to dismiss. On January 2, 2013, Goans asked the Court to extend its deadline to respond to the motion to dismiss to January 14, 2013. The Court granted the motion. However, it was not until March 18, 2013, that Merchant Solutions responded to the motion.[2] One month later, on April [*5] 15, 2015, Goans moved the Court for class certification with regard to the TCPA.

　　2　On that date, Merchant Solutions filed its proposed response along with a motion for leave

to file the pleading out-of-time, noting that the prior deadline "was simply missed." The Court grants the motion for leave and accepts the late-filed response to the motion to dismiss.

The TCPA creates a private right of action under which a party can bring suit to recover its "actual monetary loss" or "to receive $500 in damages" per violation, whichever is greater. *47 U.S.C. § 227(b)(3)(B)*. If the violation was willful or knowing, the TCPA allows a court, in its discretion, to "increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) [*i.e.*, $500 per violation]". *47 U.S.C. § 227(b)(3)*. In a nutshell, Merchant Solutions argues that its unaccepted offer of judgment moots the claims asserted in this litigation by Goans, depriving the Court of subject matter jurisdiction.

Most federal circuits have found that an offer of judgment that would provide all the relief a plaintiff requests (or is entitled to) has the effect of mooting the action even if the offer [*6] is not accepted. *See, e.g., Warren v. Sessoms & Rogers, P.A., 676 F.3d 365, 370-71 (4th Cir. 2012); O'Brien v. Ed Donnelly Enters., 575 F.3d 567, 575-76 (6th Cir. 2009); Thomas v. Law Firm of Simpson & Cybak, 244 Fed. Appx. 741, 743-44 (7th Cir. 2007); Goodmann v. People's Bank, 209 Fed. Appx. 111, 115 (3d Cir. 2006)*. The source for this conclusion lies in the Supreme Court's explanation of mootness under Article III of the Constitution.

Article III of the Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies. *Deakins v. Monaghan, 484 U.S. 193, 199, 108 S.Ct. 523, 528, 98 L. Ed. 2d 529 (1988); Preiser v. Newkirk, 422 U.S. 395, 401, 95 S.Ct. 2330, 2334, 45 L. Ed. 2d 272 (1975)*. The case-or-controversy requirement ensures that "self-interested parties vigorously advocating opposing positions" present issues "in a concrete factual setting." *United States Parole Comm'n v. Geraghty, 445 U.S. 388, 403, 100 S.Ct. 1202, 1212, 63 L. Ed. 2d 479 (1980)*. Moreover, the "case-or-controversy requirement subsists through all stages of federal judicial proceedings, trial and appellate." *Lewis v. Continental Bank Corp., 494 U.S. 472, 477, 110 S. Ct. 1249, 1253, 108 L. Ed. 2d 400 (1990)*. Thus, if at any point in the litigation, an action no [*7] longer satisfies the case-or-controversy requirement, the action is moot and a federal court must dismiss the action. *Compare Minnesota Humane Soc'y v. Clark, 184 F.3d 795, 797 (8th Cir.1999)*.

Article III of the Constitution, thus, "requires parties to have a continuing 'personal stake in the outcome' of the lawsuit." *Potter v. Norwest Mortg., Inc., 329 F.3d 608, 611 (8th Cir. 2003)* (quoting, in part, Baker v. Carr, 369 U.S. 186, 204, 82 S.Ct. 691, 703, 7 L. Ed. 2d 663 (1962))*. Such a "personal stake" requirement "serves

primarily the purpose of assuring that federal courts are presented with disputes they are capable of resolving." *Geraghty, 445 U.S. at 397, 100 S.Ct. at 1209.* Merchant Solutions argues in its motion to dismiss that Goans' case is moot because "the most [Goans] could recover from [Merchant Solutions] for the fax which is alleged to have been received by [Goans] in violation of the TCPA is $1,500.00."

In response, Goans notes that Merchant Solutions' offer of judgment is only an "offer[] to pay $20,000.00 in damages and court costs on [Goans'] claim for violation of the TCPA."[3] Goans argues that the motion to dismiss must be denied because it also seeks (1) damages for conversion under  [*8] state law, (2) injunctive relief under the TCPA, and (3) class action relief. The Court will address each contention in turn.

3    The parties are in agreement that both of the offers of judgment from Merchant Solutions were addressed to the TCPA claims, although the offers themselves do not seem so constrained. The text of the offer of judgment [Doc. 34-3] states:

COMES    NOW    Defendant Merchants    Solutions,    LLC    and pursuant    to    FED.R.CIV.P.    68, hereby makes Plaintiff Goans Acquisition, Inc. an offer of judgment in the amount of $20,000.00 and costs allowed by law which have been incurred to date in this cause. This Offer of Judgment is made for the purposes specified in FED.R.CIV.P. 68, and is not to be construed as an admission that Defendant is liable in this action, that Plaintiff has suffered any damages, or that Defendant is indebted in any way to Plaintiff.

Nevertheless, the Court will accept the parties' interpretation.

With regard to the allegations regarding the state law conversion claim, Goans is correct - but only to a point. The fact that Goans seeks a recovery for conversion that is not covered by the offer of judgment from Merchant Solutions does mean that a motion to dismiss the  [*9] entire case is unwarranted. *Compare Powell v. McCormack, 395 U.S. 486, 496, 89 S.Ct. 1944, 1951, 23 L. Ed. 2d 491 (1969)* ("Where several forms of relief are requested and one of these requests subsequently becomes moot, the Court . . . still [may] consider[] the remaining

requests."). However, as recently reasoned by another district court:

[The defendant's] offer to fully satisfy [the plaintiff's] TCPA claim deprives [the plaintiff] of a personal stake in the outcome of that claim. . . . The fact [the defendant] has not also offered to resolve [the plaintiff's other] claim is irrelevant. [The plaintiff] appears to believe mootness is an all-or-nothing concept; either an entire case is moot, or it is not. This belief has no basis. Mootness is assessed by claim, not by case.

*Masters v. Wells Fargo Bank South Cent., N.A., 2013 U.S. Dist. LEXIS 101171, 2013 WL 3713492, op. at *4 (W.D. Tex. Jul. 11, 2013).* Thus, to the extent that Merchant Solutions' motion to dismiss seeks to dismiss Goans' conversion claim, it is denied. However, the continuing presence of the conversion claim does not necessarily defeat the motion to dismiss for mootness as it relates to Goans' TCPA claim.

In this case, as part of its TCPA claim, Goans seeks "a preliminary  [*10] and permanent injunction prohibiting [Merchant Solutions] from transmitting unsolicited facsimile transmissions." Goans correctly argues that the offer of judgment from Merchant Solutions does not address this request for injunctive relief and, thus, the TCPA claim is not mooted by the *Rule 68* offer. While the argument has some superficial appeal, it is fatally flawed in one critical respect - the injunctive relief sought by Goans cannot be granted by the Court.

Without question, under the TCPA, "[p]rivate parties are authorized to seek injunctive relief and statutory damages for violations". *Ashland Hosp. Corp. v. Service Employees Intern. Union, Dist., 708 F.3d 737, 741 (6th Cir. 2013); 47 U.S.C. § 227(b)(3)(A).* However, the injunctive relief available under the statute is limited to actions to enjoin violations of the TCPA. Goans seeks an injunction enjoining Merchant Solutions from sending any unsolicited facsimile transmissions. Such an injunction would be of dubious constitutionality. More importantly, such an injunction is not within the scope of the TCPA. The statute prohibits the "use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile  [*11] machine, an unsolicited advertisement" unless:

(1) the unsolicited advertisement is from a sender with an established business relationship with the recipient;

(2) the sender obtained the number of the telephone facsimile machine through--

    (a) the voluntary communication of such number, within the context of such established business relationship, from the recipient of the unsolicited advertisement, or

    (b) a directory, advertisement, or site on the Internet to which the recipient voluntarily agreed to make available its facsimile number for public distribution, and

(3) the unsolicited advertisement contains a notice meeting the requirements set out in the TCPA.

*47 U.S.C. § 227(b)(1)(C)(i)-(iii)*. Moreover, the statute excepts cases of an unsolicited advertisement that is sent based on an established business relationship with the recipient that was in existence before July 9, 2005 - if the sender possessed the facsimile machine number of the recipient before such date of enactment. *47 U.S.C. § 227(b)(1)(C)(ii)(II)*. While the TCPA limits the ability of entities to send unsolicited advertisements by facsimile, it does not prohibit all such transmissions. As such, the statute does not authorize [*12] injunctive relief seeking an unlimited prophylactic prohibition such as that sought by Goans.

Because the injunctive relief sought by Goans is in and of itself outside the Court's jurisdiction, the failure of the offer of judgment to address the claim is meaningless. An illustrative case is *Jones v. CBE Group, Inc., 215 F.R.D. 558 (D. Minn. 2003)*. In *Jones,* the plaintiff brought an action against a debt collector pursuant to the Fair Debt Collection Practices Act ("FDCPA"), *15 U.S.C. §§ 1692, et seq.* After the suit was filed, the debt collector tendered a *Rule 68* offer of judgment that would compensate the plaintiff for the maximum monetary damages available under the FDCPA. When the plaintiff did not accept the offer, the debt collector moved to dismiss the case as moot.

In ruling on the motion to dismiss, the district court correctly observed that the use of *Rule 68* offers to moot cases was necessarily confined to a limited class of cases:

It is clear that a *Rule 68* offer can only moot a plaintiff's claim in circumstances where damages are absolutely determinate. Examples include cases where plaintiff's claim is for a fixed sum, or where, as is the case here, there is a statutory cap [*13] on damages.

*Id. at 562 n.2*. The court found that the FDCPA (like the TCPA herein) met this basic requirement. However, the court also had to consider another issue - whether the offer of judgment from the debt collector resolved all of the plaintiff's claims. To that end, the plaintiff argued that the offer of judgment did not address his claims for a declaratory judgment. The court rejected the argument, reasoning:

Courts have uniformly held that injunctive relief is not available in private actions under the FDCPA. . . . Therefore, it cannot be said that [the debt collector's] *Rule 68* offer failed to afford complete relief on the basis that it did not provide declaratory relief, since that remedy was unavailable to plaintiff.

*Id. at 563 (emphasis added)*. Analogously, in this case, Goans' improperly broad request for injunctive relief is not a viable claim and, thus, need not be included in a valid offer of judgment.

Finally, the Court turns to the final argument raised by Goans, namely, that the offer of judgment does not afford complete relief because it does not address the potential damages that may arise if a class action is certified in this case. The issue of whether an unaccepted [*14] *Rule 68* offer of judgment can moot a case involving class action allegations has been the subject of much litigation.

In *Hartis v. Chicago Title Insurance Co., 694 F.3d 935 (8th Cir. 2012)*, the plaintiffs brought claims on behalf of themselves and a putative class alleging overcharging (of $12) by the defendant Title Company. After the case was removed to federal court, the district court: (1) denied the plaintiffs' motion to remand the case to state court, (2) denied the plaintiffs' request for class certification, (3) denied the plaintiffs' motion to amend to add a claim for punitive damages, and (4) granted the Title Company's motion to dismiss following an unaccepted offer of judgment. The plaintiffs appealed several of the district court's rulings, including the order granting the motion to dismiss. In affirming the dismissal, the court reiterated a basic rule:

Judgment should be entered against a putative class representative on a defendant's offer of payment . . . where class certification has been properly denied and the offer satisfies the representative's entire demand for injuries and costs of the suit.

*Id. at 949 (quoting Alpern v. UtiliCorp. United, Inc., 84 F.3d 1525, 1539 (8th Cir.1996)).*

In [*15] *Hartis* and *Alpern,* the offers of judgment came after the district court ruled on the request for class certification. Thus, the issue before the Court herein is whether the tender and rejection of an offer of judgment prior to the plaintiff asking for class certification changes the result. Under the facts of this case, the Court concludes it does not.

The Court (while acknowledging that there is a split among the Circuits) finds the reasoning of the Seventh Circuit in *Damasco v. Clearwire Corp., 662 F.3d 891 (7th Cir. 2011)* to be persuasive. In *Damasco,* a plaintiff brought an action under the TCPA on behalf of himself and a putative class of individuals who received unsolicited cell phone text messages from the defendant. Prior to the plaintiff moving for class certification, the defendant offered to settle the case for an amount in excess of the maximum damages he could obtain under the TCPA. The plaintiff refused the settlement offer (which was not reduced to a formal *Rule 68* offer of judgment). After the offer was refused, in rapid succession, (1) the defendant removed the case to federal court, (2) the plaintiff moved for class certification, and (3) the defendant moved to dismiss. [*16] After the district court dismissed the case, the plaintiff appealed.

On appeal, the plaintiff argued that the dismissal by the district court was improper because the case was not moot because the controversy remained live, in that:

(1) defendants should be prohibited from mooting a potential class action by buying off named plaintiffs through "involuntary" settlements,

(2) the claim involved was "inherently transitory" - that is, bound to become moot before a class could be certified - such that the plaintiff's motion for certification should "relate back" to the filing of his complaint, and

(3) the settlement offer was not made pursuant to *Rule 68* which would have afforded the plaintiff 14 days to ask the

court to certify the class and avoid mootness.

*Id. at 893-94.* The court rejected the arguments (the first two of which are relevant to this case).

With regard to the plaintiff's argument for an exception to the mootness doctrine for potential class action litigation, the *Damasco* court concluded that the Constitution provided no such flexibility:

To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the [*17] sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III. That the complaint identifies the suit as a class action is not enough by itself to keep the case in federal court. Even when a complaint clearly and in great detail describes the suit as a class action suit, if the plaintiff does not seek class certification, then dismissal of the plaintiff's claim terminates the suit. After [the defendant] made its offer, [the plaintiff's TCPA] case was over.

*Id. at 896 (citations omitted).* Moreover, the Court noted that the plaintiff's concerns about the possible "buy-off" of class action plaintiffs was easily ameliorated: "Class-action plaintiffs can move to certify the class at the same time that they file their complaint. The pendency of that motion protects a putative class from attempts to buy off the named plaintiffs." *Id.*[4]

4    The Court further noted that even if plaintiffs have not fully developed facts supporting certification at the time of filing, "then then they can also ask the district court to delay its ruling to provide time for additional discovery or investigation." *Damasco, 662 F.3d at 896.*

The *Damasco* court also rejected [*18] outright any contention that the TCPA claims before it were inherently transitory.

For a claim to be inherently transitory, uncertainty must exist over whether any member of the class would maintain a live controversy long enough for a judge to certify a class. As we have discussed, any class member following in [the plaintiff's] footsteps can avoid the barrier he now

faces simply by moving to certify a class when filing suit. We discern no other obstacle that would moot a case like [the plaintiff's] before a judge could rule on certification.

*Id.* at 897 (citations omitted).

This Court adopts the rationale articulated by the *Damasco* court and, as such, finds that Goans' alleged TCPA claim became moot before any motion for class certification was made to this Court. Inasmuch as the TCPA is moot, the Court accordingly lacks subject matter jurisdiction over the claim.

While the Court adopts the reasoning of *Damasco* it also notes it would reach the same result under the contrary line of cases. The leading case in this regard is *Weiss v. Regal Collections, 385 F.3d 337 (3d Cir. 2004)*. In *Weiss,* the court articulated a basic rule:

> Absent undue delay in filing a motion for class certification,  [*19] therefore, where a defendant makes a *Rule 68* offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint.

*Id.* at 348 (emphasis added). With regard to undue delay, there is no set formula for determining timeliness; however, the primary guidance appears to whether the plaintiff has had "a reasonable opportunity to compile a record necessary to support a motion for class certification." *Vega v. Credit Bureau Enters., 2003 U.S. Dist. LEXIS 11539, 2003 WL 21544258, op. at *2 (E.D.N.Y. July 9, 2003). See also Morgan v. Account Collection Technology, LLC, 2006 U.S. Dist. LEXIS 64528, 2006 WL 2597865, op. at *8 (S.D.N.Y. Sept. 6, 2006); Nasca v. GC Servs. Ltd. Partnership, 2002 U.S. Dist. LEXIS 16992, 2002 WL 31040647, op. at *2 (S.D.N.Y. Sept. 12, 2002).*

In this case, Goans was first presented with an off of judgment on February 2, 2012. At that time, Goans' state court case had been pending for nearly two-and-one-half years, more than enough time for Goans to have compiled a record to support class certification. However, Goans did not then move for class certification. Nor did Goans move for class certification in response to  [*20] Merchant Solutions' motion to dismiss filed in the state court on April 3, 2012. Nor did Goans move for class certification when refiling this case in federal court on May 11, 2012. Nor did Goans move for class certification when Merchant Solutions again made an offer of judgment on November 1, 2012. Nor did Goans move for class certification when Merchant Solutions filed its present motion to dismiss with the Court on December 17, 2012. Instead, Goans only moved for class certification on April 15, 2013 - over three-and-one-half years from initially instituting a "class action" suit against Merchant Solutions. The Court concludes that even if it followed the "relation back" line of cases (like *Weiss*), Goans' TCPA claim would still be deemed to be moot.

Inasmuch as Goans' present motion for class certification is based solely on the TCPA - the underlying TCPA claim of Goans being mooted, the Court denies class certification. *Anderson v. CNH U.S. Pension Plan, 515 F.3d 823, 826 (8th Cir. 2008)* ("In a class action, dismissal on mootness grounds normally is required when the named plaintiffs' claims become moot prior to a decision on class certification."

In accordance with the foregoing  [*21] analysis and reasoning, it is

**ORDERED** that Merchant Solutions motion to dismiss [Doc. 33] is **GRANTED** with respect to Goans' TCPA claim and **DENIED** with respect to the remaining conversion claim. Accordingly, it is further

**ORDERED** that Goans' motion for class certification [Doc. 42] is **DENIED.**

*/s/ John T. Maughmer*

**John T. Maughmer**

**United States Magistrate Judge**

# Attachment 4

<u>Harper v. Am. Airlines,</u>
2009 U.S. Dist. LEXIS 117134 (N.D. Tx. Dec.
26, 2009)



### JAMES D. HARPER JR., ET AL. VS. AMERICAN AIRLINES, INC., ET AL.

### CIVIL ACTION NO. 4:09-CV-318-Y

### UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF TEXAS, FORT WORTH DIVISION

*2009 U.S. Dist. LEXIS 117134*

**December 16, 2009, Decided**
**December 16, 2009, Filed**

**SUBSEQUENT HISTORY:** Appeal dismissed by *Harper v. Am. Airlines, Inc., 2010 U.S. App. LEXIS 6002 (5th Cir., Mar. 23, 2010)*

**COUNSEL:** [*1] For James D Harper, individually and on behalf of himself and all others similarly situated, Plaintiff: Theodore Carl Anderson, III, LEAD ATTORNEY, Kilgore & Kilgore, Dallas, TX; Paul S Hudson, PRO HAC VICE, Law Offices of Paul S Hudson PC, Sarasota, FL.

For American Airlines, Inc., Defendant: Michael V Powell, LEAD ATTORNEY, Carolyn G Johnson, Locke Lord Bissell & Liddell LLP, Dallas, TX.

**JUDGES:** TERRY R. MEANS, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** TERRY R. MEANS

**OPINION**

ORDER REGARDING TIMELINESS OF MOTION TO CERTIFY AND GRANTING MOTION TO STRIKE

Pending before the Court is plaintiff James Harper's Motion to Declare Motion for Class Certification Timely or in the Alternative For Extension of Time (doc. # 53). Also before the Court is the Response in Opposition and Cross Motion to Strike (doc. # 57) filed by defendant American Airlines, Inc. ("AA"). At issue in both motions is the timeliness of Harper's motion to certify a class in this putative class action.

Local Rule of Civil Procedure 23.2 provides "[w]ithin 90 days of filing a class action complaint, or at such other time as the presiding judge by order directs, an attorney for the plaintiff must move for certification." This case was originally filed on [*2] December 29, 2008, in the United States District Court for the Northern District of Alabama, and transferred to this district on May 29, 2009. Harper argues that Rule 23.2 cannot apply to his case because it runs from the date of filing and, under the circumstances of this case, his time to file a motion for class certification would have expired before the case was subjected to this Court's jurisdiction and rules by its transfer here.

AA does not appear to be advocating such an application of Rule 23.2. Rather, it argues that the 90 days began to run when this case was transferred to this Court, making Harper's motion due by August 27, 2009. As support for this application of the rule, AA points to *Joseph N. Main P.C. v. Electronic Data Sys. Corp.*, in which a judge of this Court concluded that the 90-day period prescribed by Rule 23.2's predecessor ran from the date a case was removed, or the date "the parties were for the first time subject to this Court's jurisdiction, procedures and local rules." *Joseph N. Main P.C. v. Electronic Data Sys. Corp., 168 F.R.D. 573, 575-77 (N.D. Tex. 1996).* Because Harper did not file his class-certification motion until October 28, 2009, AA insists [*3] that the motion must be denied as untimely.

*Federal Rule of Civil Procedure 23 (c) (1) (A)* commands that a district court must determine whether to certify the action as a class action "[a]t an early practicable time after a person sues or is sued as a class representative." Many courts have adopted local rules, such as Rule 23.2, to effectuate this command. *See, e.g., Kitts v. Citgo Petroleum Group, NO. 02:07-CV-1151, 2008 U.S. Dist. LEXIS 106573, at *7-*8 (W.D. La. Dec. 16,*

2008); *see also* 7AA Charles Alan Wright, et. al., Federal Practice and Procedure § 1785.3 (3d ed 2009). Despite the fact that the text of Rule 23.2 states that the 90-day period runs from "filing," given Federal *Rule 23(c)*'s command for prompt consideration, it is entirely reasonable to require that a motion for certification be filed within 90 days of a case's being transferred into this Court. Just as with a removed action, a transferred action is "filed" elsewhere, but once on this Court's docket the case becomes subject to this Court's local rules and Rule 23.2 serves to define the "practicable time" referenced in Federal *Rule 23 (c)*. In fact, the 90-day deadline, so applied, is easier for a plaintiff such [*4] as Harper to comply with because a plaintiff in a transferred case has the benefit of the time during which his case is pending elsewhere to prepare the certification motion, in addition to the 90 days allowed by Rule 23.2.

This conclusion is all the more reasonable given the circumstances of this case. In seeking an extension, and responding to AA's motion to strike, Harper argues that he has diligently pursued class certification. According to Harper, he raised the issue of the deadline for a class-certification motion on three occasions but the Court has so far refused to establish a deadline. In the court-ordered joint status report (doc. # 40), Harper states that a conference between the parties might be necessary to resolve disputes regarding discovery and the scheduling of the motion for class certification and proposes that such motion be due no later than 150 days from the date of the report. Harper points out that, despite this proposal, the initial scheduling order issued based on the joint status report did not address the deadline for class certification.

But the initial scheduling order serves to set deadlines for events that are not otherwise addressed by the rules of [*5] procedure or the local rules. And in any event, AA did not agree to the 150-day deadline, instead insisting that Rule 23.2 and its 90-day deadline applied as discussed above; that is, the class-certification motion was due 90 days from the date this case was transferred to this Court. Nor did the Court adopt the deadline proposed by Harper. Thus, it was inoperative. *Cf. Cone v. Dekra Emission Check, Inc., 2004 U.S. Dist. LEXIS 19704, at *3-*4 (N.D. Tex. 2004)* (concluding deadline proposed in joint status report that is not adopted in the scheduling order is inoperative).

Harper also addressed the deadline for a class-certification motion in a motion for extension of the scheduling-order deadlines (doc. # 45). This motion was filed on September 14, almost nine months after Harper originally filed this case and well beyond 90 days after the case was transferred to this Court. Even granting that there is some ambiguity as to whether the 90-day deadline set out in Rule 23.2 applies to transferred cases,

Harper failed to take timely, appropriate steps to resolve the issue.

In fact, Harper did not raise, in his September 14 motion for extension, his argument that because the Rule 23.2 90-day [*6] deadline runs from the date of filing it cannot apply to this transferred case. Instead, Harper simply requested that the Court "clarify" the scheduling order by setting a deadline, referring to his proposed 150-day deadline from the joint status report and arguing that additional time for discovery on certification issues is necessary. The Court, on September 23, granted the motion for extension of deadlines to the extent that motion sought extension of deadlines set in the initial scheduling order. As for the deadline for a class-certification motion, the Court stated: "The local rules, with which counsel is expected to be familiar, address the timing and content of a class-certification motion. *See* N.D. TEX. LOC. R. CIV. P. 23.2."

Next, Harper points to the motion now under consideration as an attempt by him to address the deadline issue. This motion was not filed until October 28. By that point, the Court had declined to set a deadline in the scheduling order because of the deadline in Rule 23.2 and in light of AA's argument that the rule applied to this case and that the 90-day period ran from the date of transfer. Moreover, the Court had specifically referred Harper to Rule 23.2 [*7] in response to his second request to set a deadline. Yet Harper waited until October 28--over a month after the Court's order on the motion to extend scheduling-order deadlines and two months after the 90-day deadline--to address the issue and, for the first time, raise the argument that the 90-day deadline only applies to cases originally filed in this Court.

Harper's delay is particularly troubling given this is the third in a series of putative class actions by Harper's counsel, Paul Hudson, based on AA's cancellation, diversion, and delay of over 1,100 of its flights on December 29, 2006, as a result of severe weather. The first such case was filed in the United States District Court for the Western District of Arkansas, styled *Ray v. American Airlines, Inc*., No. 5:08-CV-05025. A class-certification motion was filed in *Ray* on November 11, 2008, almost a year before the motion to certify in this case.

The next putative class action was filed in the United States District Court for the Northern District of California, No. C08-00732-CW. The motion to certify in that case was filed four months before the motion in this case, on June 25, 2009. Because this case is Hudson's third attempt [*8] at maintaining a class action based on the events of December 29, 2006, Hudson has had two previous opportunities to discover facts and litigate issues related to certification. His vague arguments that additional time for discovery related to certification caused

his delay thus ring a bit hollow. Indeed, Harper filed this case on December 29, 2008, and then waited ten months to file his motion for class certification. But no motion has been filed asserting a discovery dispute or the need for time for discovery as a basis for justifying delay in filing a motion for certification. Harper merely mentions, in the joint status report, the potential for discovery disputes as a basis for his request for a 150-day deadline, but no specific discovery dispute or factual issue on which discovery is needed is identified.

Harper also argues that he discussed the need for discovery with counsel for AA and that counsel for AA agreed to extend deadlines in this case, including the deadline for a motion for class certification, in exchange for Harper's rescheduling certain depositions. Thus, Harper insists, AA is estopped from asserting that the deadline to move to certify a class has expired. But [*9] the letters and emails submitted by Harper in support of this argument refer only to Hudson's refusal to agree to reschedule certain depositions unless AA agreed "to extend discovery deadlines." (Doc. 53-2 at 27-28) No mention is made of the deadline to file a class-certification motion. A later letter from counsel for AA memorializes the agreement ultimately reached. (*Id.* at 34-35.) There is no mention of an extension of the deadline in which to file a class-certification motion and there is no discussion of a general extension of the deadline for discovery or discovery related to the issue of certification. Consequently, there is no basis to apply estoppel in this case. In any event, the deadline is one imposed by the Federal Rules and this Court's local rules and the parties may not alter it by an undisclosed agreement.

The sort of inattentiveness displayed by Harper with regard to the class-certification motion and the related deadline has been held to justify denying a motion for class certification. *See Price v. United Guar. Residential Ins. Co., No. Civ.A.3:03-CV-2643-G, 2005 U.S. Dist. LEXIS 24762, 2005 WL 265164, at *3 (N.D. Tex. Feb. 2, 2005)* (collecting cases). Many courts deny late-filed certification [*10] motions not simply based on technical non-compliance with a deadline, but on the fact that such non-compliance demonstrates that the putative representative cannot adequately represent the class. *See, e.g., Jones v. Hartford Ins. Co. of Midwest, 243 F.R.D. 694, 695-97 (N.D. Fla. 2006); see also Wright, supra at § 1785.3 & n.4 (collecting cases); cf. East Texas Motor Freight System, Inc. v. Rodriguez, 431 U.S. 395, 405, 97 S. Ct. 1891, 52 L. Ed. 2d 453 (1977)* (concluding that failure to move for class certification constitutes a "failure to protect the interests of class members" and "surely bears strongly on the adequacy of the representation that those class members might expect to receive"). Some courts have denied untimely class-certification motions even when the defendant was not prejudiced by the de-lay. *See Jones, 243 F.R.D. at 696* (citing *Walker v. Columbia University, 62 F.R.D. 63, 64 (S.D.N.Y. 1973)*).

"In general, however, the untimeliness of a class-certification motion, in and of itself, will not justify denying class status to the action. Rather, the delay will be evaluated in light of the circumstances of the case and certification will be denied only when the late timing of the determination may cause [*11] prejudice or unduly complicate the case." Wright, *supra*, at § 1785.3 & nn.5, 6 (collecting cases). Given the circumstances of this case, the Court concludes that Harper's delay cannot be excused. Perhaps there is some ambiguity as to whether Rule 23.2 applies to transferred cases and, due to this ambiguity, the better course may be for the Court to order a deadline to seek certification in future transferred cases. But the only reasonable course for Harper to take in light of this ambiguity was to obtain a ruling from the Court regarding the applicable deadline. He neither plainly nor timely requested one.

As discussed, even if Rule 23.2 does not apply to a transferred case by its terms, its 90-day deadline certainly serves as a guide. If this Court has deemed 90 days sufficient for a case originally filed in this Court, 90 days is certainly reasonable for a case transferred into this Court, particularly a case such as this one that was pending for five months before transfer. Harper raised the issue of the deadline twice before the filing of the instant motion and both times--once by AA and once by this Court--he was referred to local rule 23.2 as providing the relevant deadline. Only [*12] one of these instances--the filing of the joint status report--was before the 90-day period after transfer had expired.

In the joint status report, Harper made only vague references to a generalized need for discovery, so when Harper's 150-day request was opposed by AA on the ground that Rule 23.2 provided the deadline, the Court saw no good reason to grant Harper's request. And Harper's attempt to excuse his delay by claiming a need for discovery is particularly unpersuasive given that not only had this case been pending for nine months by the time Harper filed his motion to certify, but also that this is his third attempt at litigating the certification of a class based on the events of December 29, 2006.

Finally, AA will be prejudiced by this late attempt at class certification. AA has now proceeded for almost a year with the belief that the class that Harper purports to represent will range from 600 to 2,400 passengers confined on aircraft during the delays of December 29. By his motion to certify, and a motion to amend which is also currently pending before the Court, Harper seeks to expand the class to as many as 33,000 and to include passengers who were delayed in any place, not [*13] just those confined on aircraft.

Accordingly, the Court DENIES Harper's motion to declare his motion to certify timely or for an extension and GRANTS AA's cross motion to strike Harper's motion for class certification. Harper's Motion to Strike (doc. # 63) and his Request for Permission to Supplement (doc. # 64) are DENIED.

SIGNED December 16, 2009.

/s/ Terry R. Means

TERRY R. MEANS

UNITED STATES DISTRICT JUDGE

# Attachment 5

Whatley v. Creditwatch Servs., Ltd.,
2014 U.S. Dist. LEXIS 42992 (E.D. Tx. Mar.
31, 2014)



**THOMAS E. WHATLEY III, Plaintiff, v. CREDITWATCH SERVICES, LTD., Defendant.**

**Case No. 4:11-cv-493**

**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION**

*2014 U.S. Dist. LEXIS 42992*

**March 31, 2014, Decided**
**March 31, 2014, Filed**

**PRIOR HISTORY:** *Whatley v. Creditwatch Servs., 2012 U.S. Dist. LEXIS 65701 (E.D. Tex., May 10, 2012)*

**COUNSEL:** [*1] Ken Burdin, Mediator, Pro se, Dallas, TX.

For Thomas E. Whatley III, Plaintiff: Dennis Robert Kurz, LEAD ATTORNEY, Weisberg & Myers - Phoenix, Phoenix, AZ; Marshall S Meyers, LEAD ATTORNEY, Noah D Radbil, Weisberg & Myers, LLC, Houston, TX.

For CreditWatch Services, Ltd., Defendant: Robbie Lu-Ann Malone, LEAD ATTORNEY, Beene & Malone PLLC, Dallas, TX; Eugene Xerxes Martin , IV, Robbie Malone, PLLC, Dallas, TX.

**JUDGES:** RICHARD A. SCHELL, UNITED STATES DISTRICT JUDGE.

**OPINION BY:** RICHARD A. SCHELL

**OPINION**

## MEMORANDUM OPINION AND ORDER ON DAMAGES UNDER THE TELEPHONE CONSUMER PROTECTION ACT

A jury trial was conducted in this matter from May 28, 2013 through May 31, 2013. The jury was asked to answer questions related to Plaintiff's claims under the Telephone Consumer Protection Act (TCPA). The jury held that: (1) Defendant called Plaintiff's cell phone using an automated telephone dialing system (ATDS); (2) Defendant called Plaintiff's cell phone using an artificial or prerecorded voice; (3) Plaintiff gave his prior express consent to be called on his cell phone regarding the underlying transaction at issue; (4) Plaintiff revoked his prior express consent to be called on his cell phone regarding the underlying transaction [*2] at issue.[1] The jury found that sixteen calls were made to Plaintiff's cell phone using an ATDS without his prior express consent and seven calls were made to Plaintiff's cell phone using an artificial or prerecorded voice without his prior express consent in violation of the TCPA. Plaintiff seeks recovery for a total of sixteen violations of the TCPA.[2] The parties agreed to leave to the discretion of the court a determination of whether those violations were committed willfully and knowingly and if so, whether the damages awarded to Plaintiff should be trebled under the *47 U.S.C. § 227(b)(3)(C)*.[3] The parties submitted briefing on this issue to the court.[4] For the reasons set forth herein, the court declines to award treble damages to Plaintiff.

---

1 Dkt. 127. During trial, the court held that Plaintiff could orally revoke his prior express consent to be called on his cellphone based on *7 FCC Rcd. 8752 n.47*. Dkt. 146, Trial Tr. vol. 3, 624:12- 14, May 30, 2013; *see also Adamcik v. Credit Control Servs., Inc., 832 F. Supp. 2d 744, 749-53 (W.D. Tex. Dec. 19, 2011)*. Since the trial of this case, the Third Circuit has also held that prior express consent under the TCPA may be revoked. *See Gager v. Dell Fin. Servs., LLC, 727 F.3d 265 (3d Cir. 2013)*. [*3] The court declines Defendant's invitation to reconsider its ruling on this point. *See* Dkt. 137 ¶10.
2 Dkt. 134 at 6.

3   Dkt. 146, Trial Tr. vol. 3, 700:16-701:25, May 30, 2013.

4   *See* Dkts. 134, 137, 141.

The Telephone Consumer Protection Act, *47 U.S.C. § 227(b)(3)* provides that

A person or entity may . . .bring . . .

(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,

(B) an action to recover for actual or monetary loss from such violation, or to receive $500 in damages for each such violation, whichever is greater, or

(C) both such actions.

If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

Plaintiffs ask the court to award him $24,000, which amounts to treble damages for each of Defendant's sixteen violations of the TCPA. Plaintiff contends that Defendant knowingly and willfully violated the TCPA because Defendant intentionally called Plaintiff's cell phone [*4] using an ATDS or artificial or prerecorded voice. Defendant counters that its actions were not knowing and willful because at the time it contacted Plaintiff using an ATDS or artificial or prerecorded voice, it did not know that its actions constituted a violation of the statute.

Courts are divided as to what constitutes a willful or knowing violation of the TCPA. One line of cases requires a defendant to know that its actions are a violation of the statute. A second line of cases holds that a defendant does not need to know that its actions violate the statute, only that the defendant intentionally act in a way that violates the statute. At least one court has held that to commit a knowing violation a defendant must know that his conduct violates the statute, but to commit a willful violation the defendant only must act intentionally.[5]

5   *See In re Monitronics Int'l, Inc., Tel. Consumer Prot. Act Litig., 5:11-CV-90, 2014 U.S. Dist. LEXIS 10028, 2014 WL 316476, at *5 (N.D.W.V. Jan. 28, 2014)* (collecting cases).

Under *47 U.S.C. § 227(b)(3)(B)*, a plaintiff can recover $500 in damages for a defendant's violation of the statute without regard to the defendant's state of mind in committing that violation. An award of damages [*5] under *Subsection (B)* is not discretionary.[6] *Subsection (C)* allows the court to increase the award for a violation that is made "knowingly or willfully" up to treble the amount of statutory damages awarded under *Subsection (B)*. The separation of these two paragraphs and the increased penalty to be awarded in the court's discretion suggests that in order to commit a violation of the TCPA "knowingly or willfully" the defendant must have had some more egregious state of mind when it violated the statute that would warrant an increased award of damages. This court agrees with the line of cases that hold that a defendant must know that its actions are a violation of the TCPA in order to commit a knowing or willful violation of the statute that warrants an award of treble damages.[7]

6   *Adamcik v. Credit Control Servs., Inc., 832 F. Supp. 2d 744, 754 (W.D. Tex. Dec. 19, 2011)* ("[T]he only discretion Congress has afforded the Court in this case is whether to *increase* damages.").

7   *See also Mfrs. Auto Leasing, Inc. v. Autoflex Leasing, Inc., 139 S.W.3d 342, 346 (Tex. App.-- Fort Worth 2004, pet. denied)* (holding that "the TCPA is willfully or knowingly violated when the defendant knows of the TCPA's [*6] prohibitions, knows he does not have permission to send a fax ad to the plaintiff, and sends it anyway").

Defendant argues that at the time these violations occurred, courts were split on the issue of whether under the TCPA an individual's prior express consent to be contacted on a cellular phone could be revoked at all, and if so, if it could be revoked orally or must be revoked in writing. In its brief on the issue, Defendant points out that "[a]t the time of the calls, three (3) opinions had been issued, and the first two (2) deciding that consent could only be revoked in writing and the latter that consent may be revoked orally."[8] The statute itself is silent on the issue of how prior express consent, once given, may be revoked. Defendant argues that under these circumstances, it would have been impossible for Defendant to know it was violating the statute and therefore, it did not commit a willful and knowing violation that would merit an award of treble damages to Plaintiff. The court agrees. In addition to inexactitude of the statute and the disagreement among courts, there was no evidence put forth in this case that would indicate that Defendant in fact acted knowingly or willfully [*7] in violation o the TCPA.[9]

8   Dkt. 137 ¶ 1.

9   *See* Dkt. 137 at ¶¶ 19, 20; *see also Adamcik, 832 F. Supp. 2d at 755* ("No evidence was presented which would support a finding that CCS was more than negligent in its TCPA violation--specifically, there was no evidence CCS knowingly disregarded Adamcik's revocation of consent, nor was there any evidence CCS knew or should have known it was violating the TCPA.").

Under these circumstances, the court declines to exercise its discretion to increase the amount of statutory damages awarded to Plaintiff under the TCPA. Accordingly, the court awards $8,000 in statutory damages un-

der the Telephone Consumer Protection Act to Plaintiff, which amounts to $500 for each of a total of sixteen violations of the TCPA.[10]

10   *47 U.S.C. § 227(b)(3)(B).*

IT IS SO ORDERED.

**SIGNED this the 31st day of March, 2014.**

/s/ Richard A. Schell

RICHARD A. SCHELL

UNITED STATES DISTRICT JUDGE

# Attachment 6
<u>Haley v. Hughes Network Sys., LLC,</u>
2013 U.S. Dist. LEXIS 157104 (W.D.N.Y. Nov. 1, 2013)



FAITH HALEY, Plaintiff, -vs- HUGHES NETWORK SYSTEMS, LLC, d/b/a HUGHESNET, INC., Defendant.

**12-CV-1079JTC**

**UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF NEW YORK**

*2013 U.S. Dist. LEXIS 157104*

**October 30, 2013, Decided
November 1, 2013, Filed**

**COUNSEL:** [*1] For Faith Haley, Plaintiff: Sergei Lemberg, LEAD ATTORNEY, Lemberg & Associates, LLC, Williamsville, NY.

**JUDGES:** JOHN T. CURTIN, United States District Judge.

**OPINION BY:** JOHN T. CURTIN

**OPINION**

## INTRODUCTION

On November 6, 2012, plaintiff, Faith Haley, filed a complaint alleging the violation of the Telephone Consumer Protection Act, *47 U.S.C. § 227, et seq.* ("TCPA"). Defendant, Hughes Network, LLC, d/b/a HughesNet, Inc., failed to appear and defend this action, which resulted in the Clerk of the Court entering default on April 2, 2013. Item 7. Presently before the court is plaintiff's motion for default judgment pursuant to *Rule 55(b)(2) of the Federal Rules of Civil Procedure*. Item 11. For the following reasons, plaintiff's motion is granted.

## DISCUSSION

### 1. Default Judgment Standard

Before obtaining default judgment, a party must first secure a Clerk's Entry of Default by demonstrating, by affidavit or otherwise, that the opposing party is in default. *Fed.R.Civ.P. 55(a)*. Once default has been entered, the allegations of the complaint that establish the defendant's liability are accepted as true, except for those relating to the amount of damages. *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992)*.

In [*2] considering whether to enter default judgment, the court must determine whether the facts alleged in the complaint are sufficient to state a claim for relief as to each cause of action for which the plaintiff seeks default judgment. Further, where the damages sought are not for a sum certain, the court must determine the propriety and amount of the default judgment. *See Fed.R.Civ.P. 55(b)(2)*. Damages must be established by proof, unless the damages are liquidated or "susceptible of mathematical computation." *Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)*. All reasonable inferences from the evidence presented are drawn in the moving party's favor. *See Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)*.

### 2. Liability

As set forth in the complaint, the facts alleged are accepted as true. In approximately August 2012, defendant began placing daily telephone calls to plaintiff's cellular telephone in an attempt to locate plaintiff's daughter, Danielle Haley. Defendant contacted plaintiff's cellular telephone using an automated telephone dialer system ("ATDS") with an artificial or prerecorded voice. Plaintiff has never provided defendant with her telephone number or contact [*3] information. On many occasions, plaintiff informed defendant that it had dialed an incorrect number and requested that it cease placing calls to her. Despite this, defendant continued to place telephone calls to plaintiff. Item 1, ¶¶ 7-13.

Plaintiff alleges multiple violations of a single provision of the TCPA. Specifically, plaintiff alleges that

defendant violated *section 227(b)(1)(A)(iii)*, which makes it unlawful for

> any person within the United States, or any person outside the United States if the recipient is within the United States ... to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call ....

*47 U.S.C. § 227(b)(1)(A)(iii)*. "Thus, to prove that a defendant violated the TCPA in a case involving a cell phone, a plaintiff must establish that (1) the defendant called his or her cell phone, and (2) the defendant [*4] did so using an ATDS or an artificial or prerecorded voice." *Levy v. Receivables Performance Mgmt., LLC, F.Supp.2d    , 2013 U.S. Dist. LEXIS 135675, 2013 WL 5310166, *5 (E.D.N.Y. September 23, 2013)*. Plaintiff has sufficiently alleged the violation of *section 227(b)(1)(A)(iii)* of the TCPA, and liability under the statute is established.

**3. Damages**

A person or entity that successfully establishes a TCPA violation under *section 227(b)(1)(A)(iii)* may recover its actual monetary loss from the violation or receive $500 in damages for each such violation, whichever is greater. *See 47 U.S.C. § 227(b)(3)(B)*. Moreover, if the court finds that the defendant engaged in willful or knowing violations of the TCPA, "the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B)," i.e., three times the actual monetary loss resulting from the violation or $1500 in damages for each violation, whichever is greater. *See id. § 227(b)(3)*. In this case, plaintiff seeks an award of $46,500.00. This amount represents damages of $15,000.00 for the negligent violation of the TCPA on 30 occasions prior to and including September 24, 2012, and $31,500.00 [*5] for the willful violation of the TCPA on 21 occasions after September 24, 2012, when plaintiff specifically asked that defendant stop calling her cell phone.

By virtue of the entry of default, defendant is deemed to have admitted the well-pleaded allegations of the complaint, including its placing of non-emergency telephone calls to plaintiff's cellular telephone using ATSD and/or prerecorded or artificial voice technology, without plaintiff's prior consent. In support of the motion for a default judgment, plaintiff has submitted a copy of her cellular telephone log from September 24, 2012 to October 26, 2012, which indicates 20 telephone calls from defendant to plaintiff's cell phone. Item 11-4 ("Exh. A").[1] Plaintiff stated in an affidavit that, in or around the last week of August 2012, defendant began placing daily calls to her cellular telephone. Item 11-3, ¶ 2. From the last week of August until September 24, 2012, defendant placed "as many as 30" calls to her cellular telephone. *Id.*, ¶ 12. On September 24, 2012, she advised defendant that the number it was calling was a cellular number and asked defendant to stop the calls. *Id.*, ¶ 10. Accordingly, the court finds that the violations [*6] after September 24, 2012 were willful in that defendant was advised that the number it was calling in an effort to locate plaintiff's daughter was a cellular telephone number. Accordingly, the court awards plaintiff $15,000.00 representing 30 negligent violations of the statute prior to and including September 24, 2012, and $27,000.00 representing 18 willful violations of the statute after September 24, 2012, for a total judgment of $42,000.00.

> 1    Plaintiff seeks damages for 21 calls after September 24, 2012, but the telephone log submitted to the court lists only 20 legible calls on and after September 24, 2012, with two calls occurring on September 24, 2012, one of which was not answered and thus could not have been the call in which plaintiff advised the defendant to cease calls to her cellular telephone.

**4. Attorneys' Fees and Costs**

In the complaint, plaintiff sought attorney's fees, but abandoned the request in her motion for default judgment. Absent explicit congressional authorization, attorney's fees are generally not recoverable. *See, e.g., Key Tronic Corp. v. United States, 511 U.S. 809, 814, 114 S. Ct. 1960, 128 L. Ed. 2d 797 (1994)*. The TCPA makes no provision for attorney's fees or costs. *See Klein v. Vision Lab Telecomms., Inc.., 399 F. Supp. 2d 528, 542 (S.D.N.Y 2005)*; [*7] *J.C. Corp. Mgmt., Inc. v. Resource Bank, 2005 U.S. Dist. LEXIS 33433, 2005 WL 2206086, at *4 (E.D.Mo. September 12, 2005)*. Accordingly, the plaintiff is not entitled to an award of attorney's fees.

**CONCLUSION**

Accordingly, plaintiff's Motion for Default Judgment (Item 11) is GRANTED. Plaintiff is awarded $42,000.00 for defendant's violations of the TCPA.

2013 U.S. Dist. LEXIS 157104, *

So Ordered.                                          United States District Judge

/s/ John T. Curtin                                   Dated: October 30, 2013

JOHN T. CURTIN

# Attachment 7

<u>Bank v. Spark Energy Holdings LLC,</u>
2013 U.S. Dist. LEXIS 150733 (S.D. Tx.
October 18, 2013)



TODD C BANK, Plaintiff, vs. SPARK ENERGY HOLDINGS LLC, SPARK EN-
ERGY, LP, and SPARK ENERGY GAS, LP, Defendants.

CIVIL ACTION NO. 4:11-CV-4082

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF
TEXAS, HOUSTON DIVISION

*2013 U.S. Dist. LEXIS 150733*

October 18, 2013, Decided
October 18, 2013, Filed

**PRIOR HISTORY:** *Bank v. Spark Energy Holdings,*
*LLC, 2012 U.S. Dist. LEXIS 130531 (S.D. Tex., Sept. 13,*
*2012)*

**COUNSEL:** [*1] For Todd C Bank, Individually and
on Behalf of All Others Similarly Situated, Plaintiff:
Todd C. Bank, Law Office of Todd C Bank, Kew Gar-
dens, NY.

For Spark Energy Holdings LLC, Spark Energy LP,
Spark Energy Gas LP, Defendants: Joshua C Thomas,
Baker and Hostetler, Houston, TX.

**JUDGES:** MELINDA HARMON, UNITED STATES
DISTRICT JUDGE.

**OPINION BY:** MELINDA HARMON

**OPINION**

**OPINION AND ORDER OF DISMISSAL**

Pending before the Court in the above referenced
individual and putative class action under *Federal Rule*
*of Civil Procedure 23(a)* and *(b)* pursuant to the Tele-
phone Consumer Protection Act ("TCPA"), *47 U.S.C. §*
*227(b)(1)(B)* [1] and *47 C.F.R. § 64.1200(a)(2)*, seeking
statutory damages, injunctive relief, attorney's fees, and
costs, are two motions: (1) Defendants Spark Energy
Holdings, LLC, Spark Energy, L.P., and Spark Energy
Gas, LP's (collectively, "Spark Energy's") motion to dis-
miss under *Federal Rule of Civil Procedure 12(b)(1)*
(instrument #36); and (2) Plaintiff Todd C. Bank's
("Plaintiff's" or "Bank's") motion for extension of time to
move for class certification (#41).

1    *Section 227(b)(1)(B)*("Restriction on use of
automated telephone equipment") provides,

**(1)** Prohibitions

It shall be unlawful for any
person within the United    [*2]
States, or any person outside the
United States if the recipient is
within the United States- . . .

**(B)** to initiate any telephone
call to any residential telephone
line using an artificial or prere-
corded voice to deliver a message
without prior express consent of
the called party unless the call is
initiated for emergency purposes
or is exempted by rule or order by
the Commission under paragraph
(2)(B).

**Allegations of the Complaint (#1)**

Plaintiff Todd C. Bank ("Plaintiff" or "Bank"), a
lawyer proceeding *pro se*, brings this suit against Spark
Energy individually and on behalf of all persons to
whose residential telephone lines Defendants have
placed one or more calls using an artificial or prerecord-
ed voice that delivered a message advertising the com-
mercial availability or quality of property, goods and
services.

Bank alleges that on or about October 4, 2011, without his express invitation or permission, Spark Energy, using an artificial or prerecorded voice, placed the following message to Bank's residential telephone line:

> Hello, this is pertaining to your current electric bill with Con Edison, reference number 42648967. We are now able to offer you a lower rate on your electricity bill [*3] through the recent government deregulation. Press five to be transferred to our approval department. To lower your electricity bill and gas bill with Con Edison, press five. Press five now to be transferred. Press three if you are not interested in the discount.

Individually, Bank complains only of this one call. The complaint further asserts that during the Class Period, beginning four years prior to the commencement of this action on November 21, 2011 until the present, Spark Energy placed at least 10,000 residential telephone lines prerecorded telephone calls with this same message or one that was materially similar.

The complaint's Prayer for Relief seeks for Plaintiff and the class members statutory damages under *47 U.S.C. 227(b)(3)(B)* of $500.00 with interest and/or under *47 U.S.C. § 227(b)(3)(C)* [2] up to $1000.00 if Spark Energy's violations were made knowingly or willfully, plus interest; injunctive relief under *47 U.S.C. § 227(b)(3)(A)* enjoining Spark Energy from violating *47 U.S.C. § 227(b)(1)(B)*; costs; and reasonable attorney's fees.

2    *Section 227(b)(3)* provides,

> Private right of action
>
> A person or entity may, if otherwise permitted by the laws or rules of court of a State, [*4] bring in an appropriate court of that State--
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation, whichever is greater, or

> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph.

In *Mims v. Arrow Financial Services, LLC, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012)* the Supreme Court held that federal and state courts have concurrent jurisdiction over private suits arising under the TCPA and that this permissive language in *§ 227(b)(3)*, authorizing private suits under state law in state court where the state's law allows, does not oust federal courts of federal question jurisdiction.

**Applicable Law and Standard of Review**

*Federal Rule of Civil Procedure 12(b)(1)* allows a party to move for dismissal of an action for lack of subject [*5] matter jurisdiction. "'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks statutory or constitutional power to adjudicate the case.'" *Home Builders Ass'n of Miss., Inc. v. City of Madison, 143 F.3d 1006, 1010 (5th Cir. 1998), quoting Nowak v. Ironworkers Local 6 Pension Fund, 81 F.3d 1182, 1187 (2d Cir. 1988).* "Article III, § 2 of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restricts the authority of federal courts to resolve the legal rights of litigants in actual controversies." *Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528, 185 L. Ed. 2d 636 (2013), quoting Valley Forge Christian College v. Americans United for Separation of Church and State, Inc., 454 U.S. 464, 471, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982).* For there to be an actual controversy for federal court jurisdiction, the plaintiff must have "a legally cognizable interest, or 'personal stake,' in the outcome of the action." The controversy "'must be extant at all stages of review, not merely at the time the complaint is filed'"; "[i]f an intervening circumstance deprives the plaintiff" of that personal stake "at any point during the litigation, the action can no longer [*6] proceed and must be dismissed as moot." *Id., quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 67, 117 S. Ct. 1055, 137 L. Ed. 2d 170 (1997),* and *Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78, 110 S. Ct. 1249, 108 L. Ed. 2d 400 (1990).*

A *Rule 68* offer of judgment providing the plaintiff with complete relief will, as a general rule, moot the plaintiff's claim because he then no longer has a personal stake in the outcome of the litigation. *Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 921 n.5 (5th Cir. 2008).* Therefore the court must examine carefully whether the *Rule 68* offer does provide complete relief to the plaintiff. *Mabary v. Hometown Bank, N.A., 276 F.R.D. 196, 201 (S.D. Tex. 2011).* Furthermore as a general rule, in a class action when the personal claims of all named plaintiffs have been satisfied and no class has yet been certified, the putative class action becomes moot because there is no plaintiff, named or unnamed, that can assert a justiciable claim against a defendant and thus there is no case or controversy within the scope of Article III of the Constitution to provide the court with jurisdiction. *Murray v. Fidelity National Financial, Inc., 594 F.3d 419, 421 (5th Cir. 2010).*

The Fifth Circuit has ruled that even a rejected [*7] *Rule 68* offer of judgment that satisfies the entirety of a plaintiff's claim will usually moot that claim. *Masters v. Wells Fargo Bank South Cent., N.A., No. A-12-CA-376-SS, 2013 U.S. Dist. LEXIS 101171, 2013 WL 3713492, at *4 (W.D. Tex. July 11, 2013), citing Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 921 & n.5 (5th Cir. 2008), citing inter alia Weiss v. Regal Collections, 385 F.3d 337, 342 (3d Cir. 2004)*("[U]nder traditional mootness principles an offer for the entirety of a plaintiff's claim will generally moot the claim."); *Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)*("Once the defendant offers to satisfy the plaintiff's entire demand, there is no dispute over which to litigate, and a plaintiff who refuses to acknowledge this loses outright under *Fed. R. Civ. P. 12(b)(1)* because he has no remaining stake.")(citations omitted). Recently in *Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 1528-29, 185 L. Ed. 2d 636 (2013),* the majority of the Supreme Court noted that the Circuit Courts of Appeals are split on this question whether a plaintiff's refusal to accept a *Rule 68* offer prevents his TCPA claim from being moot, but stated "'we do not reach this question, or resolve the split, because the issue is not before [*8] us.'" *Masters, 2013 U.S. Dist. LEXIS 101171, 2013 WL 3713492, at *4, quoting Genesis Healthcare.* Thus this Court will continue to follow Fifth Circuit precedent that holds that a *Rule 68* offer that satisfies the entirety of a named plaintiff's claims, where no class has been certified, and where no exceptions apply, both the named plaintiff's claims and the class action become moot: "As a general principle, a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been certified. In such a case there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case of controversy' within the

meaning of Article III of the Constitution." *Murray v. Fidelity Nat. Fin. Inc., 594 F.3d 419, 421 (5th Cir. 2010); see also Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1045, 1036, 1050 (5th Cir. 1981)*(Rule 23 class action)("[A] suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has properly been certified," but recognizing a limited exception where the plaintiffs' motion for class [*9] certification was pending when the defendants made their *Rule 68* offer of judgment because "[a] series of individual suits, each brought by a new named plaintiff could individually be 'picked off' before class certification" and because "the defendants [would] have the ability by tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification"); *Sandoz v. Cingular Wireless LLC, 553 F.3d 913 (5th Cir. 2008)*(Fair Labor Standard Act ("FLSA") collective action)("[W]hen a FLSA plaintiff files a timely motion for certification of a collective action, that motion relates back to the date the plaintiff filed the initial complaint, particularly when one of the defendant's first actions is to make a *Rule 68* offer of judgment. If the court ultimately grants the motion to certify, then the *Rule 68* offer to the individual plaintiff would not fully satisfy the claims of everyone in the collective action; if the court denies the motion to certify, then the *Rule 68* offer of judgment renders the individual plaintiff's claims moot.").

The party asserting that subject matter jurisdiction exists, here Bank, must bear the burden of proof [*10] by a preponderance of the evidence for a 12(b)(1) motion. *New Orleans & Gulf Coast Ry. Co. v. Barrois, 533 F.3d 321, 327 (5th Cir. 2008); Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001).* In reviewing a motion under *12(b)(1)* the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts. *Montez v. Dep't of Navy, 392 F.3d 147, 149 (5th Cir. 2004); Williamson v. Tucker, 645 F.2d 404, 413 (5th Cir. 1981).*

A motion to dismiss for lack of subject matter jurisdiction under *Rule 12(b)(1)* is characterized as either a "facial" attack, i.e., the allegations in the complaint are insufficient to invoke federal jurisdiction, or as a "factual" attack, i.e., the facts in the complaint supporting subject matter jurisdiction are questioned. *In re Blue Water Endeavors, LLC, Bankr. No. 08-10466, Adv. No. 10-1015, 2011 Bankr. LEXIS 67, 2011 WL 52525, *3 (E.D. Tex. Jan. 6, 2011), citing Rodriguez v. Texas Comm'n on the Arts, 992 F. Supp. 876, 878-79 (N.D. Tex. 1998), aff'd, 199 F.3d 279 (5th Cir. 2000).* A facial attack happens when a defendant files a *Rule 12(b)(1)*

[*11] motion without accompanying evidence. *Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)*. In a facial attack, allegations in the complaint are taken as true. *Blue Water, 2011 Bankr. LEXIS 67, 2011 WL 52525 at *3, citing Saraw Partnership v. United States, 67 F.3d 567, 569 (5th Cir. 1995)*.

If it is a factual attack, which is the case here, the Court may consider any evidence (affidavits, testimony, documents, etc.) submitted by the parties that is relevant to the issue of jurisdiction. *Id., citing Irwin v. Veterans Admin., 874 F.2d 1092, 1096 (5th Cir. 1989)*. A defendant making a factual attack on a complaint may provide supporting affidavits, testimony or other admissible evidence. *Paterson v. Weinberger, 644 F.2d 521, 523 (5th Cir. 1981)*. The plaintiff, to satisfy his burden of proof, may also submit evidence to show by a preponderance of the evidence that subject matter jurisdiction exists. *Id.* When the court reviews extrinsic evidence to resolve the *Rule 12(b)(1)* motion, no presumption of truthfulness attaches to the plaintiff's allegations, and the court is free to decide the merits of the jurisdictional dispute. *Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. 1981)*; *Offiiong v. Holder, 864 F. Supp. 2d 611, 616 & n.4 (S.D. Tex. 2012)*. [*12] The court's consideration of such matters outside the pleadings does not convert the motion to one for summary judgment under *Rule 56(c)*. *Robinson v. Paulson, H-06-4083, 2008 U.S. Dist. LEXIS 84808, 2008 WL 4692392 at *10 (S.D. Tex. Oct. 22, 2008), citing Garcia, 104 F.3d at 1261*.

**Spark Energy's Motion to Dismiss (#36)**

Spark Energy argues that this action is moot because it tendered to Bank an offer of judgment under *Federal Rule of Civil Procedure 68*, [3] which Bank rejected, [4] but which, if Bank prevailed, would fully satisfy all of the individual damages to which he would be entitled. Bank rejected the offer, but even an unaccepted offer under Fifth Circuit law moots Bank's individual claims. *Krim v. pcOrder.com, Inc., 402 F.3d 489, 502 (5th Cir. 2005)*. Generally in the Fifth Circuit "a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has been certified." *Murray v. Fidelity Nat. Fin. Inc., 594 F.3d 419, 421 (5th Cir. 2010)*. Spark Energy further contends that the two exceptions to the general rule, i.e., that an uncertified class action continues regardless of the mooting of the named plaintiff's claim where a motion for class certification is on file [*13] [5] or where class certification is "timely" and "diligently pursued" so that a later class certification would "relate back" to the filing of the complaint, [6] do not apply here. Bank has not filed a timely motion to certify and cannot do so now because the discovery period is over and the pretrial motions deadline has passed.

3 A copy is attached to #36, Declaration of J. Thomas, Ex. A. *Rule 68* provides in relevant part,

(a) **Making an Offer; Judgment on an Accepted Offer.** At least 14 days before the date set for trial, a party defendant against a claim may serve an opposing party an offer to allow judgment on specified terms, with the costs then accrued.

If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

(b) **Unaccepted Offer.** An unaccepted offer is considered withdrawn, but it does not preclude a later offer. Evidence of an unaccepted offer is not admissible except in a proceeding to determine costs. . . .

(d) **Paying Costs After an Unaccepted Offer.** If the judgment that the offeree finally obtains is not more favorable [*14] than the unaccepted offer, the offeree must pay the costs incurred after the offer was made.

4 Copy of Bank's email rejecting offer is at #36, Declaration of J. Thomas, Ex. B.
5 *Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1045 (5th Cir. 1981)*.
6 *Sandoz, 553 F.3d at 919*.

Spark Energy argues that in *Genesis Healthcare Corp. v. Symczyk, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013)*(FLSA collective action)(holding that a FLSA collective action is not justiciable where the sole plaintiff's claims are mooted before any other similarly situated plaintiffs opt in to the suit, and mooting the collective action), the Supreme Court rejected the "relation back" and "picking off" arguments as they related to FLSA collective actions; because these same exceptions are applied to Rule 23 actions by the Fifth Circuit, Spark Energy maintains that *Genesis Healthcare* is relevant to this action and makes such arguments meritless. [7]

7    This Court observes that the Fifth Circuit, noting that *Sandoz, 553 F.3d at 920*, a FLSA collective action case, opined that it was "nevertheless instructive" in the Rule 23 class action context:

> As the *Sandoz* court noted, "the differences between class actions and *FLSA § 216(b)* collective actions do [*15] not compel a different result regarding whether a certification motion can 'relate back' to the filing of the complaint [because] . . . the policies behind applying the 'relation back' principle for Rule 23 class actions apply with equal force to *FLSA § 216(b)* collective actions."

*Murray, 594 F.3d at 422 n.2*.

Spark Energy, observing that Bank individually seeks damages of $1,500, an injunction prohibiting Spark Energy from violating the TCPA, and attorney's fees. The offer of judgment was for $10,000 in damages and included the injunctive relief he requested, and thus the offer of judgment satisfies all individual damages and injunctive relief sought in the complaint. Bank's request for attorney's fees is irrelevant because he cannot recover fees as the TCPA does not provide a statutory mechanism for recovery of fees. *47 U.S.C. § 227; Dennis v. Syndicated Office Sys., Inc., No. 09-61345-CIV, 2010 U.S. Dist. LEXIS 100913, 2010 WL 3632478, at *1 (S.D. Fla. Sept. 14, 2010)*(TCPA "does not authorize the awarding of fees for such claims."). Bank would only be entitled to a fee award under *Rule 23*, but he has not and cannot certify a class. Furthermore, because he is *pro se*, he cannot recover his fees on either his individual [*16] claims or for representing the class action. *Kay v. Ehrler, 499 U.S. 432, 435-38, 111 S. Ct. 1435, 113 L. Ed. 2d 486 (1991)*(holding that a *pro se* litigant who is also a lawyer cannot be awarded attorney's fees, even where the statute provides for recovery of fees); *Vaksman v. C.I.R., 54 Fed. Appx. 592, No. 02-60062, 2002 WL 31730351, at *3 (5th Cir. 2002)*("As a *pro se* litigant, [the petitioner] is not entitled to attorney fees because, quite simply, he did not actually 'pay' or 'incur' attorney fees."); *Shaunfield v. Bank of Am., No. 3:12-CV-3859-B, 2013 U.S. Dist. LEXIS 64588, 2013 WL 1846838, at *4 (N.D. Tex. Apr. 24, 2013)*.

**Plaintiff Bank's Memorandum in Opposition (#38)**

Bank argues that the Court should either deny Spark Energy's motion or stay the motion until the Court re-

solves Bank's pending motion seeking an extension of the discovery deadline.

He maintains that *Genesis Healthcare*, which distinguished between Rule 23 class actions and FLSA collective actions and involved only the latter, does not apply to a Rule 23 class action like the one here. Thus while *Genesis Healthcare* did abrogate Fifth Circuit law regarding the relation-back doctrine as applied to FLSA collective actions, [8] it did not abrogate well settled Fifth Circuit law holding [*17] that a timely Rule 23 class certification motion relates back to the filing of the complaint and therefore bars an offer of judgment made before the class certification motion from mooting the named plaintiff's individual claims. [9] *Mabary, 276 F.R.D. at 200-06; Genesis Healthcare, 133 S. Ct. at 1529-30* (discussing differences between Rule 23 class actions and FLSA collective actions). Bank claims that granting his request for an extension of the discovery deadline and thus of the due date for a motion for class certification would invoke the relation-back doctrine and enable him to seek class certification that would relate back to the commencement of this action and prevent dismissal based on Spark Energy's offer of judgment.

8    *See Sandoz, 553 F.3d at 919*.
9    This Court questions Bank's argument. See page 11 and footnote 7 of this Opinion and Order.

**Court's Decision**

Both Article III with its "cases and controversies" limitations, requiring a party invoking federal court jurisdiction to have a personal stake in the outcome, or "standing," and the mootness doctrine apply to class actions. *Dallas Gay Alliance, Inc. v. Dallas County Hospital Dist., 719 F. Supp. 1380, 1384 (N.D. Tex. 1989)*.

Under [*18] *Rule 68*, in non-class actions, if an offer of judgment completely satisfies a plaintiff's claims, those claims become moot. See, e.g., *Sandoz, 553 F.3d at 915; Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)*.

In a class action, if a defendant makes a full offer of judgment, completely satisfying all of the named plaintiff's individual claims, then the named plaintiff's case becomes moot. 1 *Newberg on Class Action § 2:15 (5th ed.), citing Deposit Guaranty Nat. Bank, Jackson Miss. v. Roper, 445 U.S. 326, 100 S. Ct. 1166, 63 L. Ed. 2d 427 (1980)*. The named plaintiff's claims become moot even if the named plaintiff has rejected the offer. *Mabary v. Hometown Bank, N.A., 276 F.R.D. 196, 201 (S.D. Tex. 2011), citing Young v. Asset Acceptance, LLC, Civ. A. No. 3:09-CV-2477-BH, 2011 U.S. Dist. LEXIS 13817, 2011 WL 618274, at *2 (N.D. Tex. Feb. 10, 2011)*("when a plaintiff rejects an offer by the defendant of everything

he could possibly recover from his lawsuit, his case may be dismissed as moot"), and 13B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* §3533.2 (3d ed. 1998)("Even when one party wishes to persist to judgment, an offer to accord all of the relief demanded may moot the case."). *See also Rand v. Monsanto Co., 926 F.2d 596, 598 (7th Cir. 1991)*("Once [*19] the defendant offers to satisfy the plaintiff's entire demand there is no dispute over which to litigate and a plaintiff who refuses to acknowledge this loses outright, under *Fed. R. Civ. P. 12(b)(1)*, because he has no remaining stake."). Moreover, generally "a purported class action becomes moot when the personal claims of all named plaintiffs are satisfied and no class has properly been certified." *Zeidman, 651 F.2d at 1041* ("In such a case there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution."). "[A] suit brought as a class action must present justiciable claims at each stage of the litigation; if the named plaintiffs' individual claims become moot before a class action has been certified, no justiciable claims are at that point before the court and the case as a general rule must be dismissed for mootness." *Id. at 1045.*

It is also well settled that if this mooting of the named plaintiff's claims occurs *after* the court has certified a class, it does not moot the class action. *Sosna, 419 U.S. at 399* ("When the District [*20] Court certified the propriety of the class action, the class of unnamed persons described in the certification acquired a legal status separate from the interest asserted by [the plaintiff]."). Nevertheless in *Sosna* the Supreme Court contemplated that the named plaintiff's claims might become moot before the district court could rule on class certification and commented, "whether the certification can be said to 'relate back' to the filing of the complaint may depend on the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." *Id. at 402 n.11.*

In *Gerstein v. Pugh, 420 U.S. 103, 110, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975)* the Supreme Court faced a case in which the named plaintiffs challenged the constitutionality of pretrial detention procedures, but they were convicted before the high court could rule on the issue. Establishing an exception to the general rule, the Supreme Court held, "This case belongs . . . to that narrow class of cases in which termination of a class representative's claim does not moot the claims of the unnamed members of the class" because the pretrial period was so short that it was "most unlikely" that any named plaintiff or [*21] potential class representative "would be in pretrial custody long enough for a district judge to certify a class." *Id. at 110-11 n.11* Thus it found that the named

plaintiff's claim was "distinctly 'capable of repetition yet evading review'" and therefore not moot. *Id.*

When a *Rule 68* offer of judgment is made to a named plaintiff while a motion for certification is pending the Fifth Circuit had recognized another possible exception to the general rule mooting the class action. Concerned that defendants may "buy-off" representative plaintiffs before classes can be certified, [10] those Circuit Courts of Appeals that have addressed the issue are divided about "whether and under what circumstances a defendant's unaccepted offer of judgment, *prior* to a decision on class certification, also moots the class action"; thus there has been uncertainty about the jurisdictional effect of such offers of judgment at this stage of the proceedings. 1 *Newberg on Class Actions* §2:15 (5th ed. database updated September 2013). The Third, Fifth, Ninth and Tenth Circuits have determined that *if there is no undue delay* in the filing of a motion for class certification, a *Rule 68* offer of judgment made *prior* [*22] to the named plaintiff's filing of a motion for class certification would not moot the class action even after an offer of complete relief to the named plaintiff, but that the class action would "relate back" to the filing of the class action complaint. *Weiss v. Regal Collections, 385 F.3d 337, 348 (2004)*("Absent undue delay in filing a motion for class certification, . . . where a defendant makes a *Rule 68* offer to an individual claim that has the effect of mooting possible class relief asserted in the complaint, the appropriate course is to relate the certification motion back to the filing of the class complaint."); *Zeidman v. J. Ray McDermott & Co., 651 F.2d 1030, 1051 (1981)*("We conclude that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims, at least when, as here, *there is pending before the district court a timely filed and diligently pursued motion for class action* [emphasis added by this Court]."), [11] and *Sandoz, 553 F.3d at 920-21* ("The proper course, therefore, is to hold that when a [FLSA] plaintiff files a timely motion for certification of a collective action, that motion relates back to [*23] the date the plaintiff filed the initial complaint, particularly when one of the defendant's first actions is to make a *Rule 68* offer of judgment.")(citing *Weiss, 385 F.3d at 348*); *Pitts v. Terrible Herbst, Inc., 653 F.3d 1081, 1091-92 (9th Cir. 2011)*; *Lucero v. Bureau of Collection Recovery, Inc., 639 F.3d 1239, 1249-50. See also* 1 Newburg on Class Action § 2:15 (5th ed.). *But see Damasco v. Clearwire Corp., 662 F.3d 891, 896 (7th Cir. 2011)*("To allow a case, not certified as a class action and with no motion for class certification even pending, to continue in federal court when the sole plaintiff no longer maintains a personal stake defies the limits on federal jurisdiction expressed in Article III. That the complaint identifies the suit as a class action is not enough by itself to keep the case in federal court. Even

when a 'complaint clearly and in great detail describes the suit as a class action suit,' if the plaintiff does not seek class certification, then 'dismissal of the plaintiff's claim terminates the suit.'"; "A simple solution to the buy-off problem [is that] [c]lass-action plaintiffs can move to certify the class at the same time they file their complaint."), quoting   [*24] *Turek v. General Mills, Inc. 662 F.3d 423, 424 (7th Cir. 2011)*.

10    As noted on page 11 and in footnote 7 and p. 13 and footnote 9, *Genesis Healthcare* rejected the "picking off" argument to support a relation back argument and raises questions about its applicability here. *See also* p. Because, as will be discussed, it does not apply to the facts here, the Court need not decide its merit.

11    In *Zeidman, 651 F.2d at 1036*, the defendant made an offer of judgment for the full amount of the named plaintiffs' claims after a motion for class certification was filed. The district court dismissed the entire case for mootness. On appeal, although it found that the claims were not the kind of "transitory" claim usually found in a "capable of repetition, yet evading review" exception, the Fifth Circuit used the same reasoning in situations where

the defendants have the ability to tender to each named plaintiff effectively to prevent any plaintiff in the class from procuring a decision on class certification. By tendering to the named plaintiffs the full amount of their personal claims each time suit is brought as a class action, the defendants can in each successive case moot the named plaintiffs' claims   [*25] before a decision on class certification is reached. A series of individual suits, each brought by a new named plaintiff, could individually be "picked off" before class certification; as a practical matter, therefore, a decision on class certification could, by tender to successive named plaintiffs, be made just as difficult to procure in a case like the one now before us as it was in Gerstein . . .

*Id. at 1050*. As noted in the text, it concluded "that a suit brought as a class action should not be dismissed for mootness upon tender to the named

plaintiff of their personal claims, at least when . . . there is pending before the district court a timely filed and diligently pursued motion for class certification." *Id. at 1051*. The Fifth Circuit reversed and remanded the suit to allow the district court to rule on the motion for class certification. *See discussion in Murray, 594 F.3d at 420*.

When courts apply the "relation back" doctrine the Fifth Circuit has indicated that it should apply "only in those cases in which the controversy is so transitory that no single named plaintiff could maintain a justiciable claim long enough to reach the class certification stage of the litigation." *Zeidman, 651 F.2d at 1047*   [*26] ("Controversies which are so transitory that no class can be certified before the claims of the original plaintiffs become moot are in effect 'capable of repetition, yet evading review,' . . . .")(*citing Sosna, 419 U.S. at 401*).

In the instant case, initially filed as a class action on November 21, 2011, there is still not only no motion for class certification yet on file, but only after Defendant made its *Rule 68* offer of judgment on May 10, 2013 (approximately 18 months after commencement of this suit), which Bank rejected, and filed the instant motion to dismiss on June 28, 2013, based on the clear **absence** of a timely filed and diligently pursued motion for class certification, did Bank finally file on September 3, 2013 a motion, and then it was only for extension of time until October 15, 2013 to file a motion for class certification.

Bank does not dispute that Spark Energy's *Rule 68* offer provides full satisfaction of Bank's individual claim. Instead he seeks to apply the Fifth Circuit's exception to the general rule that an unaccepted *Rule 68* offer of judgment fully satisfying a claim will moot the named plaintiffs' individual claims as well as the proposed class action when no   [*27] class has been certified. *Murray, 594 F.3d at 421* ("In such a case there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a 'case or controversy' within the meaning of Article III of the Constitution."). Specifically Bank argues that the exception recognized in *Zeidman 651 F.2d at 1036, 1050*, analogizing the logic underlying the "capable of repetition but evading review" for "transitory claims" to cases where defendants tender a *Rule 68* offer of judgment to each named plaintiff and thus prematurely moot his claim, effectively precluding any plaintiff in the class from procuring a decision on class certification. The panel concluded "that a suit brought as a class action should not be dismissed for mootness upon tender to the named plaintiffs of their personal claims," but qualified that statement, "at least when . . . there is pending before the district court a timely filed and diligently pursued motion for class certification." *Id. at 1051*. In *Sandoz, 553 F.3d 913*, as recognized in *Murray*, the panel ex-

tended the reasoning of *Zeidman* to an FSLA case. *Murray, 594 F.3d at 422*. Concerned that this general [*28] rule "would provide an incentive for employers to use *Rule 68* as a sword, 'picking off' representative plaintiffs and avoiding ever having to face a collective action, *Sandoz* found that the "relation back doctrine provides a mechanism to avoid this anomaly" and "ensures that plaintiffs can reach the certification stage" regardless of whether the case was a Rule 23 class action or a *FLSA § 216(b)* collective action. *Sandoz, 553 F.3d at 919-20*. Nevertheless the appellate panel did put some restrictions on application of the relation back doctrine: "[W]hen a FLSA plaintiff files a *timely* motion for certification of a collective action, that motion relates back to the date the plaintiff filed the initial complaint, particularly when one of the defendant's first actions is to make a *Rule 68* offer of judgment." *Id. at 920-21*. Nevertheless, as pointed out by Judge Ellison in *Mabary, 276 F.R.D. at 203*, it was significant that in *Sandoz*, the defendant "made its *Rule 68* offer of judgment approximately a month after receiving the complaint and before the plaintiff had an opportunity to move for certification of her collective action. In fact, the plaintiff [in *Mabary*] did not file her motion to [*29] certify until approximately nine months after the defendant's offer of judgment.".

First the Court finds that even if the Fifth Circuit's exception based on a defendant's "picking off" named plaintiffs before a class can be certified is cognizable in Rule 23 class action suits, there is no evidence to support any concern here about "picking off" or "buying out" Bank before class certification can be addressed, given the length of this litigation and the fact that Spark Energy waited eighteen months to make its *Rule 68* offer of judgment. Bank never moved for class certification during that period. Nor is Bank's single telephone call an "inherently transitory" claim. It has not attempted to evade review, nor would it been able to evade review had Bank made any reasonable attempt to preserve his putative class action by filing an appropriate, timely, and protective class action. Spark Energy further points out that Bank has yet to identify a single class member, and Bank has not responded to that challenge. #36 at p. 11.

Moreover there is no rule that a class action must await the close of discovery to be filed, particularly under the circumstances here, where Bank has been liberally [*30] granted extensions of deadlines by the Court and still delayed pursuing class certification; now it is obviously too late as a class action for this case to be ready for its trial date at the beginning of November, 2012, since the certification still has not been sought, not to mention the time necessary for notice to the class and a certification analysis.

Under the original docket control schedule (#16, entered on March 8, 2013, the discovery deadline was November 15, 2012 and the motion deadline December 5, 2012 with docket call set on February 22, 2013. Although on January 25, 2012 Spark Energy filed a motion to dismiss arguing that under New York law no class action under the TCPA could be maintained, it was denied on September 13, 2012 (#26) based on *Mims v. Arrow Fin. Services, LLC, 132 S. Ct. 740, 747, 181 L. Ed. 2d 881 (2012)*(holding that federal courts and state courts have concurrent jurisdiction over private suits arising under the TCPA), with this Court finding that it has federal question jurisdiction and would apply federal law. Also on September 13, 2012 Bank served Spark Energy with Amended Requests for Production of Documents, Amended Interrogatories, and Amended Requests of Admission. [*31] After the parties filed a stipulation, on November 14, 2012 the Court entered an amended scheduling order (#29), extending the discovery deadline to May 31, 2013 and the motion deadline to June 28, 2013, and reset the docket call date to November 1, 2013.

On December 4, 2012, Bank filed a motion to compel (#30). In response (#33), Spark Energy stated that it had repeatedly told Bank that it had not made nor authorized anyone else to make the telephone calls alleged in the class action complaint, that it did not know who did make them, that it could not provide information and documents that it did not have, and that it did not have the information and documents that Bank sought. Spark Energy also objected that Bank's overbroad definitions of "Defendants" and "Telephone Calls" because they improperly required discovery from not only the named Spark Energy entities, but third parties unknown to Spark Energy. The request for admissions similarly targeted unknown third parties which Spark Energy could not admit or deny. Spark Energy also challenged the scope and time as overbroad and unduly burdensome because Bank's requests embraced everywhere in the United States for the four years before [*32] Bank filed his suit, regardless of whether the calls were made by the same person or had any similarity to the call Bank received. It further explained that it has responded twice to the twenty-five interrogatories in Plaintiff's First Set of Interrogatories and, despite Spark energy's good faith efforts to work with Bank, complained that Bank had not identified any specific information that he claimed was missing from Spark Energy's answers. Magistrate Judge France Stacy denied Bank's motion to compel in its entirety on January 26, 2013 (#33).

On March 4, 2013, Bank served Amended Requests for Production of Documents, Amended Interrogatories, and Amended Requests for Admissions on each of the Spark Energy entities. Defendants served their responses

on April 22, 1013. Bank inexplicably waited until June 28, 2012, the next to the last day of the motion deadline after all the other deadlines, including discovery, had passed, to file his second motion to compel (#34), this time seeking amended answers to his Amended Requests for Admission, Interrogatories, and Requests for Production of Documents. He further requested an extension of the deadline for completion of discovery from May 31, [*33] 2012 to August 20, 2013 and leave to serve as additional Interrogatories (beyond twenty-five) numbers 3-12 of his Amended Interrogatories. The motion was referred to United States Magistrate Judge Stacy for resolution.

In response (#39), Spark Energy first pointed out in light of its offer of judgment and its motion to dismiss, Bank's claims are moot and the Court lacks subject matter jurisdiction. Because its motion to dismiss raises jurisdictional issues, it argued that it should be resolved before the Court enters any order on Bank's motion to compel. *Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001)*. If the Court chose to review the motion to compel, Spark Energy highlighted the expired deadlines for discovery and expert witnesses, arguing that it should not have to answer more than the 25 interrogatories propounded and that Bank should not be given more time for discovery. It again objected that Bank's definitions were overbroad and that its discovery requests were not reasonably limited in scope and time, and that Spark Energy did not have any documents or information that it has not already produced.

Because she was probably unaware of the jurisdictional issue, inasmuch [*34] as Spark Energy's motion to dismiss was not referred to her, [12] Judge Stacy, on August 27, 2013, granted Bank's request for leave to serve more than twenty-five interrogatories on Defendants, including Amended Interrogatory Nos. 3-25, within twenty-five days. Judge Stacy denied all his other requests for the same reasons she had denied his earlier motion to compel:

Defendants' response to Request for Admission No. 3 is sufficient under *Fed. R. Civ. P. 36(a)(4)(5)*. Finally, with respect to the Amended Requests for Production, because Defendants have made it clear that they have not withheld any documents based on their objections to Plaintiff's definition of "Defendants," "Telephone Call," or "on behalf of," Defendants['] responses to the Amended Request for production are sufficient. Defendants' continued, general objections to Plaintiff['s] amended definition of "Defendants," Plaintiff['s] definitions of "Telephone Call," "on behalf of," and the time frame and geographic scope of the requests are, however, all overruled. Given the leave, granted herein, for the additional interrogatories, and Plaintiff's failure to articulate what additional discovery he needs, Plaintiff['s] request [*35] for an extension of the discovery deadline is denied.

#40, issued on August 27, 2013, granting in part, denying in part. There was no request for, nor mention of an extension of time, to move for class certification.

12    Nor had this Court yet reviewed the motion to dismiss.

Even then Bank still waited until September 3, 2013 to file not a motion for certification, but a motion for an extension of time to move for class certification, without showing good cause or identifying what it would contain, in other words, merely seeking further delay. Moreover in that motion for extension he made a number of misrepresentations and deceptive arguments for such an extension. Despite the fact that Judge Stacy's order of August 27, 2013 expressly and unambiguously states that Bank's "request for an extension of the discovery deadline is denied," he argues that because she granted him leave to serve more than twenty-five interrogatories and wrote, "Defendants shall have twenty-one (21) days from the date this Order is entered" to answer them, that "the discovery period was, in fact, extended" until September 17, 2013. He also claims that the Scheduling Order (#29) provided that Bank's motion for class [*36] certification was to be filed exactly four weeks following the end of discovery, i.e., June 28, 2013. It did not. Instead it sets the deadline for both dispositive and non-dispositive motions on June 28, 2013 and said nothing about a motion for class certification. Building on his misrepresentation, he further contends, "Therefore, given that the discovery end date is now September 17, 2013, the date by which Bank is required to move for class certification should be four weeks thereafter, i.e., October 15, 2013." He points out that in his response in opposition (#37) to Spark Energy's second motion to dismiss, he asserted that "the granting of Bank's pending request [in his second motion to compel] for an extension of the discovery deadline, and thus an extension of the due date for a motion for class certification, would invoke the relation-back doctrine, and thereby enable [Bank] to seek class certification, which would relate back to the commencement of this action and would therefore preclude dismissal based on Spark Energy's offer of judgment." #38 at pp. 9-10. His argument is contrary to the content of the orders in this case, which speak for themselves.

Furthermore because Spark  [*37] Energy's *Rule 68* offer of judgment was made on May 10, 2013 and because he did not affirmatively accept it within fourteen days, it was legally rejected at that point by terms of *Rule 68*. Because Bank has not filed a motion for class certification, and because Bank had not objected and still does not object that Spark Energy's offer of judgment did not cover the entirety of his claims, under the Fifth Circuit's general rule by May 24, 2013 no case or controversy remained to invoke this Court's jurisdiction under Article III, either with respect to his or the putative class members' claims. That deadline is reinforced by Spark Energy's motion to dismiss filed on June 28, 2013 clearly raising the jurisdictional issue.

Bank did not file a motion for class certification at all, no less an untimely one, nor, as the record evidences, has he diligently pursued certification. As for exceptions to the general rule that might save his individual and his class action, the problem here is not that the claims asserted in the Class action complaint were too transitory to survive or that Select Energy was attempting to pick off or buy off Bank or class members before the issue of certification could  [*38] be reached. Bank, even though he is a licensed attorney presumably competent to research the law in this Circuit, did not pursue class certification for almost two years, despite (1) *Rule 23* 's requirement that the issue be addressed and certification be determined "as early as practicable" and (2) Select Energy's motion to dismiss fully argued the well-established interaction of the mootness doctrine, *Rule 68*, and class actions.

For these reasons the Court concludes that the Fifth Circuit's general rule (a *Rule 68* offer that satisfies the entirety of a named plaintiffs claims, where no motion for certification has been filed and no class has been certified, and where no exceptions apply, even if the plaintiff rejects the offer both the named plaintiffs claims and the class action become moot) [13] applies, that Spark Energy's offer of judgment moots his and the putative class's claims, and that dismissal of this suit is appropriate. Accordingly, the Court

13    *Sandoz, 553 F.3d at 921 & n.5.*

ORDERS that Spark Energy's motion to dismiss under *Federal Rule of Civil Procedure 12(b)(1)* (instrument #36) is GRANTED as to the whole action. "If the court determines at any time that it lacks subject  [*39] matter jurisdiction, the court must dismiss the action." *Fed. R. Civ. P. 12(h)(3)*. Because the Court now concludes that it had no jurisdiction under Article III, fourteen days after the offer of judgment was made, Judge Stacy's order of August 27, 2013 is null, and Bank's motion for extension of time to move for class certification (#41) is MOOT. The Court further

ORDERS that Defendants Spark Energy Holdings, LLC, Spark Energy, LP, and Spark Energy Gas, LP provide the Court with a proposed Final Judgment, pursuant to *Rule 68*.

SIGNED at Houston, Texas, this 18th day of October, 2013.

/s/ Melinda Harmon

MELINDA HARMON

UNITED STATES DISTRICT JUDGE